IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT OF
THE STATE OF FLORIDA, IN AND FOR BROWARD COUNTY
CIVIL DIVISION

Carlos Urquilla Diaz,

    Plaintiff,

v.                                   Civil Action No.: 0711472

Kaplan University a/k/a
Kaplan College a/k/a/ Iowa
College Acquisition Corporation;
Kaplan Higher Education Corporation,
a division of Kaplan, Inc.,
a wholly owned subsidiary of the
Washington Post Company;
and Andrew S. Rosen a/k/a Andy S. Rosen;
Ben Wilcox; Sheree Pace; David Harpool.
Chris Caywood.

    Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Carlos A. Urquilla Diaz ("Diaz") by and through his undersigned counsel, sues Defendant, Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp., Kaplan Higher Education Corporation, a division of Kaplan, Inc., a wholly owned subsidiary of the Washington Post Company, Andrew S. Rosen a/k/a Andy S. Rosen (individually and as agent on behalf of Kaplan University), Ben Wilcox (individually and as agent on behalf of Kaplan University), Sheree Pace (individually and as agent on behalf of Kaplan University), David Harpool (individually and as agent on behalf of Kaplan University), Chris Caywood (individually and as agent on behalf of Kaplan University); and states:

**EXHIBIT M**

## COMMON ALLEGATIONS

1. This is an action for damages in excess of $15,000.00 (fifteen thousand dollars), and, legal and equitable relief for national origin discrimination, racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et.seq.

2. It is also a claim for slander, libel, negligent and emotional distress, and other causes.

3. This action is within the jurisdiction of this Court pursuant to 42 U.S.C. Section 2000e-5(e)(f)(3).

4. Plaintiff has met all conditions precedent by filing a charge with the EEOC, receiving a Notice of Dismissal and Right to Sue, and by filing this action within 90 days of his receipt of his Right to Sue.

5. Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp.'s principal place of business is 6301 Kaplan University, Fort Lauderdale, Fl 33309.

6. At all times relevant to the allegations in this Complaint, Defendant Kaplan Higher Education Corporation was a foreign corporation doing business in Ft. Lauderdale, Broward County, Florida.

7. At all times relevant to the allegations in this Complaint, Defendant Kaplan Higher Education Corporation was a subsidiary of The Washington Post Company, a foreign corporation.

8. At all times relevant to the allegations in this Complaint, Plaintiff Diaz was

employed by Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp., and/or Kaplan Higher Education Corporation. (These defendants will be hereinafter collectively referred to as "Kaplan").

9. At all times relevant to the allegations in this Complaint, Defendants Andrew S. Rosen a/k/a Andy S. Rosen, Ben Wilcox, Sheree Pace, David Harpool, Chris Caywood were agents and supervisors acting on behalf of Kaplan and engaged in activity forming the basis of this complaint in Ft. Lauderdale, Broward County, Florida.

10. The facts pleaded in this action as being in violation of Title VII were planned and/or executed in Ft. Lauderdale, Broward County, Florida.

11. Andrew S. Rosen a/k/a Andy Rosen, is an officer and director of Iowa College Acquisition Corp and/or Kaplan Higher Education Corporation.

12. Andrews S. Rosen is a resident of Ft. Lauderdale, Florida, in Broward County.

13. Sheree Pace is a resident of Ft. Lauderdale, Florida, in Broward County.

## FACTS

14. Plaintiff Urquilla Diaz is a law school graduate.

15. Diaz was hired by Kaplan, in April 2005 as a Director of a new project called, "School Within a School" program.

16. Plaintiff Urquilla Diaz is of Hispanic descent, originally from El Salvador, and came to the United States in 1984 to escape a civil war in El Salvador after losing many members of his family in the war.

17. Diaz requested a job change around July of 2005, after he received orders from

Page 3 of 19

the United States Army, directing him to report for active duty Iraq within thirty days. Diaz was formerly an infantry officer in the U.S. Army before joining Kaplan.

18. David Clinefelter, Kaplan's Provost, transferred Diaz into the Paralegal Studies department under the Dean of Paralegal Studies at the time, Ben Wilcox (hereinafter referred to as Wilcox).

19. On September 1, 2005, Plaintiff Urquilla Diaz was transferred as a professor to the Paralegal Studies Department.

20. After being transferred, Diaz raised concerns regarding students not earning their grades and asked many tough questions about Kaplan's actions.

21. The concerns raised were that students were not earning their grades, that they would probably not be able to get a job in the legal field, and that it was not fair for them to have a large student loan with no way to repay it.

22. Defendant Kaplan's President, Andrew S. Rosen a/k/a Andy S. Rosen, gave orders to fire "the Mexican" [Plaintiff].

23. President Andrew S. Rosen a/k/a Andy S. Rosen and other upper-level management personnel, then began discriminating against Plaintiff whereby Ben Wilcox, Andrew S. Rosen a/k/a Andy S. Rosen, David Harpool, and other upper-level management personnel concocted an illegal scheme to discriminate against Plaintiff with the intention of ultimately terminating him.

24. Ben Wilcox, Assistant Dean Sheree Pace, David Harpool, Chris Caywood, and other upper level management staff, in accordance with Andrew S. Rosen a/k/a

Andy S. Rosen's directive to "fire the Mexican", concocted an illegal discrimination scheme against Plaintiff, with the goal of terminating his employment.

25. As part of the scheme, Plaintiff was given a much heavier academic workload than any other full time professor in a similar position.

26. As part of the scheme, Defendants designed a way to make Plaintiff's teaching scores appear to be below average.

27. As part of the scheme, Defendants gave Plaintiff small classes and difficult topics in the hopes that students would complain against Diaz and thus give him a low faculty approval rating on the end of class surveys.

28. As part of the scheme, Kaplan purposely and actively conducted searches for students who might have any complaints about Diaz.

29. As part of the scheme, Kaplan's management used "student complaint escalations" as a ruse to accuse Diaz of not meeting his job standards, when management actually knew that Diaz was well within the job standards.

30. When the time came for Kaplan to meet with the Higher Learning Commission, they refused to allow Diaz to meet with the Commission advisors, due to fears that Diaz would share his complaints with the Higher Learning Commission.

31. As part of the conspiracy to fire Diaz, on December 2, 2005, Plaintiff received a satisfactory performance appraisal from Randy Shochet. Two other department chairs gave Diaz a rating between "Meets job requirements to Exceeds job requirements."

32. Diaz held numerous discussion with all three of his direct supervisors about the difficult teaching load he was forced to teach. Most professors in the Paralegal department only had one direct supervisor while Diaz had three. Between October and December of 2005 Diaz constantly complained about the difficult teaching load

33. On December 9, 2005, Defendant Associate Dean Sheree Pace sent an email informing Plaintiff that his performance was unacceptable.

34. On December 23, 2005, Defendant Sheree Pace informed Plaintiff that he was fired from his full-time position, but that he had the option of still working for Kaplan on a "part-time" basis.

35. Plaintiff requested a due process hearing with Human Resources.

36. Plaintiff also requested to speak to Provost David Clinefelter.

37. On January 3, 2006, Dean Wilcox notified Diaz that he had been reinstated as a full-time professor.

38. On January 10, 2006, Wilcox informed Diaz that he would not be allowed to attend the faculty retreat in Florida.

39. On January 10, 2006, Plaintiff complained that he was the only full-time professor who was excluded from the faculty retreat in Ft. Lauderdale, and felt he was being discriminated against because of his race.

40. After his complaints, Plaintiff was allowed to attend the retreat in Ft. Lauderdale with conditions not imposed on others attending the faculty retreat.

41. During the three - day faculty retreat, Plaintiff complained to Defendant Caywood

Page 6 of 19

and to Andy Carpenter, Javier Demarco, and Allen Lowery that Defendants Sheree Pace and Ben Wilcox were pressuring him to inflate grades and subjecting him to racial and national origin discrimination.

42. In order to attend the faculty retreat, Defendants required Plaintiff to stay twenty to thirty minutes away at another hotel and pay for his trip expenses out of his personal funds.

43. Defendants represented to Plaintiff that he would be reimbursed in a timely manner, as every other faculty member would be reimbursed.

44. Plaintiff was not reimbursed in a timely manner, and it took him repeated requests and complaints about racial and national origin discrimination in order to get his expenses reimbursed.

45. On February 6, 2006, Plaintiff's faculty survey comments from one of his direct supervisors, Mr. Martin Connor, were "Great Job Carlos!!!! The Comments show you doing terrific work."

46. On February 10, 2006, Plaintiff received a "written warning for poor performance" from Defendant Sheree Pace, under the direction of Wilcox in furtherance of the scheme to terminate Plaintiff.

47. On February 13, 2006, Plaintiff sent Javier Demarco, Christopher Caywood and Wilcox a reminder that he wanted to file a formal discrimination complaint against Wilcox.

48. That same day, Plaintiff informed David Clinefelter (KU's Provost) of the racial and national origin discrimination that he was suffering, and the pressure he was

getting to inflate the students' grades.

49. On February 17, 2006, Plaintiff complained to Melissa Martin of the Human Resources department about the racial and national origin discrimination he was experiencing.

50. On February 23, 2006, Defendants unfairly attacked Diaz in a so-called "student complaint escalation." It was an attempt to give Kaplan a reason to fire Diaz. Kaplan did, in fact, know that Diaz had not treated the student unfairly, as was alleged in the complaint.

51. On March 3, 2006, Diaz sent a letter to Kaplan's CEO, Andrew S. Rosen a/k/a Andy S. Rosen, in which Diaz again complained that he was a victim of racial discrimination.

52. On March 7, 2006, Diaz was questioned about his allegations of racial discrimination by a senior Kaplan attorney, Harold Levy. Diaz once again conveyed to Kaplan officials that he was the victim of racial discrimination.

53. On March 22, 2006, Diaz's thirty-sixth birthday, Defendant Kaplan fired Plaintiff as a full-time professor in the Paralegal Studies program and demoted him to a "curriculum developer" position, which was non-existent in Kaplan's list of positions. He was fired as a result of his continued racial discrimination complaints.

54. The "curriculum developer" position was designed for failure, as there was no criteria against which one could measure performance in this position. The new job was merely used as a ruse to ultimately terminate Diaz in order to punish him

for his complaints about the racial discrimination.

55. Plaintiff informed Defendant Kaplan that he did not feel qualified for the position.

56. On April 24, 2006 Melissa Martin sent Diaz an email to inform him that she had conducted "a full investigation" and that she did not find any racial discrimination against Diaz. This was Melissa Martin's second contact with Diaz.

57. From early April through August of 2006, Defendant Kaplan continued to put pressure on Plaintiff to quit, through Defendant's employee, Karen Evans and others.

58. On July 5, 2006, Plaintiff filed a charge of discrimination with the EEOC.

59. On July 31, 2006, Defendant's employee, Karen Evans provided a performance improvement plan to Plaintiff which Plaintiff believed was untrue and made false accusations against Diaz.

60. Diaz wrote back to Evans, explaining that he felt the so-called "improvement plan" was nothing but a pretext made up of lies and false accusations in order to fire him for his continued efforts to show that he was a target of discrimination by Kaplan's officials.

61. On August 4, 2006, Defendant David Harpool fired Plaintiff, citing insubordination to Defendant's employee, Karen Evans and poor job performance.

62. During the time of Plaintiff's employment, various employees in the Ft. Lauderdale and Chicago offices kept Mexican jumping beans on their desks, and made racial and ethnic slurs about Plaintiff to each other; Diaz became aware of their actions.

63. During the time of Plaintiff's employment, various employees, including Defendants Harpool and Wilcox, would make harassing phone calls to Plaintiff with disparaging remarks about Plaintiff's race and national origin. When Plaintiff did not answer his phone, they would leave these comments on his voicemail.

64. Upper management manipulated various numbers and scores to indicate that Diaz's performance was well below average, when in fact, his scores were comparable to those of other professors who were considered to have adequate performance ratings.

65. Other non-Hispanic professors whose teaching scores/student surveys were lower than Plaintiff's were not terminated for poor job performance.

66. Diaz received his Right to Sue letter from the EEOC.

## COUNT I
## VIOLATION OF TITLE VII - NATIONAL ORIGIN DISCRIMINATION

67. Plaintiff realleges paragraphs 1 - 65 as if fully realleged herein.

68. By terminating Plaintiff because he was of Hispanic origin, Defendants violated Title VII by discriminating against him because of his national origin in the terms, conditions and privileges of his employment.

69. Defendants acted with malice and reckless disregard for Plaintiff's federally protected civil rights.

70. Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

**WHEREFORE** Plaintiff requests that this Court:

    a.    Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

    b.    Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates and harasses any employee or applicant for employment on the basis of national origin;

    c.    Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

    d.    Award him under Title VII compensatory and punitive damages;

    e.    Award him under Title VII reasonable attorney fees and costs of this action;

    f.    Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT II

## VIOLATION OF TITLE VII - RACIAL DISCRIMINATION

71.    Plaintiff realleges paragraphs 1 - 69 as if fully realleged herein.

72.    By terminating Plaintiff because he was of Hispanic race, Defendants violated Title VII by discriminating against him because of his race in the terms, conditions and privileges of his employment.

73. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

74. Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

**WHEREFORE** Plaintiff requests that this Court:

    a. Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

    b. Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates and harasses any employee or applicant for employment on the basis of race;

    c. Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

    d. Award him under Title VII compensatory and punitive damages;

    e. Award him under Title VII reasonable attorney fees and costs of this action;

    f. Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT III
## VIOLATION OF TITLE VII - RETALIATION

75. Plaintiff realleges paragraphs 1 - 73 as if fully realleged here.

76. Defendants intentionally retaliated against Plaintiff when he complained of discrimination in violation of Title VII and after he filed an EEOC Charge of

Discrimination.

77. As a result of Defendants' acts of retaliation, Plaintiff suffered damages.

78. Defendants' acts of retaliation were performed with malice and reckless indifference to Plaintiff's protected civil rights.

79. **WHEREFORE** Plaintiff requests that this Court:

   a. Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

   b. Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which retaliates any employee on the basis of complaining of illegal discrimination.

   c. Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

   d. Award him under Title VII compensatory and punitive damages;

   e. Award him under Title VII reasonable attorney fees and costs of this action;

   f. Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT IV
## UNLAWFUL RETALIATION FOR COMPLAINTS OF PRESSURE TO INFLATE STUDENT GRADES

80. Diaz realleges and incorporates paragraphs 1 through 77 of this Complaint.

81. Defendants retaliated against Diaz by removing him from his teaching position

Page 13 of 19

and eventually fired him due to his complaints that he made in good faith.

82. As a result of Defendants' acts of retaliation, Plaintiff suffered damages.

83. Defendants' acts of retaliation were performed with malice and reckless indifference to Plaintiff's protected civil rights.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. Diaz realleges and incorporates paragraphs 1 through 81 of this Complaint.

85. This is an action for intentional inflection of mental distress.

86. Defendants Kaplan's conduct, as well as the conduct of Andrew S. Rosen individually, Sheree Pace indivdually, and Chris Caywood individually was intentional, reckless, and outrageous.

87. Because Diaz objected to and refused to participate in Kaplan's activity, Kaplan set out to destroy Diaz and his mental health.

88. The actions of Kaplan and Andrew S. Rosen individually, Sheree Pace indivdually, and Chris Caywood individually are shocking to the conscience and should not be tolerated in an organized society.

89. As a result of said conduct Plaintiff experienced pain and suffering, severe mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss

of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing, and Plaintiff(s) will suffer the losses in the future. Plaintiff also requests punitive damages.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

## COUNT VI - SLANDER

90. Diaz realleges and incorporates paragraphs 1 through 87 of this Complaint.

91. Kaplan, by and through its employees, including Andrew S. Rosen a/k/a Andy S. Rosen, Ben Wilcox, David Harpool and other Kaplan employees, slandered Diaz by using racially discriminatory and vulgar remarks which were completely without merit.

92. As a result of said conduct Plaintiff suffered pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff(s) will suffer the losses in the future. Plaintiff asks for punitive damages.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

### COUNT VII
### UNLAWFUL RETALIATION
### VIOLATION OF FLORIDA STATUTE 760. et seq.

93. Diaz realleges and incorporates paragraphs 1 through 90 of this Complaint.

94. This is an action for damages as a result of the Defendant's retaliatory treatment of Plaintiff in violation of the Florida Civil Rights Act of 1993, Fla. Stat. §760.

95. By and through its agents, supervisors, and employees, Defendant engaged in and otherwise permitted retaliation to occur by: refusing to redress Plaintiff's legitimate and bonafide complaints of discrimination; by retaliating against Plaintiff by demoting and disciplining him, and by terminating his employment.

96. Plaintiff Diaz was engaged in protected activity when he reported and/or made complaints of unlawful activity.

97. Diaz's complaints constitute protected activity under 42 U.S.C. §2000e-3(a).

98. Diaz suffered adverse action by the Defendant in that he was disciplined and/or terminated.

99. Diaz's complaints and opposition to the discrimination are causally related to the Defendant's retaliatory treatment against him.

100. As a result of the aforementioned conduct as alleged in this Count, Defendant has violated the FCRA.

101. The Defendant violated Florida Statute § 760.10 by retaliating against Plaintiff Diaz for his legitimate and bonafide complaints of discrimination.

102. As a result of the Defendant's aforementioned conduct and treatment of the Plaintiff, Plaintiff has sustained a loss of employment and other damages.

103. As result of the aforementioned actions of the Defendant, Plaintiff has suffered severe emotional distress.

104. Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

105. Plaintiff believes and based thereon alleges that in addition to the practices enumerated herein, Defendant has engaged in other discriminatory practices against Plaintiff which are not yet fully known. At such time that the discrimination becomes known, Plaintiff will seek leave of court to amend this complaint in that regard.

106. Plaintiff has exhausted all of his administrative remedies.

107. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, and mental anguish.

108. Plaintiff has suffered and will continue to suffer a loss of earnings and employment related benefits and job opportunities. As a result, Plaintiff is therefore entitled to general, compensatory damages and punitive damages in an amount to be proven at trial.

109. As a further direct and proximate result of the Defendant's violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that his attorney's fees be awarded pursuant to Fla

Statute §760.11(5).

**WHEREFORE**, Plaintiff Diaz prays that judgment be entered in his favor against the Defendant as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded punitive damages, reasonable attorney's fees and costs pursuant to the FCRA; that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT VIII
## UNLAWFUL RETALIATION
## VIOLATION OF FLORIDA WHISTLEBLOWER'S ACT F.S.§§448.101-448.105

110. Diaz realleges and incorporates paragraphs 1 through 109 of this Complaint.

111. This is an action under Florida Statute § 448.101, et. seq.

112. Because Diaz objected to and refused to participate in Kaplan's activity and thus Kaplan retaliated against him.

**WHEREFORE**, Plaintiff Diaz prays that judgment be entered in his favor against the Defendant as follows: that Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff, reasonable attorney's fees and costs pursuant to the §448.101 ; that Plaintiff be awarded such relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT IX
## INDEPENDENT TORT OF CONSPIRACY

113. Diaz realleges and incorporates paragraphs 1 through 66 of this Complaint.

114. Defendants Kaplan University and Andrew S. Rosen individually, Sheree Pace indivdually, maliciously, wantonly, and wilfully conspired and confederated with each other to commit the above wrongful acts for the sole purpose of

Page 18 of 19

depriving Plaintiff of employment and to damage his professional reputation.

115. As a result of the concerted nature of defendants' actions, Plaintiff Diaz has suffered past and future income, and damage to his personal and profession reputation. Diaz has suffered such damages in the past and will continue to suffer such damages in the future.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

_____
John W. Andrews, Esq.
FBN: 178531; SPN: 013131
**ANDREWS LAW GROUP**
3220 Henderson Blvd.
Tampa, FL 33609
Ph. (813) 877-1867; Fx. (813) 872-8298
Attorneys for Plaintiff.