# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Unsealed** 7/15/2009

### CASE NO.: 09-20756-CIV-SEITZ/O'SULLIVAN

~~Sealed~~

UNITED STATES OF AMERICA,
*ex rel.* JUDE GILLESPIE, CARLOS URQUILLA-
DIAZ, and BEN WILCOX

    Plaintiffs,

v.

KAPLAN, INC., KAPLAN UNIVERSITY a/k/a
KAPLAN COLLEGE a/k/a IOWA COLLEGE
ACQUISITION CORP., KAPLAN HIGHER
EDUCATION CORPORATION, a division of
KAPLAN, INC., a wholly owned subsidiary of
the Washington Post Company,

    Defendants.

_____/

**FILED IN CAMERA AND
UNDER SEAL PURSUANT
TO 31 USC §3730 (b)(2)**

FILED by _AJS_ D.C.

JUN 2 4 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## RELATORS' SECOND AMENDED COMPLAINT

  Plaintiff, United States of America *ex rel.* Jude Gillespie, Carlos Urquilla-Diaz, and Ben Wilcox, by their respective attorneys, hereby bring this action on behalf of the United States of America and themselves pursuant to the provision of the False Claims Act, 31 U.S.C. § 3729 *et seq.* against Defendants, Kaplan, Inc., Kaplan University a/k/a Kaplan College, a/k/a Iowa College Acquisition Corp., Kaplan Higher Education Corporation, a division of Kaplan, Inc., a wholly owned subsidiary of the Washington Post Company (hereinafter collectively referred to a "Kaplan Defendants") and file this Second Amended Complaint.

### I. INTRODUCTION

  1. This is a civil action brought on behalf of the United States of America against the Kaplan Defendants pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3732, to recover damages and civil penalties arising from false claim s the Kaplan Defendants submitted to the

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

165/AJS

United States Department of Education for payment.  The Kaplan Defendants wrongfully and fraudulently obtained billions of dollars in federal funds from the U.S. Department of Education pursuant to the Higher Education Act of 1965, as a direct result of the false claims alleged herein.

2.      The Kaplan Defendants have become one of the largest for-profit post-secondary educational institutions in the United States, operating under numerous educational enterprise names, including Kaplan University and Kaplan College, as well as more than a dozen more. As a result, the Kaplan Defendants receive a significant amount of federal student aid funds from the U.S. Department of Education.  In order to obtain these federal funds, the Kaplan Defendants make false and fraudulent representations annually to the U.S. Department of Education that they are in compliance with the Higher Education Act and all of the federal regulations that must be met in order to maintain eligibility for these federal student aid funds.

## II.     VENUE AND JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730(b).

4.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the Kaplan Defendants transact business in this judicial district through the operation of their primary place of business in Fort Lauderdale, Florida.

## III.    THE PARTIES

### Allegations Of Plaintiff/Relator Jude Gillespie

5.      *Qui Tam* Plaintiff/Relator Jude Gillespie is a citizen of the United States of America and is a resident of Miami-Dade County, Florida.  Gillespie worked for the Kaplan Defendants from April 2004 through April 2005 as a Course Developer, Department Chairman,

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

and Associate Professor of Paralegal Studies at the South Florida campus in Fort Lauderdale, Florida. Gillespie brings this action on behalf of the United States of America.

6. The United States of America is named as a plaintiff because funds of the United States have been disbursed to the Kaplan Defendants (pursuant to the Higher Education Act, Title IV) as a direct result of the false records and false statements, representations, and claims made by the Kaplan Defendants to the U.S. Department of Education.

7. Defendant Kaplan University (hereinafter "Defendant KU") is a corporation organized under the laws of the State of Delaware, and is a wholly-owned subsidiary of The Washington Post Company. Defendant KU operates numerous online educational enterprises throughout the United States, including its primary place of business in Fort Lauderdale, Florida. Defendant KU is accredited by the Higher Learning Commission and is a member of the North Central Association of Colleges and Schools. Defendant KU offers students online educational programs for the purpose of obtaining certificates, graduate and undergraduate degree programs. Defendant KU is a wholly owned subsidiary of Defendant Kaplan Higher Education Corporation. Defendant KU is a recipient of HEA (the Higher Education Act of 1965) federal student financial aid funds from the U.S. Department of Education.

8. Defendant Kaplan Higher Education Corporation (hereinafter "Defendant KHEC") is a corporation organized under the laws of the State of Delaware. Defendant KHEC operates numerous online educational enterprises throughout the United States, including its primary place of business in Fort Lauderdale, Florida. Defendant KHEC is accredited by the Higher Learning Commission and is a member of the North Central Association of Colleges and Schools. Defendant KHEC offers students online educational programs for the purpose of obtaining certificates, graduate and undergraduate degree programs. Defendant KHEC is a

3

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

recipient of HEA (the Higher Education Act of 1965) federal student financial aid funds from the U.S. Department of Education.

9.      At all times material hereto, the Kaplan Defendants acted through their managers, employees, and corporate officers, including division chairmen, professors, supervisors, instructors, financial advisors, admission advisors, and vice presidents of departments and divisions: all of whom acted within the course and scope of their employment and authorized authority with the Kaplan Defendants.

10.     *Qui Tam* Plaintiff/Relator Jude Gillespie previously satisfied all procedural and administrative prerequisites to bringing this action as required by the False Claims Act, specifically 31 U.S.C. § 3730(b)(2) by providing the U.S. Attorney and the Department of Justice a statement of all material evidence and information related to this action.    Said disclosure supports the existence of the Kaplan Defendants having made a "submission of a knowingly false or fraudulent claim for payment or approval" under the False Claims Act, 31 U.S.C. § 3729.

### Allegations Of Plaintiffs/Relators Urquilla-Diaz And Wilcox

11.     Qui Tam Plaintiff Carlos Urquilla-Diaz (hereinafter "Diaz") is a citizen of the United States of America and is a resident of Kansas.

12.     Diaz has worked for Defendant Kaplan from August 2004 through April 2005 as a high level employee for Kaplan Online and Kaplan Higher Education. He also worked as a Professor of Paralegal Studies for Defendant.

13.     Diaz brings this action on behalf of the United States of America.

14.     Diaz is an original source; has independent knowledge and provided information to the Department of Education and United States government prior to filing suit.

4

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

15.    Diaz was also a key employee of the "school within a school". He coordinated the changes between Kaplan Online University and Kaplan Higher Education Corporation. He had access to both Andy Rosen, and the President of Kaplan Higher Education Corporation, headquartered in Georgia. He had access to many of the subsidiary land schools as well. Diaz met regularly with David Klinefelter, a Provost of Kaplan Online.

16.    When Diaz was a professor at Kaplan he was pressured to inflate grades; he refused as he felt that it would falsely certify that students were maintaining a "C" average or meeting the minimum grade requirements for Title IV funding eligibility.

17.    Qui Tam Plaintiff Ben Wilcox (hereinafter "Wilcox") is a citizen of the United States of America, and is a resident of Illinois.

18.    Wilcox is a former Dean of Kaplan University.

19.    Wilcox brings this action on behalf of the United States of America.

20.    Wilcox is an original source; has independent knowledge and provided information to the Department of Education and United States government prior to filing suit.

21.    Wilcox as Dean had the run of the entire Chicago and Ft. Lauderdale headquarters. He had personal contact with the recruiters in both locations and held meetings with recruiters in both locations. He had daily contact with upper level management, including Andy Rosen, David Harpool, Chris Caywood, Ron Blumenthal, Lisa Geffen, Scott Kilgore and heads of recruiting in both locations.

22.    Wilcox was a loyal soldier for Rosen, Harpool, Caywood, Blumenthal, and carried out their directions under the threat of losing his job, even though he disagreed with them.

5

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

23.    On orders from these people, Wilcox ensured that professors retained unqualified students in class with passing grades, so that Kaplan could continue to maximize its student loans. The upper level management knew that most of these students never had a hope of graduating, but Kaplan would still be able to rake in billions of dollars. By falsely certifying that the students were eligible for Title IV funds, when if proper grading standards were applied, many of them would not have qualified.

24.    Wilcox was fully aware of the incentive compensation program that was put in place in both Chicago and Ft. Lauderdale for recruiters that was in violation of the Higher Education Act.

25.    As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Relators, Diaz and Wilcox simultaneously with or prior to the filing of this Complaint, provided to the United States Attorney for the Middle District of Florida and the Department of Justice a statement of all material evidence and information related to this Complaint.

26.    This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval," under the False Claims Act (31 U.S.C. §3729(a)(1)).

27.    The United States of America is here named a Plaintiff because funds of the United States of America ("Federal funds") were and are awarded to Defendant Kaplan, pursuant to the HEA, Title IV, as a result of the false claims alleged in this Complaint.

28.    Defendant Kaplan is one of the nation's largest private, for-profit higher education institutions providing educational programs for working adult students.

29.    Kaplan maintains online campuses throughout the country, including its Ft. Lauderdale campus located within the jurisdiction of this Court.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

30.    Kaplan has approximately 79 campuses nationwide and an online program, enrolling approximately 25,000 students.

31.    Each campus has multiple sites, also known as learning centers.

32.    The bulk of Kaplan's revenue arises from its online programs.

33.    Kaplan purchased Quest College in Davenport, Iowa in order to get into the online education business.

34.    Kaplan is accredited by the Higher Learning Commission and is a member of the North Central Association of Colleges and Schools.

35.    Through its online program and learning centers, Kaplan offers certificate programs, graduate and undergraduate degree programs.

36.    Relators Diaz and Wilcox are unaware of the true names and capacities of the Defendants sued as does 1 through 50.

37.    Some of the individual defendants who not only conceived the scheme in 2000-2002, but implemented the scheme to violate the higher education regulations and who continued to approve the scheme of frauding the government throughout the time of the complaint. Jonathon Grayer, former CEO, and Andy Rosen, the current president and CEO.  The scheme continues through the present.

38.    Other individuals at Kaplan who have assisted in the scheme from 2002-2004 and continuing until the present are Scott Kilgore, Greg Nelson, Lisa Geffen, Terry Nichols, David Harpool, and Ron Blumenthal.

## IV.    ALLEGATIONS AND CLAIMS OF PLAINTIFF/RELATOR JUDE GILLESPIE

### A.    General Allegations Detailing Subject Matter Jurisdiction For Plaintiff/Relator Jude Gillespie

7

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

39.     A public disclosure was made by Plaintiff/Relator Jude Gillespie on April 14, 2005 in the form of a complaint filed with the Department of Education's Office of Civil Rights (OCR).   A complaint filed with the Office of Civil Rights commences an administrative proceeding, and is considered a public record.   Plaintiff/Relator Jude Gillespie's Complaint was assigned case number 04-05-2087.

40.     As a direct result of the investigation conducted by OCR as a result of Gillespie's complaint, OCR found that the Kaplan Defendants were in violation of Section 504 of the Rehabilitation Act and its implementing regulations at 34 C.F.R. 104.7(b).   The OCR made the following findings of fact on October 27, 2005 in a document that is public record:

- The university does not have a published procedure detailing how a disabled employee can request accommodations based on his/her disability.

- The non-harassment policy only addresses the types of harassment to which an employee might be subjected.   As all discrimination does not necessarily rise to the level of harassment, the university needs to provide policies and procedures that address discrimination separately from harassment.

- The discrimination/harassment complaint procedure should be amended to provide the detailed process in which employees might seek informal and formal resolutions to their concerns.

- The university should designate consistently to whom informal and/or informal (sic) complaints may be addressed.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

- The university's policies and procedures should be amended so as to provide a definite detailed manner and period of time in which prompt investigations are to be completed (30-60 days).

- The complaint procedures should be amended to require the university to notify complainants in writing of the results of investigations.

- The university's policies and procedures should provided where a complainant and/or one who has been accused may appeal the investigation's findings.

Rather than face the possibility of the termination or suspension of their federal funding, the Kaplan Defendants agreed to enter into a Resolution Agreement with OCR to bring them in compliance with Section 504 of the Rehabilitation Act. The Agreement that Kaplan entered into with the Department of Education, however, fails on its face to comply with 29 USC § 794, in that the Agreement was entered into between Kaplan University and the Department of Education. Section 504 of the Rehabilitation Act provides that a "program or activity" under the Act includes "all of the operations of an entire corporation, partnership, or other private organization, or an entire sole proprietorship which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation, any part of which is extended Federal financial assistance." 29 USC § 794(b)(3)(A). OCR's findings clearly establish that the Kaplan Defendants had been obtaining federal funding without having first satisfied the necessary prerequisites mandated by federal law. Therefore, the Kaplan Defendants had fraudulently certified to the United States Government that they were in full compliance with the necessary prerequisites to obtain federal funding when in fact they were not.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

41.    A public disclosure was made by Plaintiff/Relator Jude Gillespie on April 20, 2005 in the form of an amended complaint with the Department of Education's Office of Civil Rights. Furthermore, on April 29, 2005, there was e-mail correspondence between Mr. Gillespie and Pamela Simmons, general attorney for OCR, in which Mr. Gillespie states that Kaplan is in violation of 34 C.F.R. 104.1 to 104.11. In the documents supporting his OCR complaint and the amended OCR complaint, Mr. Gillespie advised OCR that the Kaplan Defendants were obtaining federal funding without proper compliance with prerequisites necessary to obtain such funding.

42.    A public disclosure was made by Plaintiff/Relator Jude Gillespie on October 28, 2005 in the form of a Freedom of Information Act (FOIA) request. On November 22, 2005, there was a response from the United States Department of Education to Plaintiff's FOIA request.

43.    A public disclosure was made by Plaintiff/Relator Jude Gillespie on December 21, 2005 in the form of a complaint for declaratory and injunctive relief filed against the United States Department of Education. This action was filed in the United States District Court for the Southern District of Florida. It was assigned case number 1:05-cv-23282-PCH. Mr. Gillespie's allegations in this action constitute a public disclosure that the Kaplan Defendants were improperly obtaining federal funding.

44.    A public disclosure was made by Plaintiff/Relator Jude Gillespie on April 19, 2006 in the form of a FOIA request. Department of Labor, Office of Federal Contract Compliance Programs assigned Mr. Gillespie's FIOA request complaint number 100128835. A response from the United States Employment Standards Administration to Plaintiff's FOIA request was made on April 27, 2006.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

45.    Each of the public disclosures alleged in this section predate the filing of the

*Gatsiopoulos v. ICM School of Business* complaint which was filed under seal in the United

States District Court for the Western District of Pennsylvania on November 2, 2006.

**B.**    **General Allegations Detailing The Kaplan Defendants' Fraudulent Conduct**

**Failure to Comply with the Rehabilitation Act
and False Certification of Compliance**

46.    Plaintiff Jude Gillespie realleges and readopts Paragraph 1 through 10, and 39-45

as though fully set forth herein and further states:

47.    The Kaplan Defendants are a university offering Federal financial assistance to its

students.

48.    The Kaplan Defendants failed to adopt grievance procedures which provide for

the prompt and equitable resolutions of complaints alleging any action prohibited by the

Rehabilitation Act.  Furthermore, Kaplan Defendants failed to designate at least one person to

coordinate its efforts to comply with section 34 C.F.R. 104.7.

49.    The Kaplan Defendants have over 31,000 employees.  Kaplan University has

2,000 faculty members.

50.    In order to obtain federal student financial aid through Title IV, an educational

institution must certify to the United States government that it will comply with statutory and

regulatory prerequisites established by the Higher Education Act and the Department of

Education.  The educational institution certifies its present and future compliance with these

statutes and regulations through a Program Participation Agreement (PPA), the execution of

which is a prerequisite to obtaining Title IV financial aid for its students.  One of the specific

statutory references in the PPA is that the education institutions agrees to comply with Section

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

504 of the Rehabilitation Act of 1973 and its implementing regulations. Therefore, the Kaplan Defendants were required to comply with the requirements of the Rehabilitation Act as a prerequisite to their eligibility for receipt of Title IV student financial aid.

51.    In December 2004, a situation developed between Plaintiff/Relator Jude Gillespie and Kaplan Defendants after Gillespie requested reasonable accommodations pursuant to Section 504 of the Rehabilitation Act. Subsequent to his request for accommodation, Kaplan undertook a series of adverse employment actions in retaliation in knowing disregard of the requirements of federal law.

52.    On April 1, 2005, via telephone conversation, Plaintiff/Relator Jude Gillespie told Karen Ross, Senior Vice President of Human Resources & Associate General Counsel for Kaplan, of his intentions of filing a lawsuit based on discrimination. During this time, Karen Ross requested an opportunity to resolve Plaintiff's disputes and find Plaintiff another position within Kaplan.

53.    Plaintiff/Relator Jude Gillespie refrained from filing a lawsuit due to Karen Ross's statements about resolving Plaintiff's disputes.

54.    On April 6, 2005, there was e-mail correspondence between Plaintiff/Relator Jude Gillespie and Karen Ross in which Karen Ross indicated Kaplan Defendants' seriousness in trying to resolve Plaintiff's complaint; however, she offered no possible solutions.

55.    On April 6, 2005, Plaintiff/Relator Jude Gillespie requested information on Kaplan Defendants' good faith attempt to remedy the situation privately. Plaintiff received no response until April 10, 2005 at which time no resolutions were offered.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

56.    On April 10, 2005, through a telephone conversation, Karen Ross requested that Plaintiff/Relator Jude Gillespie refrain from filing a lawsuit until April 12, 2005 in order to find a solution to the dispute.

57.    Kaplan Defendants failed to make any attempts to resolve Plaintiff/Relator Jude Gillespie's complaints of discrimination.

58.    On April 29, 2005, Mr. Gillespie corresponded with Pamela Simmons, counsel for OCR, via e-mail in which he advised that the Kaplan Defendants were in violation of the federal regulations with which they were required to comply in order to receive Title IV funding, and 34 C.F.R. 104.7 in particular. As detailed above in Paragraph 40, OCR concluded that Mr. Gillespie was correct in his assertions that the Kaplan Defendants were in violation of Section 504 of the Rehabilitation Act. OCR made specific findings of fact on October 27, 2005 detailing the numerous deficiencies in Kaplan's policies and procedures regarding providing accommodations to disabled staff and the grievance and accommodation policies.

59.    As a result of these findings of fact by OCR, the Kaplan Defendants entered into a Resolution Agreement that purportedly would resolve the outstanding issues disclosed as a result of Mr. Gillespie's OCR complaint (case number 04-05-2087), although the Kaplan Defendants took no action subsequent to the Resolution Agreement to comply with its terms, and therefore remain in noncompliance. Thus, the Kaplan Defendants had fraudulently misrepresented to the United States Government that they had complied with the necessary prerequisites to obtain federal funding for student financial aid when in fact they had not.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

**Online Diploma Mill Results in False Certification that Students are Maintaining Satisfactory Academic Progress**

60.     Plaintiff realleges and readopts Paragraph through 10, and 39-45 as though fully set forth herein and further states:

61.     In addition to making certification that they (Kaplan Defendants) met the prerequisites for obtaining federal funding as an educational institution, the Kaplan Defendants were also required to certify that each student applying for federal financial aid was maintaining satisfactory academic progress toward the student's degree or certificate.  In furtherance of Kaplan's pursuit to fraudulently obtain federal financial aid for as many students as possible, Kaplan instituted a policy whereby it manipulated the students' academic progress in such a way to certify that students receiving financial aid were maintaining satisfactory academic progress. When students fail to perform up to minimal standards, Kaplan professors were pressured to inflate those students' grades.

62.     This conduct manifested itself in many forms, including articles in the news media, such as the March 15, 2006 article entitled "In an Online First, More Than 50 Kaplan U. Professors Back Creation of a Faculty Union" published in *The Chronicle of Higher Learning*. **http://chronicle.com/free/2006/03/2006031501t.htm.**    This article details the professors' position that Kaplan relied heavily on student evaluation surveys completed at the end of courses which determined whether a professor was retained.  Professors who inflated grades were retained while those who accurately graded students were not retained based on poor student surveys.  Thus, Kaplan professors who gave bad grades to students who deserved those marks risked being fired by the university.

63.     A Department Chair's job performance at Kaplan University included one key

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

factor, namely the teaching measure scores of all faculty members in the Chair's department would be averaged across the board. Thus, if the Chair continued to employ a faculty member who received "poor" survey scores by Kaplan students, the Department Chair was at risk of termination of his or her employment by Kaplan University.

64.    The teaching measure score was calculated exclusively from student surveys and was the sole determinate for a professor retaining his or her position. Professors who obtained scores of 4.1 or below (out of a 5.0 point scale) from students were characterized as having "abysmal teaching ratings" by Connie Bosse, Vice President/Dean of Undergraduate Studies in an email dated January 28, 2005 sent to Gillespie. At least four professors who received ratings ranging from 3.58 to 4.17 were placed on probation and were advised by Tom Nguyen, Chair of the Paralegal Studies Department, that their student rating scores had to improve to the school-wide average of 4.45 or they would terminated. Ms. Bosse stated in response that these professors should be "strongly encouraged to have a high return rate and better result."

65.    Mr. Gillespie had notified Karen Ross, Esquire, Kaplan's senior V.P. of Human Resources, of these exact policies of grade inflation to undeserving students and failure to accurately grade non-performing students in an e-mail on April 14, 2005, the day before he was terminated by Kaplan. And this information was disclosed to OCR – and hence to the government – during its investigation of Gillespie's OCR complaints. Mr. Gillespie, Academic Department Chair for Kaplan University School of Paralegal Studies, knew about specific instances where professors were pressured to inflate grades.

66.    For example, Mr. Gillespie was part of an e-mail thread in which Academic Advisor for Paralegal Studies, Nicole DiLaura, advised Adjunct Professor David Weigel on March 30, 2005 that a particular student's grade was incorrect and should be changed. Ms.

15

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

DiLaura stated, "I know you are aware of the fact that her Mid Term grade is incorrect. I was wondering how and when the grade is changed." Professor Weigel responded that the student's midterm grade was not incorrect and that the student had failed to comply with course deadlines. The nature of this exchange between Student Advisor DiLaura and Professor Weigel was forwarded up the chain of command at Kaplan and, on March 31, 2005, Randy Shochet, Paralegal Department Chair for Kaplan University, expressed his concern to John Berube, Associate Dean, that this incident of pressuring a professor to change grades was not isolated and that the school was becoming a diploma mill.

67.     One of the tactics employed by Kaplan to create a diploma mill was to coerce professors into inflating student grades by placing such a high priority on student surveys that a poor student survey result meant that the professor was very likely to lose his or her teaching position. Moreover, Kaplan manipulated the timing of these surveys so that students received their midterm grades prior to completing the evaluation, which in turn left the professors exposed to student retaliation via the student survey. Some professors gave into the pressure exerted by the Kaplan Defendants to inflate grades as recognized by Connie Bosse, Dean of Undergraduate Studies when she commented in an email dated September 20, 2004 that "some faculty will give a student a grade of C when they have done no work what so ever." Professors took this action to avoid retaliatory student surveys. Kaplan's administration was aware of this possible retaliation and the consequences therefore to its professors, but it chose not to change anything despite the fact that professors were protesting to this policy.

68.     For example, on April 5, 2005, Randy Shochet advised Martin Connor, Department Chair of the School of Paralegal Studies, that administering student surveys of professors' performance after the submission of midterm grades forced professors to engage in

16

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

grade inflation in order to diminish any negative student feedback. Professors who received low student evaluation scores were terminated; thus, coercing professors' to inflate grades in order to maintain employment with the Kaplan Defendants.

69.    In addition, in order to be eligible to receive Title IV financial aid, students are required to maintain satisfactory progress toward the completion of their studies usually with a minimum grade point average of at least a "C" or its equivalent. 34 C.F.R. 668.34(b). The Kaplan Defendants were required to certify that students applying for federal aid in their second academic year met this grade point average requirement. The Kaplan Defendants certified that these students met the satisfactory progress standard when in fact many of them did not.

70.    The Kaplan Defendants utilized a grading system that purposely manipulated and skewed students' grades on a class-by-class basis so as to maximize the number of students obtaining high grades. The Kaplan Defendats' manipulation of the grading system is revealed by its bi-modal distribution rather than a normal distribution, i.e. the traditional bell-curve. A normal distribution results in the majority of the students receiving Bs and Cs, and a minority of the students receiving As and Fs. By contrast, in a bi-modal distribution, grades are not normally distributed; instead two grades are disproportionately awarded. The bi-modal grade distribution system results in a disproportionate number of students receiving As, and Bs. By maximizing the number of students receiving high grades in each class, the Kaplan Defendants are, in turn, fraudulently maximizing each student's Grade Point Average (GPA). In a normal distribution, 50% of the grades should be C or better, and 50% should be C or worse. As evidenced by the email disclosed in Paragraph 68, 75% of Kaplan students received a grade better than C, rather than the 50% that one would expect from a normal distribution. Through this grade inflation scheme, the Kaplan Defendants falsely certify that many undeserving students meet the

17

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

satisfactory progress requirements necessary to obtain financial aid.

71.     Plaintiff/Relator Jude Gillespie was one of the authors of an email string on April 2, 2005 in which Kaplan's use of the bi-modal grade distribution system was discussed.    The email discussion thread included Randy Shochet, John Berube, Martin Connor, and Tom Nguyen.    The email thread pointed out the fact that the bi-modal grade distribution system resulted in artificially inflated GPAs and penalized professors who utilized the traditional bell-curve by encouraging retaliatory student survey results.    Professors expressed concern that this system created an inaccurate picture of students' academic progress and achievement and essentially resulted in Kaplan's operation of an online "diploma mill."    For example, in an email dated April 6, 2005, the final grade report for the School of Paralegal Studies showed that two-thirds of the students received As and Bs and that only nine percent received Cs.    Thus, 75% of the students were in the top half of the bell-curve where only 50% should have been.    These manipulated "high performance rates" allow the Kaplan Defendants to falsely certify that their students are maintaining satisfactory progress toward the completion of their academic programs.

### C.    Violations Of The False Claims Act

### COUNT I
### The Kaplan Defendants Knowingly Made False Statements to Obtain a False or Fraudulent Claim Payment or Approval in Violation of 31 U.S.C. § 3729(a)(1)(A)

72.     Plaintiff realleges and readopts Paragraphs 1 through 10, and 39-71 as though fully set forth herein and further states:

73.     In performing all of the acts alleged herein, the Kaplan Defendants defrauded the United States of America by knowingly presenting, or causing to be presented, to one or more officers, employees or agents of the United States, specifically the U.S. Department of

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

Education, a false and fraudulent claim for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

74.    As a direct and proximate result of the Kaplan Defendants' false and fraudulent statements, the U.S. Department of Education provided or approved payment to the Defendants for billions of dollars in federal financial aid intended for educating eligible students attending the Kaplan Defendants' online schools.

75.    The Kaplan Defendants' conduct was material in that it caused the U.S. Department of Education to approve and pay the financial aid to the Defendants for their students.  As a result of the Kaplan Defendants' conduct, the Unites States of America has been significantly damaged.

<div align="center">

**COUNT II**
**The Kaplan Defendants Knowingly Made False Statements to Get a False**
**or Fraudulent Claim Paid or Approved in Violation of 31 U.S.C. § 3729(a)(1)(B)**

</div>

76.    Plaintiff realleges and readopts Paragraphs 1 through 10, and 39-71 as though fully set forth herein and further states:

77.    In performing all of the acts alleged herein, the Kaplan Defendants knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

78.    As a direct and proximate result of the Kaplan Defendants' false and fraudulent statements, the U.S. Department of Education provided or approved payment to the Defendants for billions of dollars in federal financial aid intended for educating eligible students attending the Kaplan Defendants' online schools; thereby damaging the treasury of the United States of America by causing it to pay out money it was not obligated to pay.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

79.     The Kaplan Defendants' conduct was material in that it caused the U.S. Department of Education to provide the Defendants a benefit in the form of the approval and payment of financial aid to the Defendants for their students.   As a result of the Kaplan Defendants' conduct, the Unites States of America has been significantly damaged.

## PRAYER FOR RELIEF AS TO COUNTS I AND II

WHEREFORE, *Qui Tam* Plaintiff/Relator Jude Gillespie requests that the following relief be granted:

A.     Judgment in favor of the United States of America against the Kaplan Defendants, by reason of the violations of the False Claims Act as set out herein, in an amount equal to three times the amount of damages the Unites States has sustained because of the Defendants' action, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00), and not more than Ten Thousand Dollars ($10,000,00), for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. §3729(a);

B.     Award to the Relator, as the *Qui Tam* Plaintiff, the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act on the United States' recovery;

C.     Award the Relator all reasonable expenses the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;

D.     Punitive damages on all causes of action to the extent allowable by law; and

E.     Such other relief as the Court deems proper given the facts ultimately determined in this case.

## V.     ALLEGATIONS AND CLAIMS OF PLAINTIFFS/RELATORS CARLOS URQUILLA-DIAZ AND BEN WILCOX

### Outrageous compensation of Andy Rosen and Jonathon Grayer and Fraudulent Scheme.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

80. Ohio State University is one of the oldest and most prestigious universities in the United States. Its President is one of the most highly paid of all public universities, according to Parade Magazine. Ohio State has approximately 56,000 students and an annual budget of approximately $4,000,000,000.

81. The President of Ohio State is paid approximately 1.2 million dollars per year. In contrast to this, Jonathon Grayer decided to leave Kaplan in late 2008 and it has been indicated that he received approx 72 million dollars from Kaplan and/or the Washington Post.

82. It has been indicated that Andy Rosen received approximately 24 million dollars as the President of Kaplan.

83. Rosen and Grayer conceived the idea to violate the higher education laws in the early 2000's.

84. Grayer, the President and CEO, implemented the plan to violate the regulations higher education laws by knowingly paying bonuses to the admissions advisors, which were based primarily on the number of students recruited.

85. The incentive compensation plan has been modified to include retention bonuses, cash bonuses, trips, and other incentive compensation.

86. The illegal incentive compensation plan has been in effect since the early 2000's and continues today.

87. Admissions advisors are commonly called sales recruiters by Kaplan.

88. The scheme further included popups on the internet for Education Connection Corporation, which is a subsidiary of Kaplan. The purpose was to not only advertise for online

21

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

degrees, but to also advertise for individuals to win gifts and prizes (i.e. computers, ipods, etc.) by entering online contests and filling out questionnaires.

89.    When a potential student filled out the form on the internet which asked them whether they had ever considered further education, the information was very quickly turned over to Kaplan's recruiting department. An admissions recruiter would contact the unsuspecting person and give a complete sales pitch on how they could have the American dream by enrolling in Kaplan Online University. The recruiters were highly trained with motivational sales pitches and how to overcome objections when a person indicated either non-interest or that they did not have the money.

90.    The recruiters would even waive the $95 enrollment fee in order to enroll a person. This was done because once the student request for federal funds was filled out and emailed to the DOE and/or another institution that was backed by the government funding guarantee, large amounts of funds would be transferred to Kaplan University.

91.    As stated above, the sales recruiters (admissions advisors) were paid via an incentive-based compensation, including bonuses based on their individual enrollment numbers. Although the official compensation plan looked like there were other factors besides the number of enrollments, it was nothing more than a disguised plan to pay unlawful compensation to the recruiters. Kaplan's recruiters' compensation began at $25,000-29,000, depending on their date of hire from 2002 through 2009. Based on the number of enrollments, a recruiter could very easily increase their compensation from $30,000 to $75,000 or even up to $100,000, depending on how many enrollments they had during that period.

92.    There is a tremendous amount of pressure on the recruiters to enroll a high number of students; if they do not maintain a certain level, their compensation is greatly reduced.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

After three months, if their performance numbers are not back to previous levels, they are normally terminated if they do not quit themselves due to the pressure.

93.     It is not unusual for the paramedics to be called to the boilerplate call centers that Kaplan runs in Ft. Lauderdale and Boca Raton, FL; Phoenix, AZ; Chicago, IL.

94.     Kaplan has now opened up a call center in Orlando because it has been through so many recruits in the Ft. Lauderdale/Boca Raton area.

95.     Kaplan recruits admissions advisors by going to the unemployment job sites, worknet centers, internet postings, and newspaper classified ads.

96.     The emphasis placed on the recruiter's job is not to see whether the student will ultimately be able to graduate from Kaplan, but to enroll the student regardless of their ability to complete college level courses in order to maximize the profits for Kaplan.

97.     The recruiters are allowed to use their own cell phones so their conversations are not recorded when they are pursuing enrollments. Thus, the recruiters can make any kind of promise they want to in order to obtain the enrollment. This is allowed in direct violation of official policy that all conversations are to be held on the recorded lines.

98.     Admissions advisors at typical public universities and/or qualified private, non-profit universities are normally paid a regular salary regardless of their number of enrollments. Further, admissions advisors at a normal public university or four-year private school are trained to help a student not to enroll in a program they are not qualified for and most likely will not graduate from.

99.     Kaplan has made promises of accreditation for their various programs; i.e. they hold their paralegal program out as certified in every state and that their credits will be accepted at ABA law schools. In fact, the only law school in the county that will accept their credits is

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

Concord College in California, which is wholly owned by Kaplan, Inc. A former student, Judy Hatch, was a victim of this type of misinformation.

100.    As more fully stated below, Kaplan's cohort default rate on student loans is one of the highest in the industry. When a student loan is defaulted upon at Kaplan, most likely the taxpayers of America will have to pick up the loan that should never have been granted in the first place.

101.    Kaplan's graduation rate is one of the lowest in the United States.

102.    As stated in more detail below, Kaplan violated the 90/10 rule of the higher education laws by encouraging its employees to take courses at Kaplan under its Gift of Knowledge fund. Under this fund, the student would not actually pay any tuition. However, Kaplan would in fact use creative accounting techniques to indicate that Kaplan was receiving that cash from the students when it was not. For example, one of the students who was enrolled under the Gift of Knowledge scholarship program was Karri Jorgenson from 2005 - 2007.

103.    Some of the students who were enticed to enroll at Kaplan and who incurred student debt loans under the Title IV program and other federal programs include the following:

> (a)    Todd and Amber Coates (from Indiana) - attached to this complaint is a copy of her student financial aid application, the promissory note, and the other paperwork Kaplan used to defraud the government. (Exhibit A).
>
> (b)    Angelique Welch (from Arizona) A copy of the FSLA and other documents that were used by Kaplan to obtain federal money under false pretenses in violation of the Higher Education laws. (See attachment Exhibit B).

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

(c)  Judy Hatch (from Wisconsin)  - See copies of her student loan and promissory notes attached (Exhibit C).

104.  Kaplan plans to hire in excess of 1500 recruiters this year in order to continue its high pressure soliciting of potential students.  The average life for a recruiter at Kaplan is between three and nine months.  Kaplan believes if they can keep the recruiters for six months, they will generate revenues of $500,000 each; in nine months they can generate $900,000 in revenues.  It is Kaplan's belief that a very high percentage of these recruiters will burn out after nine months.

105.  Relators' counsel is unaware of any other public university or private non profit university in the United States that intends to hire anywhere near 1500 recruiters in one year.

106.  Various recruiters who were employed by Kaplan from 2002 to the present whose salaries were increased or decreased based on the number of enrollments, or were fired or terminated based on the number of enrollments are as follows:

- Dave Schienberg in Florida.  His pay rose from $29,000 a year to $50,000; when he was unable to meet the higher quota that came with the higher pay, he was terminated. He was employed for approximately 19 months at Kaplan, from 2006-2008.  He was pressured to enroll students whether they were qualified or not.

- Paris Henderson was employed from approximately 2005-2008.  He is another employee who was paid based on the number of enrollments he obtained.   He was ultimately terminated for not meeting the increased requirements.

25

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

- Justin Keyes worked at Kaplan from 2006-2008. His pay started at $30,000 and rose to $50,000 based on the number of enrollments he obtained. When his enrollment numbers dropped, so did his salary, as it was reduced to $37,000. When he was not able to increase the number of enrollments to the higher, required levels, he was terminated.

- Mark Anthony Edwards - he worked as a recruiter for Kaplan for about five years, ending April 10, 2009. His starting salary was approximately $26,000. It was increased to approximately $60,000 based on the number of students he enrolled. His salary was reduced back to $30,000 when he could not maintain higher levels of new enrollments.

107.    Relators will amend their complaint when the true names and capacities have been ascertained.

108.    Each Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

109.    The terms "Defendants" will refer collectively and individually to the aforesaid Defendants acting by and through their managerial employees.

110.    Managerial employees of the Defendants, in doing the acts and things described in this complaint, were acting within the course and scope of their respective agencies and/or employment with the Defendants, and each of them, with the knowledge and consent of the Defendants, unless otherwise indicated. These include all employees named in paragraph 37 and 38.

111.    At all relevant times each Defendant was the authorized agent of each other Defendant.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## B. **Specific False Claims and Fraudulent Statements**

### **Summary of the Fraudulent Conduct**

112.    HEA, Title IV, requires all colleges and universities to certify annually that they are in compliance with all Federal regulations, Federal laws, State laws, and that they meet the proper requirements of the accrediting agency in order to receive the Federal financial student loans

113.    Kaplan falsely certified on an annual basis that it met all of the requirements for participation under the Higher Education Act and regulations from 2000 and continuing until the present.

114.    The United States Government awards approximately $6 billion a year to help students obtain their educations at colleges and vocational schools. Some of the students who were enticed to enroll at Kaplan and who incurred student debt loans under the Title IV program and other federal programs include the following:

- Todd and Amber Coates (from Indiana) - attached to this complaint is a copy of her student financial aid application, the promissory note, and the other paperwork Kaplan used to defraud the government.  (Exhibit A)

- Angelique Welch (from Arizona) A copy of the FSLA and other documents that were used by Kaplan to obtain federal money under false pretenses in violation of the Higher Education laws.  (See attachment Exhibit B)

- Judy Hatch (from Wisconsin)   - See copies of her student loan and promissory notes attached (Exhibit C)

115.    The Federal funds, however do not go to the students.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

116.    Instead, the educational institution requests the funds of the United States Department of Education or a third party intermediary lender.

117.    The United States Government or the lender wires the funds directly into the institutions' accounts.

118.    The institutions then credit their students for tuition.

119.    Students are responsible for paying back the United States Government once they graduate or stop attending the university.

120.    Students disqualified from a university must still repay the federal loans.

121.    These students, unable to complete their education and obtain a decent paying job to repay their federal loans, are forced into dire financial situations.

122.    Or, rather than being dropped from Kaplan, Kaplan requires the students to take additional courses, costing them on average $1,000 per course.

123.    The institutions, meanwhile, retain the fraudulently obtained federal funds.

124.    To boost its enrollment numbers, Kaplan urges enrollment counselors to enroll students without reviewing their transcripts to determine their academic qualifications to attend the university. For example, David Schienberg was asked to enroll students whether they were qualified or not, and whether they were likely to graduate or not. This was done to ensure the maximum amount of money was obtained from the Title IV funds under the Higher Education Act.

125.    This process leads to student disqualification from Kaplan (or additional financial costs for the students to take additional classes) and financial disaster for the students forced to repay the federal loans while Kaplan collects the federal funds for these fraudulently "enrolled" students.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

126.    One of the requirements that a university must have in place is a program that complies with Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 (b)(2), and Title I of the Americans with Disabilities Act, 42 U.S.C. Sections 12101-12117.

127.    Kaplan University / Kaplan Higher Education Corporation / Kaplan Inc. / must be compliant under U.S.C. Section 794 (b)(3)(A)(ii), in order for a division to receive Federal financial assistance.

128.    Kaplan and the EEOC entered into a resolution agreement in 2005 or 2006 which Kaplan would become compliant. However, to the best of Gillespie's knowledge Kaplan has failed to become compliant with this provision as of yet.

129.    As a result of Kaplan's failure to meet the compliance requirements, it is not entitled to receive Federal financial assistance.

130.    Any monies received by Kaplan while they are out of compliance would be received under false pretenses.

**Scheme to inflate grades so that Kaplan could falsely certify that its students maintained minimum academic achievement standards to qualify for Title IV funding.**

131.    The upper level management of Kaplan's online School of Paralegal Studies put pressure on the professors and the department chairmen to keep the students enrolled, even if work was not turned in or they had bad grades.

132.    Dean Connie Bosse noted in her email to the department chairmen that giving a "C" for no work was not the best idea.

133.    There was pressure by upper management to give higher, unearned grades in order to keep students enrolled. Wilcox and Bosse enforced this policy which they understood to come from Grayer, Rosen, Harpool, and Caywood.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

134.    This pressure to inflate grades resulted in the majority of students receiving "A's" or "B's"; which was done as part of the false certification that students were obtaining satisfactory academic achievements.

135.    This false certification allowed Kaplan to keep its eligibility to receive Federal funding, when in reality many of its students were not meeting the required academic standards to meet that eligibility requirement.

136.    Upper management also pressured department chairs not to renew the contract of those professors who did not grade leniently.  Randy Schocet was a victim of this tactic, as was Carlos Diaz.

137.    Professors were graded on a student survey, which was basically a popularity contest based on the grades the students received. This forced the professors to inflate grades or risk losing their jobs.  Carlos Diaz was a victim of this tactic.

138.    When Diaz was a professor, he refused to give inflated grades to undeserving students.  He was threatened with being fired for refusing to inflate grades.  Other professors gave in to the pressure from upper level management (Grayer, Rosen, Harpool, Caywood, Wilcox).

139.    Upper management put emphasis on doing whatever was necessary to keep the students enrolled, so the cash flow would continue to come to Kaplan. This policy was handed down from Grayer and Rosen to the Deans.

140.    This policy was instituted because in order to maintain eligibility to receive Title IV funding, students are required to maintain satisfactory academic progress, or a "C" average. 34 C.F.R. Section 668.24(b).  Kaplan knew it was required to certify that its students who were applying for financial aid met these minimum standards.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

141.    By inflating the grades, Kaplan was falsely certifying that its students met the minimum GPA standard. Had it been truthful in its grading, many students would have fallen below the required standard, rendering Kaplan ineligible to receive funds on their behalf after their first semester.

142.    Kaplan has enforced this policy since 2002 over the protests of many of its professors; this practice continues through the present.

143.    Carlos Diaz was one such professor who wanted to form a union so that Kaplan's professors could grade truthfully and without fear of losing their jobs; it was also one of the reasons he was fired from Kaplan.

144.    Counselors would recruit minority students who were not qualified for college, as they either did not take the SAT exam, or received poor grades on the exam.

145.    A key tactic used by Kaplan was to recruit "at risk students" who would most likely fail in a traditional classroom, based on Kaplan's research.

146.    Kaplan would attempt to assure students that they would do fine in the online courses when in fact, Kaplan knew that the students were not prepared to enter that academic program.

147.    When the students failed courses, Kaplan kept re-enrolling the students until the Federal financial aid was cut off.  It was only then that Kaplan would dismiss the student.

148.    The indicated hiring rate (or placement rate) after graduation was misleading and false.

149.    These policies were enforced by Andy Rosen, David Harpool, Chris Caywood, Ben Wilcox, and Scott Kilgore (upper level management) to ensure that the Q-rate remained high in order to receive the maximum amount of federal funds.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## Scheme Inducing Students to Misuse Funds

150.    Kaplan would pursue "at risk" students and inform them that the U.S. Government would give them loans that would not have to be repaid for some time, and that they could use the funds leftover after tuition was paid in any way they wished.

151.    The fraud is then perpetrated when the student uses some of the loan money to buy a car, and does not even go to class.

152.    Kaplan had an informal referral system due to students telling their friends about how easy it was to get these loans, and then not have to go to class.

153.    Kaplan knew that many of these students would be very unlikely to meet the course requirements and obtain a job in that particular field, yet Kaplan continued to encourage the enrollment and improperly kept its share of the money for huge profits.

## Online Diploma Mill
### (False Statements Pertaining to Students' Academic Achievements)

154.    Kaplan attempted to make the courses so easy that no one would fail them.

155.    Even so, Kaplan would falsely certify to the DOE that failing students were achieving satisfactory grades in order to keep the Federal financial funding flowing.

156.    If Kaplan failed to certify to the DOE that its students were achieving appropriate academic grades, it would not be eligible to receive Federal funds.

157.    When students were failing their classes, Kaplan would pressure its professors to artificially inflate the grades of those students to passing levels in order to maintain the Federal funding.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

158.    Those professors who inflated student grades were retained by Kaplan; those who refused to do so were fired.  This was contrary to the accepted grading method used by professors who were free to grade fairly.

159.    The curriculum did not prepare the student to acquire a job, and failed to prepare them for the job itself.

160.    An employer would find out within just a few days that the so-called diploma and or degree from Kaplan was provided to the student without requiring the student to demonstrate the proficiency level to obtain the degree.

161.    If a student obtained a degree, when the employer tested a potential employee, the new graduate would not have adequate skills that they should have acquired in obtaining that degree.

162.    As a result, the new graduate would either not obtain the job, or not be able to maintain it.

163.    These policies have been ongoing since the early 2000's until the present.  This was again implemented under the direction of Andy Rosen and David Harpool, Chris Caywood, and Scott Kilgore (upper level management).

### Violations of the 90/10 Rule

164.    In order for the institution to be eligible to receive Federal financial aid, the institution must comply with the 90/10 Rule.

165.    To qualify for the Rule, the institution must receive at least 10% of the student's tuition funds in cash, rather than from student loans.

166.    If the institution receives more than 90% of its income from student loans, it is no longer eligible to receive Title IV funds under the HEA Act.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

167.    In violation of this Rule, Kaplan pays its employees to become students at Kaplan University to give the appearance that Kaplan is meeting the Rule.

168.    The federal 90/10 rule indicates that in order for a school to receive federal student loan money they must maintain at least 10% of the student as cash tuition payers and NOT on any student loan or federal money or assistace at all.

169.    Acting with others, Andy Rosen, President of Kaplan University, came up with an elaborate scheme to defraud the federal government of student loans, and violate the Title IV laws. He informed Wilcox, Chris Caywood, Harold Levy, David Harpool and others in higher level management of his plan.

170.    The plan also allowed Kaplan to violate the Sarbanes Oxley Act and the Higher Education Act at the same time so Kaplan could hide monies and finance Kaplan's student loan fraud.

171.    The KU model and plan was devised by Mr. Chris Caywood, a financial CFO from Sears Corporation and former business associate of Kaplan's legal counsel, Mr. Harold Levy. He was hired to work for Kaplan to assist it in this fraudulent scheme.

172.    The plan works as follows. Kaplan could not maintain 10% of its students without any federal student aid at all as the HEA requires, to keep Kaplan in business and eligible for student loans. In order to meet this requirement and stay eligible to receive student loan money Kaplan had Dr. Jim Dorris create an MBA graduate program at Kaplan in May of 2005.

173.    However, most of the students admitted to the Kaplan MBA program were employees of Kaplan. The students could not afford to pay the tuition, so Kaplan would just give/award them the money in what was called the "Gift of Knowledge Scholarship." The Gift of Knowledge was nothing more than Kaplan diverting legitimate student loan monies from

34

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

other legitimate students into the Gift of Knowledge account. Then Kaplan would give/award the Kaplan employees with that money so they in turn could pay the school. That would give the appearance that they were cash-paying students, thus providing Kaplan with the 10% of students who were not on federal student loans.

174.    That and other student loan frauds were so successful that Kaplan started doing it at the Bachelor level with employees, too. The truth is that most of the MBA and graduate students at Kaplan even today are all employees who were given this "Scholarship" in order to pay their tuition and give the illusion that Kaplan is meeting the federal 90-10 rule. The truth is that almost 100% of all Kaplan money is taken in from federal student loans.

175.    Just a few of the recipients of the "Gift of Knowledge" academic scholarship were:

- Miss Sarah Coe (Kaplan employee), Assistant to the President of Ground Schools, Mr. Jeff Conlan.

- Miss Jessica Hensley (Kaplan employee) Assistant to Mr. David Harpool, COO and Provost of Kaplan.

- Allison XXXXX (Kaplan employee), Assistant to Gene Scaramella, Dean of Criminal Justice.

176.    The most blatant case of fraud by Kaplan in this 90/10 scheme may have been Miss Kari Jorgensen (Kaplan employee), Assistant to Mr. Chris Caywood, Vice President of Law and Legal Studies. Miss Jorgensen's Social Security number XXX-XX-1969 was given the "Gift of Knowledge" in 2006 to pursue an MBA with Kaplan. Ms. Jorgensen never paid a dime of her own money to Kaplan. All of her tuition was paid though the Gift of Knowledge fund and

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

Kaplan reported her to the government and the (HLC) Higher Learning Commission as a cash paying student, thus helping the 90/10 compliance out.

177.     Kaplan reported to the government and the (IRS) Internal Revenue Service that Jorgensen (SS# XXX-XX-1969) was a cash paying student.  Kaplan also reported the 'income' from Miss Jorgensen's tuition as cash paid by her to the school.  Miss Jorgensen received a $12,000.00 tax credit form from the IRS, indicating that Kaplan had reported cash income from her for her MBA tuition; thus she was given a $12,000.00 tax credit on her 2006 and 2007 tax returns for "tuition paid" to Kaplan.

178.     The fact is that Jorgensen never paid Kaplan a dime.  It all came from the Gift of Knowledge account. Kaplan carries a $12,000.00 amount as "receivable" and "unpaid" from Jorgensen on the books; yet Kaplan reports to the IRS that the debt was paid by Jorgensen with her own money. This fraud was repeated many, many times with many employees, so Kaplan could beat the 90/10 rule and keep receiving federal student loan funds.

179.     Example Two:   Attorney Chris Caywood, VPAA of Law and Legal studies, started a "Paralegal Club" for the students at Kaplan University. The money and fees to join this club were all sent in to Mr. Caywood directly as VP of the Paralegal Studies Department. Caywood kept all the checks, cash and fees in his desk drawer at the office on the 7th floor at 550 West VanBurren in downtown Chicago, and in the desk Drawer of his assistant, Miss Brooke Glatti.

180.     When the funds reached a certain point they were placed directly in the 'Paralegal club' bank account that Mr. Caywood and Miss Glatti opened. The Funds were then diverted to the 'Gift of Knowledge Scholarship' fund to finance the ongoing 90/10 fraud. Mr. Caywood once told Wilcox over lunch that they were carrying "too much money" in the desk drawers at the

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

office and that they needed to "open an account" soon as the desk drawers were too full of money and would not close anymore.

181.    More importantly, Caywood admitted that he thought Kaplan was violating the Sarbanes Oxley Act and other laws as well.   He asked Wilcox to open a separate account to divert funds into; Wilcox refused and suggested that he open an account with either NALA or AFPE to  administrate the funds and the clubs.

182.    The 90/10 Rule was violated from 2002 forward by Kaplan and continues through the present.

### Falsified Documents for Accreditation
### (Fraud on the Higher Learning Commission)

183.    Kaplan  University  officials,  with  the  approval  and  direction  of  upper management, falsified documents which were presented to the HLC for accreditation for certain college degree programs.

184.    Kaplan knew that without the falsified documents, it would not receive the accreditation it desired.

185.    After receiving the false accreditation, Kaplan applied for Federal financial aid for its students in those degree programs.

186.    Kaplan continues to receive the Federal funds under false pretenses.

187.    HLC violations include forged and fraudulent documents that were turned in to the HLC, NCA and ABA - namely the (RIC) request for change documents turned in to  the  government  and  HLC,  NCA,  and  SAC.   This  was  done  to  secure  and  maintain  an accreditation  that  Kaplan  did  not  and  does  not  meet  the  minimum  standards  for.   The accreditation is needed in order to continue to receive federal student loans.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

188.    Kaplan also misuses accreditation claims in admissions and advertising (Judy Hatch is a victim of misrepresentations by Kaplan). This includes forging HLC documents; (RIC) feasibility study on the Law and Legal Studies program; reports and studies on financial reports and income submitted by David Harpool each month; Q-Rate reports submitted to WPO by Andy Rosen on enrollments and financial projections; accounts receivable submitted by Albert Auckmed, CFO; creating false boards for Paralegal Studies; creating a false student panel that the HLC had to speak to. The "students" were really Kaplan employees who were rounded up from the Admissions office on the 7th floor of 550 West Van Burren in Chicago, IL 60607.

189.    This was done at the request of David Harpool and Ron Blumenthal in order to lie to the HLC about how Kaplan formulated their programs so in order to meet accreditation standards. Kaplan also back-generated and back-dated feasibility studies (Todd Zipper and Albert Auckmed) and budgets (Chris Caywwod and Eathen Kreul, Administrative Assistant to Ben Wilcox) to give to HLC examiners to show that Kaplan had budgets (which were non-existent), and had performed studies, had formed boards, advisors, and consultants (all of which were non-existent).

190.    Examples of this fraud include people listed on the official, formal HLC Advisory board roster, turned in to the HLC in 2005 and 2006 by Wilcox because of his superiors' orders. The HLC still has it on file, which lists the following people as Kaplan's fair, impartial, objective, unaffiliated or influenced professional academics:

- John Laneer, attorney from Wisconsin who was/is a VP at Kaplan.

- Charles Winestock, listed as attorney from MI, who is a full time professor at Kaplan.

- Ron P. Kern, PhD. Listed as retired academic. He was VPAA at Kaplan.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

- Bill Westin, listed as an attorney from Florida is actually the Dean of Paralegal at Kaplan.

- Charles Coleman- listed as an attorney from MU - he teaches full time for Kaplan.

191.    Kaplan simply cannot be allowed to lie their way out of this as it is documented public record. The HLC required a sworn statement from Kaplan that these people were not related to Kaplan and were fair, unbiased, and uncompensated academic advisors on the board. It is yet another fraud perpetrated on the HLC and on the government.

192.    Wilcox admitted that nearly everything he ever turned in to the HLC was false and given to him and ordered to be done by Andy Rosen, David Harpool, Chris Caywood, and Ron Blumenthal.

### Kaplan's False Certifications of Compliance to the Government, Required by Law for Eligibility to Receive the Federal Funds

193.    Educational institutions request Title IV funds for eligible students through several programs, including the Federal Pell Grant Program ("Pell"), the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), the Federal Perkins Loan Program ("Perkins") and the Federal Family Education Loan Program ("FFELP").

194.    For an educational institution to be eligible to receive these Title IV grant funds, the federal statutes and regulations require the institution to certify to the United States Government that the institution will comply with the HEA and DOE requirements through a Program Participation Agreement ("Agreement"). HEA, Sec. 487(a) and (a)(20); 34 C.F.R. Sec. 668.14(a)(1) and (b)(22)). This certification is a core prerequisite for an institution's eligibility to request and receive Title IV funds.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

195.   An educational institution is ineligible to receive Title IV funds without the Agreement certification of compliance with the HEA and DOE requirements.

196.   The Agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA program.

197.   The Agreement expressly states, in bold print, highlighted in a box on the first page:  The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.

198.   The Agreement's first paragraph furthermore provides that the institution's participation in the Title IV program is "subject to the terms and conditions of this Agreement."

199.   One of the "terms and conditions" of the Agreement is the HEA and DOE requirements.

200.   In the Agreement, the educational institution certifies that "[i]t will not provide . . . any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments . . . (Agreement, p. 5, para. 22, quoting directly from the HEA, Sec. 487(a)(2) and the federal regulations, 34 C.F.R. Sec. 668.14(b)(22)).

201.   Educational institutions violating the HEA and DOE requirements must return the Title IV funds, along with interest and special costs incurred by the DOE.

202.   Kaplan, in requesting and receiving its over one-half billion dollars a year in Title IV funds, every year falsely certifies to the DOE compliance with the HEA and DOE requirements in the Agreement it submits annually to the DOE.

203.   Kaplan falsely induces the Government to approve and/or pay out the Title IV funds, based on its false promises to comply with the HEA and DOE requirements.

204.   The promises when made are false.

40

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

205.    Upon making its promises and certifications, Kaplan knowingly engages in the illegal incentive compensation schemes detailed in other paragraphs.

206.    Kaplan every year also falsely asserts compliance with the incentive compensation ban in "management assertion letters" written by Kaplan management for an annual compliance audit.

207.    Kaplan must submit to the United States Government this annual compliance audit performed by an independent certified public accountant.

208.    Participation in the Title IV program is conditioned upon Kaplan submitting these audits certifying compliance with the HEA and DOE requirements.

209.    Kaplan is ineligible to submit any claims for HEA funds unless it submits this annual audit.

210.    As a required part of the audit, Kaplan certifies in a management assertion letter that it had "not paid to any persons or entities any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . for each year at issue."

211.    (b)Kaplan knows this certification is false because Kaplan intentionally violates the incentive compensation ban by providing trips and club rewards to the highest producing enrollment counselors.

### Kaplan's Claims for the Federal Government

212.    Upon entering the Program Participation Agreement with the United States Secretary of Education, Kaplan is eligible to request the Title IV funds from the United States Secretary of Education (for Pell Grant funds) or from third party lenders (for government-insured loans).

41

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

213.    For Pell Grant funds, Kaplan submits a request for those funds directly to the Secretary of the United States Department of Education.

214.    The request for funds is not a student application but a request prepared and transmitted by Kaplan to the Secretary of the United States Department of Education, stating the requested amount of funds.

215.    The United States Department of Education transfers the Pell Grant funds electronically directly into a Kaplan account.

216.    Upon receiving the Pell Grant funds, Kaplan credits various Kaplan students for tuition paid.

217.    A Kaplan student does not request or receive a dime of the Pell Grant funds.

218.    Kaplan's claims for the Pell Grant funds are fraudulent.

219.    When Kaplan requests, receives and retains the Pell Grant funds, Kaplan knows it is ineligible for those funds because of its intentional violations of the Higher Education Act HEA and DOE requirements.

220.    Kaplan knows that compliance with the Higher Education Act funding statute incentive compensation restriction is a core prerequisite for an institution's eligibility to request and receive Title IV funds.

221.    For government-insured loans, including the FFELP, Kaplan submits the request for those funds directly to a private lender.

222.    The Kaplan request for government-insured loan funds, arranged, managed and prepared by Kaplan, includes a student application that *contains an express certification by Kaplan that the student is an eligible student under the Title IV program.*

223.    The claim for government-insured loans *must* include this Kaplan certification.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

224.    Kaplan knows that this claim for funds is false because Kaplan knows its students are *not* eligible under the Title IV program due to Kaplan's violations of the HEA and DOE requirements.

225.    *Only* students at eligible Title IV schools may receive credit for Title IV government-insured loan funds disbursed by private lenders to educational institutions.

226.    Kaplan's fraudulent violations of the HEA and DOE requirements make it an ineligible educational institution to request and disburse Title IV funds, and thus its students are ineligible under the Title IV program.

227.    The lender, typically a bank, transfers the government-insured loan funds directly into a Kaplan account.

228.    Upon receiving the government-insured loan funds, Kaplan credits various Kaplan students for tuition paid.

229.    Kaplan's claims for the government-insured loan funds are fraudulent.

230.    When Kaplan requests, receives and retains the government-insured loan funds, Kaplan knows it is ineligible for those funds because of its intentional violations of the Higher Education Act HEA and DOE requirements.

231.    Kaplan knows that compliance with the Higher Education Act funding statute incentive compensation restriction is a core prerequisite for an institution's eligibility to request and receive Title IV funds.

232.    The United States Government pays all interest on the government-insured loans while the students are enrolled in classes and during authorized grace periods.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

233.    The loans are guaranteed by state agencies or non-profit organizations (called "guarantee agencies"), and are subsidized and reinsured by the United States Department of Education.

234.    If a student defaults, the guarantee agency reimburses the lender.

235.    If the guarantee agency cannot collect from the student, the Department of Education reimburses the agency.

236.    The United States Department of Education monitors loan defaults of post secondary schools and calculates a "cohort default rate" every year for Kaplan.

237.    The Department of Education calculates the loss to the United States Government relying upon this rate.

238.    Kaplan is buying back defaulted loans from lenders and pressuring students for collection.  These acts are made to appear that the cohort default rate is not too high for Kaplan's eligibility status for Title IV funding.

**Enrollment Counselors Are Rewarded With Trips, Gifts, and Contest Awards**

239.    Kaplan rewards the enrollment counselors by providing trips to exotic resorts, free membership in certain clubs, and provides other contest awards plus retention bonus.

240.    Kaplan awards more points for enrolling a student in their Bachelor's program than for enrollment in a two-year program.  This incentive program will encourage a recruiter to enroll an unqualified student in the four-year program so as to earn more incentive compensation.  This policy is in place so that Kaplan can show a greater income and increase the stock value of the WPO.

241.    Kaplan knows that this violates the Incentive Compensation Law under the Higher Education Act.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

**Kaplan Pressures to Enroll Student Who Could Not Qualify**

242.     Kaplan pressured its enrollment counselors to recruit students who would not qualify under normal standards.  One of the individuals required to do this during his 18-month employment was recruiter David Schienberg.

## C.     Causes of Action Under the False Claims Act

### COUNT III

### Knowingly Filing False Statements to Get a False or Fraudulent Claim Paid or Approved, in Violation of the False Claims Act,31 U.SC. § 3729(a)(1)

243.     Plaintiffs re-allege, and fully incorporate herein by reference, paragraphs 11-38, and 80 through 242 herein.

244.     In performing all of the acts set out herein, Defendants defrauded the United States of America by knowingly presenting, or causing to be presented, to one or more officers, employees or agents of the United States of America, a false and fraudulent claim for payment or approval, in contravention of the False Claims Act (31 U.S.C. § 3729(a)(3)), to the damage of the treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.

245.     Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in excess of a half billion dollars per annum, from January 1, 1999, through the present.

### COUNT IV

### Knowingly False Records or Statements to Get a False or Fraudulent Claim Paid or Approved, in Violation of the False Claims Act, 31 U.S.C. §3729(a)(2)

246.     Plaintiffs re-allege, and fully incorporate herein by reference, paragraphs 11-38, and 80 through 242.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

247.    By virtue of the acts described above, Defendants have knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America, in contravention of the False Claims Act (31 U.S.C. §3729(a)(2)), to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

248.    Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in excess of a half billion dollars per annum, from January 1, 1999, through the present.

## COUNT V

### Individual Claim of Carlos Diaz for 3730(h) (FCA)

249.    Diaz realleges and incorporates paragraphs 11-38, and 80-242 of this Complaint.

250.    Diaz, as an employee of Kaplan, notified Kaplan that they were putting pressure on professors to inflate grades in violation of HLC.

251.    Diaz notified Kaplan that Kaplan was not being truthful with HLC regarding meeting the HLC requirements.

252.    Diaz notified Kaplan of his concerns regarding the way Kaplan recruited students, including the easy loans.

253.    Diaz also notified Kaplan of other potential violations.

254.    Diaz indicated to Kaplan that he was notifying the proper Federal and State authorities of Kaplan's wrongful deeds.

255.    As a result of the above complaints, he was engaged in protective activities.

256.    As a result of the above actions, Kaplan retaliated against him by firing him.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

257.    As a result of being fired, Diaz has lost wages, been unable to obtain any other employment until recently, suffered emotional distress, and claims all damages that are available under 3730(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Relators Carlos Urquilla-Diaz and Ben Wilcox request the following relief:

A.    Judgment in favor of the United States of America against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00), and not more than Ten Thousand Dollars ($10,000.00), for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. §3729(a);

B.    Award to Relators, as the *Qui Tam* plaintiffs, of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act on the United States' recovery;

C.    Award to Relators of all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;

D.    Punitive damages on all causes of action, to the extent allowable by law; and

E.    Such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff/Relators demand a trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

DATED:  June 24, 2009

Respectfully submitted,

KIMBERLY L. BOLDT
Florida Bar No. 957399
kimberly@abbrclaw.com
JEREMY W. ALTERS
Florida Bar No. 111790
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 Northeast 2nd Avenue, Suite 201
Miami, Florida 33137
Telephone (305) 571-8550
Facsimile  (305) 571-8558
*Attorneys for Relator Jude Gillespie*

J. TROY ANDREWS
hangfire@ix.netcom.com
JOHN W. ANDREWS
jwa@ix.netcom.com
Andrews Law Group
3220 Henderson Boulevard
Tampa, Florida 33609
Telephone (813) 877-1867
Facsimile  (813) 872-9298
*Attorneys for Relators Carlos Urquilla-Diaz
and Ben Wilcox*

48

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 09-20756-CIV-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,
*ex rel.* CARLOS URQUILLA DIAZ, *et al.*,

v.

KAPLAN UNIVERSITY a/k/a KAPLAN COLLEGE
a/k/a IOWA COLLEGE ACQUISITION CORP.,
KAPLAN HIGHER EDUCATION CORPORATION,
*et al.*,

                 Defendants.

_____/

### CERTIFICATE OF SERVICE

      I hereby certify that on **June 24, 2009**, I filed the foregoing document with the Clerk of the Court under seal by hand-delivery. I also certify that the foregoing document was served by mail this day on Carlos Javier Raurell, Esq., United States Attorney's Office, at 99 NE 4th St., Miami, FL 33132.

                              KIMBERLY L. BOLDT
                              Florida Bar No. 957399

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

## SERVICE LIST
**UNITED STATES OF AMERICA, *ex rel.* CARLOS URQUILLA-DIAZ *et al.* v.**
**KAPLAN UNIVERSITY *et al.***
**CASE NO.: 1:09-cv-20756-PAS**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| JAMES L. ZELENAY , JR.<br>jzelenay@gibsondunn.com<br>TIMOTHY J. HATCH<br>thatch@gibsondunn.com<br>NICOLA T. HANNA<br>nhanna@gibsondunn.com<br>Gibson, Dunn & Crutcher, LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone (213) 229-7000<br>Facsimile  (213) 229-7520<br><br>*Attorneys for the Defendants* | SUSAN N. EISENBERG<br>susan.eisenberg@akerman.com<br>SAMUEL S. HEYWOOD<br>samuel.heywood@akerman.com<br>MIA RENE MARTIN<br>mia.martin@akerman.com<br>Akerman Senterfitt<br>1 Southeast 3rd Avenue, 25th Floor<br>Miami, Florida 33131-1714<br>Telephone (305) 374-5600<br>Facsimile  (305) 374-5095<br><br>*Attorneys for the Defendants* |
| CARLOS JAVIER RAURELL<br>United States Attorney's Office<br>99 NE 4 Street<br>Miami , FL 33132<br>305-961-9243<br>Fax: 305-530-7139<br>Email: carlos.raurell@usdoj.gov<br><br>*Attorney for the United States* | G. WARE CORNELL, JR.<br>Cornell & Associates<br>1792 Bell Tower Lane<br>Weston , FL 33326<br>954-524-2703<br>Fax: 524-2706<br>Email: warecornell@gmail.com<br><br>*Counsel for Relators Carlos Urquilla-Diaz<br>and Ben Wilcox* |

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

# EXHIBIT

## A



## KAPLAN UNIVERSITY

### Student Complaint Form
reviewcommittee@kaplan.edu

**Student Name: Amber Coates B.S.**

Program: Criminal Justice,

**Telephone Number:**

Alternative Number:

**Email Address:**

**Basis for grievance (please specify *):**

☒ Withdraw Issues                    ☒ Financial Aid Issues                    ☒ Account Balance Issues

☐ Academic Dismissal Appeals         ☒ Other Issues Harassment, inconsistant account statements
from Kaplan Representatives and       eats to "rain credit if account not paid in full. " Unjustified
balance owed.

** *Grade, plagiarism and conduct* ... *utes are handled separately. Please contact your academic advisor for more details.*

Citibank: Disbursement Information for Your Account

Page 1 of 2

## Disbursement Information

amber Coates

3 Special Offers

Lower your monthly payment—consolidate!
Pay online; enroll now, it is free!

The listing below reflects all of your loans and the individual
disbursements for each loan. The "Disburse Date"
represents the date on which the funds were sent to the school or a future date on which we anticipate
sending the funds.

Print Page

| Loan Number | Take Action | Loan Type | Status | Disbursement Date | Amount (Before Fees) View Fee Details |
|---|---|---|---|---|---|
| 20 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 02/06/2007 | $875.00 |
| 20 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 11/15/2006 | $875.00 |
| 20 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 10/02/2006 | $875.00 |
| 21 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 02/06/2007 | $1,333.00 |
| 21 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 11/15/2006 | $1,333.00 |
| 21 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 10/02/2006 | $1,334.00 |
| 22 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 12/06/2007 | $1,166.00 |
| 22 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 09/20/2007 | $1,166.00 |
| 22 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 07/20/2007 | $1,168.00 |
| 23 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 12/06/2007 | $1,268.00 |
| 23 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 09/20/2007 | $1,268.00 |
| 23 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 07/20/2007 | $1,269.00 |
| 24 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 01/22/2008 | $333.00 |
| 24 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 01/18/2008 | $333.00 |
| 24 | | FEDERAL SUBSIDIZED STAFFORD | Disbursed | 01/17/2008 | $334.00 |
| 25 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 01/22/2008 | $65.00 |
| 25 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 01/18/2008 | $65.00 |
| 25 | | FEDERAL UNSUBSIDIZED STAFFORD | Disbursed | 01/17/2008 | $65.00 |
| 26 | | FEDERAL SUBSIDIZED STAFFORD | Awaiting Disbursement | 07/30/2008 | $1,500.00 |
| 26 | | FEDERAL SUBSIDIZED STAFFORD | Awaiting Disbursement | 05/14/2008 | $1,500.00 |
| | | FEDERAL SUBSIDIZED | | | |

https://studentloan.citibank.com/mbslcsite?op=mydisb

5/5/2008

Citibank: Disbursement Information for Your Account                    Page 2 of 2



| | | | | |
|---|---|---|---|---|
| 25 Conf #163589 | STAFFORD FEDERAL UNSUBSIDIZED | Disbursed | 03/17/2008 | $1,600.00 |
| 27 | STAFFORD FEDERAL UNSUBSIDIZED | Awaiting Disbursement | 07/30/2008 | $1,333.00 |
| 27 Cancelled 2 | STAFFORD FEDERAL UNSUBSIDIZED | Awaiting Disbursement | 05/14/2008 | $1,333.00 |
| 27 | STAFFORD FEDERAL UNSUBSIDIZED | Disbursed | 03/17/2008 | $1,334.00 |

Legend: ✠ = Reduce or Cancel Loan Amount;

**The Student Loan Corporation**
Privacy
Terms, conditions, caveats and small print.
Copyright © 2008 Citigroup Inc.
For U.S. Residents only

citi
Citi.com



Typed or Printed Name of Student                           Date

submission)                                                Updated 9-10-08 (2nd
Signature of Student                                       Date

*Did not Sign for legal purposes. (see )*

Office of Compliance
Kaplan University
6301 Kaplan University Avenue
Ft. Lauderdale, FL 33309
reviewcommittee@kaplan.edu

Thank You - Electronic Signature Confirmation - Electronic Signature - U.S. Department of Education    Page 1 of 1





2006-2007

☞ Need help with this page?

## Electronic Signatures - Student's Signature

This is your Confirmation Number: E 305966917 CO 08/03/2006 12:30:50

We will apply your student electronic signature to your 2006-2007 application/correction.

We recommend you print this page by selecting Print This Page at the bottom of the page, and save it for your records.

If you need to apply another signature to an application, select Electronically Sign My Application. You may need to do this if both the student and the parents are electronically signing the application. For example, you, the student, just signed your application, and now a parent's signature is required before we can start processing the application. If your parent has a PIN, he/she can now electronically sign your application following the same process.

For added security, we recommend that you exit your browser completely when you are finished using the FAFSA on the Web site. Select this link for further details. You may also want to consider clearing your browser's cache and deleting any temporary files.

**Print This Page**

☞ Need help with this page?

US DEPT ED

https://fafsa.ed.gov/FOTWWebApp/fotw0607/SigServlet;jsessionid=0001HIWUmvuL19dD8o54KtlvXH:11...    8/3/2006

Pell grant-FAFSA        $10,204.00    EFC different #
(google grants + scholarships).    from what gave
                                      bill.

Transactions - Student Access Online - U  Department of Education

# FAFSA
STUDENT ACCESS
ON THE WEB

## Transactions

Below is a list of the 2006-2007 transactions that have been processed for you at the U.S. Department of Education, as of 08/05/2006. You can select any of the transaction numbers to view complete details for that transaction.

Your Data Release Number (DRN) is 1256.

Note that any applications or corrections that have been submitted recently will not appear here until they have been processed by the U.S. Department of Education.

*Todd you need this when calling FAFSA*

| Transaction Number | Processed Date | Expected Family Contribution (EFC) | Transaction Source |
|---|---|---|---|
| 02 | 06/2006 | 04070 | Corrections on the Web |
| 01 | 04/2006 | 10204 | FAFSA on the Web |

# FAFSA
STUDENT ACCESS
ON THE WEB

**Transactions**

Processing Information

Student Information

Student Income/Assets

Parent Information

School Information

Preparer's Information

NSLDS

SAR Comments

Print Summary

## Processing Information

### Processing Information

| | |
|---|---|
| Transaction Number: | 02 |
| Date Application Completed: | 07/26/2006 |
| Application Receipt Date: | 07/28/2006 |
| Processed Date: | 08/06/2006 |
| Signed By: | STUDENT |
| EFC: | 04070 |

# FAFSA WORKSHEETS – CALENDAR YEAR 2005

These worksheets are solely for completing the FAFSA Worksheet questions, on page 5 for the student and, on page 7 for the student's parents.

## FAFSA Worksheet A—Report Annual Amounts

| Student/Spouse For Page 5 | | Parents For Page 7 |
|---|---|---|
| $ | Earned income credit from IRS Form 1040—line 66a; 1040A—line 41a; or 1040EZ—line 8a | $ |
| $ | Additional child tax credit from IRS Form 1040—line 68 or 1040A—line 42 | $ |
| $ | Welfare benefits, including Temporary Assistance for Needy Families (TANF). Do not include food stamps or subsidized housing. | $ |
| $ | Social Security benefits received, for all household members as reported in student's household size (or parents' household size), that were not taxed (such as SSI). Report benefits paid to parents in the parents' column, and benefits paid directly to student in the student/spouse column. | $ |
| $ | Enter in Worksheet A question on Page 5. | $ Enter in Worksheet A question on Page 7. |

## FAFSA Worksheet B—Report Annual Amounts

| Student/Spouse For Page 5 | | Parents For Page 7 |
|---|---|---|
| $ | Payments to tax-deferred pension and savings plans (paid directly or withheld from earnings), including, but not limited to, amounts reported on the W-2 Form in Boxes 12a through 12d, codes D, E, F, G, H, and S. | $ |
| $ | IRA deductions and payments to self-employed SEP, SIMPLE, and Keogh and other qualified plans from IRS Form 1040—line 28 + line 32 or 1040A—line 17. | $ |
| $ | Child support you received for all children. Don't include foster care or adoption payments. | $ |
| $ | Tax exempt interest income from IRS Form 1040—line 8b or 1040A—line 8b. | $ |
| $ | Foreign income exclusion from IRS Form 2555—line 43 or 2555EZ—line 18. | $ |
| $ | Untaxed portions of IRA distributions from IRS Form 1040—lines (15a minus 15b) or 1040A—lines (11a minus 11b). Exclude rollovers. If negative, enter a zero here. | $ |
| $ | Untaxed portions of pensions from IRS Form 1040—lines (16a minus 16b) or 1040A—lines (12a minus 12b). Exclude rollovers. If negative, enter a zero here. | $ |
| $ | Credit for federal tax on special fuels from IRS Form 4136—line 15—nonfarmers only | $ |
| $ | Housing, food, and other living allowances paid to members of the military, clergy, and others (including cash payments and cash value of benefits) | $ |
| $ | Veterans' noneducation benefits such as Disability, Death Pension, or Dependency & Indemnity Compensation (DIC), and/or VA Educational Work-Study allowances | $ |
| $ | Other untaxed income not reported elsewhere on Worksheets A and B, such as workers' compensation, untaxed portions of railroad retirement benefits, Black Lung Benefits, disability, etc. Tax filers only! report combat pay not included in adjusted gross income. | $ |
| $ | Don't include student aid, Workforce Investment Act educational benefits, combat pay if you are not a tax filer, or benefits from flexible spending arrangements, e.g., cafeteria plans. Money received, or paid on your behalf (e.g., bills), not reported elsewhere on this form | XXXXXX |
| $ | Enter in Worksheet B question on Page 5. | $ Enter in Worksheet B question on Page 7. |

## FAFSA Worksheet C—Report Annual Amounts

| Student/Spouse For Page 5 | | Parents For Page 7 |
|---|---|---|
| $ | Education credits (Hope and Lifetime Learning tax credits) from IRS Form 1040—line 50 or 1040A—line 31 | $ |
| $ | Child support you paid because of divorce or separation or as a result of a legal requirement. Don't include support for children in your (or your parents') household. | $ |
| $ | Taxable earnings from need-based employment programs, such as Federal Work-Study and need-based employment portions of fellowships and assistantships. | $ |
| $ | Student grant and scholarship aid reported to the IRS in your (or your parents') adjusted gross income. Includes AmeriCorps benefits (awards, living allowances, and interest accrual payments), as well as grant or scholarship portions of fellowships and assistantships. | $ |
| $ | Enter in Worksheet C question on Page 5. | $ Enter in Worksheet C question on Page 7. |

Student-only Signature – FAFSA on the Web – U.S. Department of Education                    Page 1 of 1

0607
**YOU'RE NOT DONE YET! YOU STILL NEED TO SUBMIT YOUR APPLICATION. AFTER YOU PRINT THIS PAGE, SELECT NEXT TO CONTINUE.**

◄ Previous    Print Help    Print Signature Page    Next ►

2006-2007 FAFSA on the Web Student Only Signature Page
Sign and mail this page NOW!

AMBER D COATES
617 SPRONGER STREET
BERNE IN 46711

READ, SIGN AND DATE BELOW
By signing this application electronically using your Personal Identification Number (PIN) or by
signing a signature page and mailing it to us, you certify that you:
1. will use federal and/or state student financial aid only to pay the cost of attending an
   institution of higher education,
2. are not in default on a federal student loan or have made satisfactory arrangements to repay it,
3. do not owe money back on a federal student grant or have made satisfactory arrangements to
   repay it,
4. will notify your school if you default on a federal student loan and
5. will not receive a federal Pell Grant for more than one school for the same period of time.

By signing this application electronically using your Personal Identification Number (PIN) or by
signing a signature page and mailing it to us, you agree if asked:
1. to provide information that will verify the accuracy of your completed form
2. to provide U.S. or state income tax forms that you filed or are required to file.

You also certify that you understand that the Secretary of Education has the authority to verify
information reported on your application with the Internal Revenue Service and other federal agencies.

If you sign this application or any document related to the federal student aid programs
electronically using a Personal Identification Number (PIN), you certify that you are the person
identified by the PIN and have not disclosed that PIN to anyone else. If you purposely give false or
misleading information, you may be fined $20,000, sent to prison, or both.

                                    Student _____
                                    Date Signed _____



0607 5305989817CO

After your application information is processed, you will receive a Student Aid Report (SAR).
If you do not receive your SAR within three (3) weeks, check online at www.fafsa.ed.gov, or
call 1-800-433-3243.

AFTER SIGNING, MAIL THIS PAGE IMMEDIATELY TO:
                    Federal Student Aid Programs
                    P.O. Box 4698
                    Mt. Vernon, IL 62864-0066 .

PREPARER'S INFORMATION
NOTE: "Preparer" does NOT mean you, the student, or your parent or your spouse. A "preparer" is
another person who filled in the answers for you, or who told you what to fill in on this application.
That person must enter his/her Social Security Number or Employer Identification Number in the
application software and must also sign below.

Preparer's Certification: All of the information on this form is true and complete to the best of my
knowledge.

Preparer's Signature _____
Date Signed _____
                        DON'T FORGET TO MAIL THIS PAGE NOW!

07/14/2006

◄ Previous    Print Help    Print Signature Page    Next ►

**Federal Family Education Loan Program (FFELP)**

Guarantor, Program, or Lender Identification
EDFUND-CA STUDENT AID COMM.

OMB No. 1845-0006
Form Approved
Exp. Date 9-30-2008

# Federal Stafford Loan
# Master Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

Non-Authoritative Copy

Please print neatly or type. Read the instructions carefully.

## Borrower Information

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| Coolies | Amber | D | ▓▓▓▓▓ |

| 3. Permanent Street Address (If P.O. Box, see instructions) | | | 4. Home Area Code/Telephone Number | 5. Date of Birth (Month/Day/Year) |
|---|---|---|---|---|
| 617 Springner St | | | | |

| City | State | Zip Code | 6. Driver's License State and Number | 7. Email Address |
|---|---|---|---|---|
| Boma | IN | 45711 | State IN # | |

| 8. Lender Name | | | State | Zip Code | 9. Lender Code, if known |
|---|---|---|---|---|---|
| CITIBANK | SIOUX FALLS | SD | 57117-5049 | 825876 |

10. References: You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | | | |
|---|---|---|---|
| City, State, Zip Code | Newburgh | IN | 47630 |
| E-mail Address | | | |
| Area Code/Telephone Number | ( ) | | ( ) |
| Relationship to Borrower | Friend | | Friend |

11. Requested Loan Amount: I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximum under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

12. Interest Payments (Optional):
☑ I want to pay unsubsidized interest while I am in school.

Read carefully before signing below.

## Borrower Certifications and Authorizations

13. Under penalty of perjury, I certify that:

A. The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will beneficially repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. (i) I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant) or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement) or (iii) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

14. For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

A. I authorize my school to certify my eligibility for loans under this Master Promissory Note.

B. I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

G. I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

C. I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

E. I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

F. I authorize the release of information pertinent to my loans: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

D. So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay

16. I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that has been issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.

| 16. Borrower's Signature | Electronically Signed | 17. Today's Date (Month/Day/Year)  07/27/2008 |
|---|---|---|

Additional MPN provisions follow

# Master Promissory Note (continued)

### Disclosure of Loan Terms

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in this section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional unsubsidized loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

### Loan Cancellation

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such cases, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

### Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my unsubsidized Federal Stafford Loan except interest paid by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans, if I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no interest accrued subsidy on unsubsidized loans, or the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

### Origination Fee and Guarantee Fee

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guarantee agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

---

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loan. The origination fee and guarantee fees may be refundable only to the extent permitted by the Act.

### Late Charges and Collection Costs

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in any disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may align payment dates on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

### Acceleration and Default

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration") upon the occurrence of any one of the following events: (i) I fail to enroll as at least a half-time student at the school that certified my loan eligibility, (ii) I fail to use the proceeds of the loan solely for educational expenses, (iii) I make a false representation(s) that results in my receiving a loan for which I am not eligible, or (iv) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance of the applicable loan after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; (ii) I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or (iii) I fail to comply with other terms of the loan, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loan and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

---

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loan may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

### Governing Law and Notices

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 60 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

<div style="border:1px solid black; padding:4px;">

### Notice About Subsequent Loans Made Under This Master Promissory Note

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: (i) the date my lender receives my written notice that no further loans may be disbursed under the MPN, (ii) one year after the date of my signature on this MPN if no disbursement is made during such twelve month period; or (iii) ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governs the terms of any loans disbursed on or after the effective date of such amendment, and such amended terms are hereby incorporated into this MPN.

</div>

## C. Student's Tax Forms and Income Information (all applicants)                          Independent

**1.** Check only one of the boxes below. Tax returns include the 2005 IRS Form 1040, 1040A, 1040EZ, a tax return from Puerto Rico or a foreign income tax return. If you did not keep a copy of your tax return, request a copy from your tax preparer or request an Internal Revenue Service form that lists tax account information.

- ☑ Check and attach signed tax return.
- ☐ Check and complete - a signed tax return will be submitted to the school by _____ (date).
- ☐ Check if you will not file and are not required to file a 2005 U.S. Income Tax Return.

**2.** Funds received for child support and other untaxed income. (See Worksheets A & B of the Free Application for Federal Student Aid–FAFSA.)

| Sources of Untaxed Income | 2005 Amount | Sources of Untaxed Income | 2005 Amount |
|---|---|---|---|
| a. Child Support | $ | d. | $ |
| b. Social Security (non-taxed) | $ ▮▮▮▮ | e. *S.S. disability* | $ ▮▮▮▮ |
| c. Welfare (including TANF) | $ | f. | $ |

**3.** If you did not file and are not required to file a 2005 Federal income tax return, list below your employer(s) and any income received in 2005 (use the W-2 form or other earnings statements if available).

|  | 2005 Amount |
|---|---|
|  | $ |
|  | $ |

## D. Spouse's Tax Forms and Income Information (if student is married)

**1.** Check only one box below. Tax returns include the 2005 IRS Form 1040, 1040A, 1040EZ, a tax return from Puerto Rico or a foreign income tax return. If your spouse did not keep a copy of the tax return, request a copy from the tax preparer or request an Internal Revenue Service form that lists tax account information.

- ☑ Check if you and your spouse did or will file a joint return.
- ☐ Check and attach spouse's signed tax return if your spouse filed a separate return.
- ☐ Check and complete - a signed spouse's tax return will be submitted to the school by _____ (date).
- ☐ Check if your spouse will not file and is not required to file a 2005 U.S. Income Tax Return.

**2.** Funds received for child support and other untaxed income. (See Worksheets A & B of the Free Application for Federal Student Aid.)

| Sources of Untaxed Income | 2005 Amount | Sources of Untaxed Income | 2005 Amount |
|---|---|---|---|
| a. Child Support | $ | d. | $ |
| b. Social Security (non-taxed) | $ | e. | $ |
| c. Welfare (including TANF) | $ | f. | $ |

**3.** If your spouse did not file and is not required to file a 2005 Federal income tax return, list below your spouse's employer(s) and any income received in 2005 (use the W-2 form or other earnings statements if available).

| Sources | 2005 Amount |
|---|---|
|  | $ |
|  | $ |
|  | $ |

## E. Sign this Worksheet

By signing this worksheet, I (we) certify that all the information reported on it is complete and correct. If married, spouse's signature is required.

**WARNING:** If you purposely give false or misleading information on this worksheet, you may be fined, be sentenced to jail, or both.

_Student signature_          9-23-06
Student                         Date

_Spouse signature_          9-23-06
Spouse                         Date

**Do not mail this worksheet to the Department of Education. Submit this worksheet to your Financial Aid Administrator at your school. Don't forget to sign your tax forms.**

Ledger Card

3/28/200
6:12:30 PM

Student Name   Coates, Amber

| | 2009/02ET Totals: | $3,300.00 | $3,286.48 |
| | Q42 Kaplan University, Online Totals: | $22,640.00 | $21,153.08 |
| | Student Totals: | $22,640.00 | $21,183.68 |
| | | 21056.50 | |

Pell grant 465.00 check # 357957 Receipt # 07-3906-54573 not on ledger

12-12-07

Charg's
22840-
18147

Kaplan Higher Education

Page 4 of

**Ledger Card**

3/29/2010
6:12:50 PM

Student Name  Credles, Amber

| Date | Codes | | | Description | | Amount |
|---|---|---|---|---|---|---|
| 1/31/2007 | Batch1/31/20 07 | | | | | |
| | 2ZZ1407 | CC06075868 : CJ-BS | 1A | 042 | TECH F | Technology Fees | 85.00 | 1,768.0 |
| | 2ZZ1407 | CC06075868 : CJ-BS | 1A | 042 | K | Federal Family Subsidized - Distance 200 | C 895.00  975.00 | 883.0 |
| | 2ZZ1404 | CC06075868 : CJ-BS | 1A | 042 | K | Federal Family Unsubsidized - Distance 2 | C 1333.00 1,333.00 | 460.00 |
| | 2ZZ14 | AUTO-021407 | 1A | 042 | | Tuition | 1,558.00 | 1,078.5 |
| 2/14/2007 | AUTO-021407 | CC06075868 : CJ-BS | 1A | 042 | TUIT | Tuition | 1,525.00 | 2,600.0 |
| 2/14/2007 | AUTO-021407 | CC06075868 : CJ-BS | 1A | 042 | TUIT | Tuition | | |
| 2/15/2007 | 100591972-0 | CC06075868 : CJ-BS | 1A | | TUIT | Student Payment 2006-07 | | 1,300.0 |

**2007/07/08**

| 7/18/2007 | AUTO-071907 | CC06075868 : CJ-BS | 3A | 042 | TUIT | Tuition | 1,600.00 | 2,900.0 |
| 7/18/2007 | AUTO-071907 | CC06075868 : CJ-BS | 3A | 042 | TUIT | Tuition | 1,600.00 | 4,500.0 |
| 7/19/2007 | Batch7/19/20 07 | CC06075868 : CJ-BS | 3A | 042 | TECH F | Technology Fees | 100.00 | 4,600.0 |

**2007/07/31 Totals:**   $3,125.00   $3,125.00

| 7/19/2007 | 319023FA | CC06075868 : CJ-BS | 3A | 042 | K 7-2-1-07 | Federal Family Unsubsidized - Distance 2 | C 1261.00  1,260.00 | 3,331.0 |
| 7/19/2007 | 319023FA | CC06075868 : CJ-BS | 3A | 042 | K 7-2-1-07 | Federal Family Subsidized - Distance 200 | C 1147.00  1,188.00 | 2,155.0 |
| 7/19/2007 | 319023 | CC06075868 : CJ-BS | 3A | 042 | | Pell Grant 2007-08 | 485.00 | 1,880.0 |
| 8/27/2008 | 367301FA | CC06075868 : CJ-BS | 3A | 042 | | Federal Family Subsidized - Distance 2 | C 65.00 | 1,833.0 |
| 8/27/2008 | 367301 | CC06075868 : CJ-BS | 3A | 042 | | Federal Family Unsubsidized - Distance 200 | 84.02 | 1,304.9 |

**2007/07/08 Totals:**   $3,950.00   $3,295.01

| 8/27/2007 | 358043FA | CC06075868 : CJ-BS | 9A | D42 | | Federal Family Subsidized - Distance 2 | C 1164.00  1,188.00 | 138.9 |
| 8/27/2007 | 358043 | CC06075868 : CJ-BS | 9A | 042 | | Federal Family Unsubsidized - Distance 2 | C 1242.00  1,258.00 | (1,129.01 |
| 8/27/2007 | 358043FA | CC06075868 : CJ-BS | 9A | 042 | TUIT | Tuition | 1,600.00 | 470.9 |
| 8/27/2007 | AUTO-082707 | CC06075868 : CJ-BS | 9A | 042 | TUIT | Tuition | 1,600.00 | 2,070.9 |
| 9/27/2007 | Batch9/27/20 07 | CC06075868 : CJ-BS | 9A | | TECH F | Technology Fees | 100.00 | 2,170.9 |

**Ledger Card**

Student Name: Gonzlez, Amber

*Why are first two fees late?* (handwritten)

**2007/12/02Z2**

| Date | | | | | | 3/28/2010 *6/12/30(?)* |
|---|---|---|---|---|---|---|
| | | | | | **2007/08/10 Totals:** | **$3,306.00** |
| 10/1/2007 | 337605RA 337605 | CO06075868 : CL-BS | 0704A | 042 | Pell Grant 2007-08 | 495.00 | 1705.9 |
| 11/22/2009 | 35070RA 35070RFA | CO06076888 : CL-BS | 070-4A | 042 K: -85-08 | Federal Grant 2007-08 | 326.00 | 1,377.9 |
| 11/22/2008 | 35770RA 35770RFA | CO06075893 : CL-BS | 0704A | 042 K; 1-85-06 | Federal Family Subsidized - Distance 2 | 64.02 | 1,313.9 |

**2007/08/10 Totals:** **$3,291.92**

| 12/12/2007 | 35857/2F7A 358572 | CO06076898 : CL-BS | 0706A | 042 K; 2-13-08 | Federal Family Unsubsidized - Distance 2 | C 12.66.01  1,760.00 | 45.9 |
| 12/12/2007 | 35857/2F7A 358572 | CO06076891 : CL-BS | 0705A | 042 K: 2-13-08 | Federal Family Subsidized - Distance 200 | C 1166. 01 1,166.00 | (1,120.01 |
| 12/12/2007 | 35872/5FA 35759e | CO06075898 : CL-BS | 0705A | 042 K; 2-13-08 | Pell Grant 2007-08 | 495.00 | (1,586.02 |
| 12/12/2007 | AUTO-121307 | CO06075698 : CL-BS | 0705A | 042 | Tuition | 1,800.00 | 14.9 |
| 12/13/2007 | AUTO-121307 | CO06076898 : CL-BS | 0705A | 042 | Tuition | 1,920.00 | 1,934.9 |
| 12/13/2007 | Batch121713Z | CO06075898 : CL-BS | 0706A | 042 | Tuition | 100.00 | 2,034.9 |
| 12/22/2008 | 007 3582-83FA 358243 | CO06076891 : CL-BS | 0705A | 042 K; 3-27-08 | Technology Fees | 94.03 | 1,970.9 |
| 1/22/2008 | 3582-43FA 358243 | CO06075891 : CL-BS | 0706A | 042 K; 3-27-08 | Federal Family Subsidized - Distance 200 | C 5.02. 01 328.01 | 1,642.9 |

**2007/12/08 Totals:** **$3,623.00**

| 2/28/2008 | AUTO-022808 | CO06075891 : CL-BS | 0801A | 042 | Course; Introduction to Forensic Ps | 1,500.00 | 3,262.9 |
| 2/28/2008 | AUTO-022808 | CO06075891 : CL-BS | 0801A | 042 | TUIT | Course; Juvenile Delinquency | 1,500.00 | 4,842.9 |
| 2/28/2008 | Batch-22808 | CO06075868 : CL-BS | 0801A | 042 | TUIT | Technology Fees | 100.00 | 4,942.9 |
| 2/28/2008 | Batch322808 | CO06075868 : CL-BS | 0801A | 042 | TECHF | Technology Fees | 100.00 | 5,042.9 |
| 3/5/2008 | Batch-022200 B | CO06075868 : CL-BS | 0801A | 042 | TECHF | Technology Fees | (100.00) | 4,942.9 |
| 3/16/2008 | 38230BFA 382309 | CO06075868 : CL-BS | -0801A | 042 K; 3-31-06 | Federal Family Unsubsidized - Distance 2 | C 13.13.99  1,313.99 | 3,628.9 |
| 3/16/2008 | 38230BFA 382308 | CO06075893 : CL-BS | 0801A | 042 K; 3-17-06 | Federal Family Subsidized - Distance 200 | C 1477.50  1,477.50 | 2,151.4 |
| 3/28/2008 | 3810608FA 341068 | CO06075898 : CL-BS | 0801A | 042 K; 3-31-06 | Pell Grant 2007-08 | 465.00 | 1,686.4 |

Kaplan Higher Education

Page 3 of

**citibank**

Citibank (South Dakota), N.A.
P.O. Box 6152
Sioux Falls, SD 57117-6152

January 15, 2008

1-800-967-2400
TDD 1-800-846-1298
studentloan.com

Lender: CITIBANK - 826878

CCI 1-K-01-V25-AN-0456-14
AMBER D COATES
617 SPRUNGER ST
BERNE IN 46711-1118

We are pleased to inform you that your student loan application has been approved. Please note the following information regarding your loan.

School Period    07/05/2007 - 02/19/2008

| | Stafford | Unsubsidized Stafford |
|---|---|---|
| Original Loan Amount | 1,000.00 | 195.00 |
| Federal Default Fee | 0.00 | 0.00 |
| Origination Fee | 15.00 | 2.93 |
| Net Loan Amount | 985.00 | 192.07 |

Your loan funds will be sent directly to your school provided you maintain eligibility. Please allow for mail and campus processing time when determining the date you may expect to receive your loan funds. The school will notify you when your funds are available. Your loan disbursement dates are:

| | Disbursement Dates | Stafford | Unsubsidized Stafford |
|---|---|---|---|
| Disbursement 1 | 01/15/2008 | 328.99 | 64.02 |
| Disbursement 2 | 01/16/2008 | 328.00 | 64.02 |
| Disbursement 3 | 01/17/2008 | 328.01 | 64.03 |

Should you want to cancel or reduce this loan amount, or if you have any questions, please call Customer Service, Monday through Friday, 8:00 a.m. to 11:00 p.m. Eastern Time. You can also access your loan account or obtain more information by visiting us at studentloan.com.

*177.07*

Sincerely,

Student Loan Originations

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Comptroller Of The Currency, Customer Assistance Group, 1301 McKinney St, Suite 3450, Houston, TX, 77010-9050.

Citibank FFELP student loans are originated and held by Citibank, N.A. as trustee for The Student Loan Corporation. Citibank private student loans are originated by Citibank, N.A. and assigned to The Student Loan Corporation. Citibank (South Dakota), N.A. provides loan services for Citibank student loans.

22616253                                                                              9917.08270

# citibank

Citibank USA, N.A.
P.O. Box 6162
Sioux Falls, SD 57117-6162

August 16, 2006

1-800-967-2400
TDD 1-800-846-1298
studentloan.com

Lender: CITIBANK - 826878

551 *A-04-P13-AM-0H026-57
AMBER COATES
517 SPRUNGER ST
BERNE IN 46711-1118

Dear Amber:

We are pleased to inform you that your student loan application has been approved. Please note the following information regarding your loan.

School Period    06/23/2006 – 04/10/2007

|  | Stafford | Unsubsidized Stafford |
|---|---|---|
| Original Loan Amount | 2,625.00 | 4,000.00 |
| Guarantee Fee | 0.00 | 0.00 |
| Origination Fee | 0.00 | 0.00 |
| Net Loan Amount | 2,625.00 | 4,000.00 |

Your loan funds will be sent directly to your school provided you maintain eligibility. Please allow for delivery and campus processing time when determining the date you may expect to receive funds. The school will notify you when your funds are available. Your loan disbursement dates are:

| Disbursement Dates | | Stafford | Unsubsidized Stafford |
|---|---|---|---|
| Disbursement 1 | 06/23/2006 *is date close to it...* | 875.00 | 1,334.00 |
| Disbursement 2 | 11/08/2006 | 875.00 | 1,333.00 |
| Disbursement 3 | 01/31/2007 | 875.00 | 1,333.00 |

Should you want reduce the loan amount or cancel your loan, please call Customer Service, Monday through Friday, 8:00 a.m. to 11:00 p.m. Eastern Time. You can also access your loan account or obtain more information by visiting us at studentloan.com.

Sincerely,

Student Loan Originations

Enc.

For Federal Stafford Loans, the 3.00% origination fee that is typically charged is paid by Citibank, N.A. and is not paid by the borrower. However, a 1.00% guarantee fee may or may not be charged by a guarantor and would be payable by the borrower, if charged. This offer is valid on Federal Stafford loan requests that are received by Citibank, N.A. while this zero fee loan program is in effect. We reserve the right to modify or discontinue benefit programs at any time without notice. Any termination or modification of the program will not affect the terms of loans previously made. Other terms and conditions may apply.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Comptroller Of The Currency, Customer Assistance Group, 1301 McKinney St, Suite 3450, Houston, TX, 77010-9050.

Citibank FFELP student loans are originated and held by Citibank, N.A. as trustee for The Student Loan Corporation. CitiAssist student loans are originated by Citibank, N.A. and assigned to The Student Loan Corporation. Citibank USA, N.A. and Citibank (Nevada), N.A. provide loan services for Citibank student loans.

19451477

9773.04266
A member of citigroup

Date:  4/15/2008
School Name:    042 Kaplan University, Online                    School Phone:    1-800-817-8372

Borrower Name:  Coates, Amber
Borrower Address:  617 Sprunger St.
Berne, IN 46711-0000

Borrower Phone:

Student Name:    Coates, Amber
Student Address:    617 Sprunger St.                            Student ID:  6845355
Berne, IN 46711-0000
United States of America

Current Account Balance:    $1,860.44
Fund Source:   042FFUN - Federal Family Unsubsidized - Distance        Award Year:    2007-08

| Disbursement Date | Disbursement Amount | Check Number | Receipt Number |
|---|---|---|---|
| 1/23/2008 | $64.03 | 368243 | 08-023-3406 |

Comments:
This is to inform you that loan funds were credited to your account. You have the right to cancel any or all portions of this loan within 14-days of receipt of notification. All requests for cancellation of loan disbursements must be made in writing to the Bursar's Office.

Please know that by canceling the disbursements; you will be responsible for any amount owed to the school, and it will be due within ten (10) days.

If you have any questions, need additional information, or wish to cancel your loan(s), please contact the Financial Aid Office.

Thank you.

rpt_std.edgerCard.rpt
NFAMILANT

3/28/2008
6:12:36 PM

# Ledger Card

Sorted by: Campus, Term Start Date, Transaction Number

**Student Name** Coates, Amber
**Address** 617 Sprunger St.
Berne, IN 46711

Balance $1,686.44

Student ID 47035967
Current Status Attending
Program Version CJ-BS Criminal Justice [7A]
Start Date 8/23/2006
LDA 3/27/2006
Graduation Date 4/16/2009

0.AZ Kaplan University, Online

| Date | Checklist# | Enrollment | Term Student ID 47035967 | Campus | Code | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 2006M8/23 | | | | | | | | | |
| 7/28/2006 | DEPOSIT | CO06075868 : CJ-BS | 0604A | 042 | | 131776 Received | | 95.00 | (95.00) |
| 8/30/2006 | AUTO-895006 | CO06075968 : CJ-BS | 0604A | 042 | | Tuition | 1,525.00 | | 1,430.00 |
| 8/30/2006 | AUTO-895006 | CO06078888 : CJ-BS | 0604A | 042 | TUIT | Tuition | 1,525.00 | | 2,955.00 |
| 10/8/2006 CJ+5-16 | 2396002FA 2396002 | CO06075868 : CJ-BS | 0604A | 842 | F.S.S. | Federal Family Subsidized - Distance 200 | | 876.00 1 315. 08 | 2,080.00 |
| 10/8/2006 CJ+5-16 | 2396002FA 2396002 | CO06075868 : CJ-BS | 0604A | 842 | F.K.S. | Federal Family Unsubsidized - Distance 2 | | 1,334.00 1 334. 00 | 748.00 |
| | | | | | | **2006M08/23 Totals:** | $3,050.00 | $2,304.00 | |
| 2006/11/03 | | | | | | | | | |
| 11/17/2006 CJ-15-50 | 251660FA 251660 | CO06075563 : CJ-BS | 0606A | 042 | E.E.S. | Federal Family Unsubsidized - Distance 2 | | 1 531. 00 1,333.00 | (597.00) |
| 11/17/2006 CJ-15-50 | 251660FA 251660 | CO06075563 : CJ-BS | 0606A | 042 | F.S.S. | Federal Family Subsidized - Distance 200 | | 875. 00 875.00 | (1,452.00) |
| 11/17/2006 | AUTO-141700 | CO06075868 : CJ-BS | 0606A | 042 | TUIT | Tuition | 1,525.00 | | 83.00 |
| 11/17/2006 | AUTO-141700 | CO06075868 : CJ-BS | 0606A | 042 | TUIT | Tuition | 1,525.00 | | 1,608.00 |
| 11/21/2006 | Batch:11/21/2 006 | CO06075868 : CJ-BS | 0606A | 042 | TECHF | Technology Fees | 65.00 | | 1,673.00 |
| | | | | | | **2006/11/03 Totals:** | $3,115.00 | $2,208.00 | |

# Kaplan University - Student Degree Plan



**KAPLAN UNIVERSITY**

Diploma | Registration | Financial Info | Academic

Welcome Amber | User Info | Logout |

Directory | Library | : Shawna Stare : Main Program

Sports | Campus Info | Help |

## Degree Plan

**VII. Bachelor of Science in Criminal Ju...**

Click on the curriculum requirements to view co... information and sequence of class. They carry recommended sequence of classes. If you have concerns regarding your program or class enroll Academic Advisor.

Degree Plan Continued? NO  [ Confirm Degr ]

### Option A.

scheduling by category or by the questions or ... period your

### Academic Status

Cumulative Program GPA: 3.64
Academic Average: Choose Semester
Result: Choose-Semester-hours
Cumulative Program Credits: 69/180
Projected Graduation Date: August 2010
Static Calendar A



☐ View Assessment Portfolio

## Key

| | |
|---|---|
| ✓ | View Request History |
| ✓ | Completed Course With Credit Received. |
| ✓ | Attempted Course With No Credits Received. |
| Text | Indicates Registration for a Current Quarter. |
| Text | Indicates Registration for a Future Quarter. |

### View by Recommended Sequence

| Confirm Registration | Course # Level | Req Credits | Curriculum | Requirements | Course | Course Credits | Term | Grade | Change Required |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **View by Category** | | | | | |
| | | | | Academic Strategies for the CJ Professional | Academic Strategies for the CJ Professional | 5 | November 2006 | A | |
| ✓ | CS111 | 5 | Academic (Professio) | 01 - Wednesday, 12:00PM | 01 - Wednesday, 12:00PM | | | | |
| | | | | ☐ Course Description | | | | | |
| ✓ | CT101 | 5 | Introduct Justice B | eples for the CJ | Introduction to the Criminal Justice System | 5 | August Term 2006 | A | |
| | | | | the Criminal | 10 - Thursday, 1:00PM | | | | |
| | | | | | ☐ Course Description | | | | |
| ✓ | CM101 | 5 | Effective Justice U | g 1 for Criminal | College Composition I: Effective Writing I for Criminal Justice Majors | 5 | August Term 2006 | A | |
| | | | | | 08 - Thursday, 6:00PM | | | | |

| Course | Cr. | Course Title | Course / Section / Description | Term | Grade | Status |
|---|---|---|---|---|---|---|
| CJ101 | 5 | Justice System | 10 – Thursday, 1:00PM; Course Description | 2005 | A | |
| CJ4103 | 5 | Effective Writing I for Criminal Justice Majors | College Composition I; Effective Writing I for Criminal Justice Majors; 04 – Thursday, 8:20PM; Course Description | November 2006 | A | |
| CJ102 | 5 | Criminology | Criminology; 07 – Monday, 7:00PM; Course Description | November 2006 | B+ | |
| 1733 | 5 | Software Applications | Software Applications; 12 – Monday, 8:00PM; Course Description | D701A January Term 2007 | A | |
| CM220 | 5 | Software Applications | College Composition II; 25 – Thursday, 8:00PM; Course Description | D701A Late January Term 2007 | A- | |
| CJ105 | 5 | Effective Writing II | History of Criminal Justice; 05 – Tuesday, 8:00PM; Course Description | D703A December Term 2007 | A- | |
| CJ100/200 | 5 | History of Criminal Justice | Introduction to Psychology; 02 – Thursday, 8:00PM; Course Description | D703A July Term 2007 | A | |
| MM201 | 5 | Lower Level Elective 100/200-level | Introduction to Forensic Psychology; 01 – Thursday, 10:00PM; Course Description | D703A July Term 2007 | A- | |
| 100/200 | 5 | College Algebra (or higher) | Introduction to Forensic Psychology; 01 – Thursday, 12:00PM; Course Description | D801A February Term 2008 | A- | |
| CJ200 | 5 | CJ Elective 100/200 Level | Criminal Law for Criminal Justice; Course Description | | | Select a Request |
| 100/200 | 5 | Criminal Law for Criminal Justice | | | | Select a Request |
| 100/200 | 5 | Lower Level Elective 100/200-level | Diversity and Violence; 01 – Thursday, 10:00PM; Course Description | D704A September Term 2007 | A | Select a Request |
| 100/200 | 5 | Diversity and Collins 100/200 Level; Course Description | | | | |
| 100/200 | 5 | CJ Elective 100/200 Level; Course Description | Introduction to Corrections; 01 – TBA; Course Description | D704A September Term 2007 | A | |
| 100/200 | 5 | CJ Elective 100/200 Level | Juvenile Delinquency; 01 – TBA; Course Description | D704A September Term 2007 | A | |
| 100/200 | 5 | CJ Elective 100/200 Level | | | | Select a Request |
| 100/200 | 5 | Science 100/200 Level; Course Description | | | | Select a Request |

5/5/2008

# EXHIBIT

# B

## Federal Family Education Loan Program (FFELP)

# Federal Stafford Loan
# Master Promissory Note

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

Guarantor, Program, or Lender Identification
EDFUND-CA STUDENT AID COMM.

OMB No. 1845-0006
Form approved
Exp. date 3-30-2008

21391583
Online

Non-Authoritative Copy

*Please print neatly or type. Read the instructions carefully.*

### Borrower Information

| | | |
|---|---|---|
| **1.** Last Name  Angelique | First Name  Abears-Welch | MI  R |

**2.** Social Security Number ▊▊▊

**3.** Permanent Street Address (If P.O. Box, see instructions)
306 South Central Avenue

| City  Bowie | State  AZ | Zip Code  85605-0254 |

**4.** Home Area Code/Telephone Number ( ▊▊▊

**5.** Date of Birth (Month/Day/Year) ▊▊▊1976

**6.** Driver's License State and Number ▊▊▊  State AZ #

**7.** E-mail Address

**9.** Lender Name  CITIBANK  SIOUX FALLS

| City | State  SD | Zip Code  57117-5049 |

**8.** Lender Code, if known  828878

**10.** References: You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | A. | | B. |
|---|---|---|---|
| Name | ▊▊▊ | | ▊▊▊ |
| Permanent Address | ▊▊▊ | | Geraldine |
| City, State, Zip Code | Phoenix   AZ.   85032 | | Pontiac   MI   48340 |
| E-mail Address | | | |
| Area Code/Telephone Number | ( | | ( |
| Relationship to Borrower | Friend | | Friend |

**11.** Requested Loan Amount: I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

**12.** Interest Payments (Optional):
☐ I want to pay unsubsidized interest while I am in school.

*Read carefully before signing below.*

### Borrower Certifications and Authorizations

**13.** Under penalty of perjury I certify that:

A. The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. I do not now own an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant) or, if I own an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (II) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement) or (III) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

**14.** For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

A. I authorize my school to certify my eligibility for loans under this Master Promissory Note.

B. I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

C. I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

D. I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

E. I request and authorize my lender to: (I) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (II) add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

F. I authorize the release of information pertinent to my loan: (I) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and, (II) by me and among my schools, lenders, guarantors, the Department of Education, and their agents.

G. So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

### Promise to Pay

**15.** I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

**16.** Borrower's Signature _____ Electronically Signed

**17.** Today's Date (Month/Day/Year) 07/08/2007

*Additional MPN provisions follow*

# Master Promissory Note (continued)

**Disclosure of Loan Terms**

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the Interest section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq, and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan.

**Responsibilities Statement** accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional or adjusted loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes to my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

**Loan Cancellation**

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

**Interest**

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in the disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans except interest payable by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

**Origination Fee and Guarantee Fee**

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guarantee agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

---

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand that origination and guarantee fees may be refundable only to the extent permitted by the Act.

**Late Charges and Collection Costs**

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

**Repayment**

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf may be applied to interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make any scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may also permit changes on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

**Acceleration and Default**

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), under the occurrence of any one of the following events: (i) I fail to enroll as at least a half-time student at the school that certified my loan eligibility, (ii) I fail to use the proceeds of the loan solely for educational expenses, (iii) I make a false representation(s) that results in my receiving a loan for which I am not eligible, or (iv) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance of the applicable loans after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; (ii) I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or (iii) I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

---

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loans may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

**Governing Law and Notices**

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, then I may assert against the lender all claims and defenses that I could assert against that school, but only up to the amount of money I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

**Notice About Subsequent Loans Made Under This Master Promissory Note**

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: (i) the date my lender receives my written notice that no further loans may be disbursed under the MPN; (ii) one year after the date of my signature on this MPN if no disbursement is made during such twelve-month period; or (iii) ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governing the terms of any loans disbursed prior to the effective date of such amendment, shall not be applied to any loans outstanding, incorporated into this MPN.

| Federal Family Education Loan Program (FFELP) | Guarantor, Program, or Lender Identification |
|---|---|
| **Federal Stafford Loan**<br>**Master Promissory Note**<br>**Instructions and Notices** | |

## Instructions for Completing Promissory Note

*This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.*

*Use a dark ink ball point pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.*

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness. If it is incorrect, cross out the entire incorrect number and print the entire correct Social Security Number in this box. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth. (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state

that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the requested reference information for the address listed in Item 3. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or an adult relative. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address for a reference, write N/A. If you provide an e-mail address for a reference, the lender or holder of your loan(s) may use it to communicate with the reference. All requested items must be completed or your loan(s) will be delayed.

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 12, 14, and 16:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing this MPN.

## Important Notices

**Privacy Act Notice**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428b(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1070(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(b)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan

programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureaus organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Financial Privacy Act Notice**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

**Paperwork Reduction Notice**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4951.

If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.

# Borrower's Rights and Responsibilities Statement

Important Notice: The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

■ Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan [GSL]),
■ Unsubsidized Federal Stafford Loan,
■ Federal Insured Student Loan (FISL),
■ Federal Supplemental Loans for Students (SLS), also known as ALAS,
■ Federal PLUS (parent) Loan,
■ Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** – Loans disbursed under this Master Promissory Note (MPN) are subject to the

1070 et seq.], and applicable U. S. Department of Education regulations (collectively referred to as the "Act"). NOTE: Any change to the Act applies to the terms of any loans made on or after the effective date of the change.

**2. Use of this MPN** – I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if the guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans** – There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. The subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ("lender" refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loans.

**4. Maximum Program Loan Amounts** – Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums[1] | Subsidized | Total (Subsidized & Unsubsidized)[2] |
|---|---|---|
| **DEPENDENT UNDERGRADUATES[3]** | | |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATES (and dependents whose parents are unable to borrow under the PLUS program)** | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| **AGGREGATE LIMITS[3]** | | |
| **UNDERGRADUATES** | | |
| **INDEPENDENT UNDERGRADUATES (and dependents whose parents are unable to borrow under the PLUS program)** | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

1  Certain health profession students may qualify for higher limits.
2  All undergraduate annual loan limits are subject to proration.
3  If the borrower does not have financial need for a subsidized Federal Stafford Loan using expected family contribution (EFC), or has reached the aggregate limit in subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

■ My academic level (freshman, sophomore, etc.),
■ My status as a dependent student or independent student,
■ The length of the academic program in which I am enrolled,
■ The length of the remainder of my undergraduate program of study if it is less than one academic year, and
■ As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits** – For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of my other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money** – I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility

for the time period shown on my disclosure statement. Authorized expenses include the following:

■ Tuition,
■ Room,
■ Board,
■ Institutional fees,
■ Books,
■ Supplies,
■ Equipment,
■ Dependent child care,
■ Transportation,
■ Commuting expenses,
■ Rental or purchase of a personal computer,
■ Origination fee and guarantee fee, and/or
■ Other documented, authorized costs.

**7. Loan Fees** – I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionately from each disbursement.

**8. Disbursement of Loan Money** – Generally, my loan money will be disbursed to my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

- The loan money may be sent in one installment directly to me, or
- I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance counseling before the first disbursement of my subsidized or unsubsidized Federal Stafford Loan can be made.

**6. Change of Status** – I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

- I reduce my enrollment status to less than half time,
- I withdraw from school,
- I stop attending classes,
- I fail to re-enroll for any term,
- I have a change in my expected graduation date, and/or
- I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

- Permanent address,
- E-mail address,
- Telephone number,
- Future employer, and
- References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan

- At least half time for the loan period certified, or
- At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

- I change my address, telephone number, or e-mail address
- I change my name (for example, maiden name to married name),
- I withdraw from school or begin attending less than half time,
- I transfer from one school to another school,
- I change my employer or my employer's address or telephone number changes, and/or
- I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**10. Effect of Loans on Other Student Aid** – Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

**11. Grace Period** – I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for more than 30 days from a reserve component of the Armed Forces of the United States, including the period necessary for me to resume enrollment at the next available regular enrollment period.

**12. Repayment** – All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (for the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

- **Standard Repayment Plan** – Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
- **Graduated Repayment Plan** – Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.
- **Extended Repayment Plan** – Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if (I) at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and (II) I accumulate outstanding FFELP Program loans exceeding $30,000.

- **Income-Sensitive Repayment Plan** – If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail during my exit counseling session. If I do not choose an income-sensitive, graduated, or extended repayment plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and repayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

**13. Interest Rates** – The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce any loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

**14. Payment of Interest** – My lender will, during my in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on my outstanding FFELP loans. Interest that accrues on all my unsubsidized FFELP loans during authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) – unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment). It is my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I inform my lender that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized

of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The charts entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.ustreas.gov.

15. Loan Cancellation – I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

■ If my school credits my loan to my student account, I may cancel all or a part of my loan by informing my school within 14 days after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me the first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

16. Sale or Transfer of Loans – The lender may sell or otherwise transfer one or all of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans. If the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

17. Loan Discharge – My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

18. Consequences of Default – Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:

■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ Legal action against me,

**What is capitalization?**
Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount will be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $  0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before the borrower entered repayment.
Result: During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

Contact your lender if you have questions or need more information.

**Repaying My Loans**

Follow these steps to estimate your loan payment.

### Step 1: Calculate Your Monthly Interest Charges

Round your balance up to the nearest $500. If your loan amount is not on the table, follow the example below to estimate your monthly accrued interest.

Example:
Federal Stafford Loan of $5,479 at 6% interest.
Round up to nearest $500 = $5,500.

$5,000 = $25.00/month
+ 500 = 2.50/month
$27.50/month

Your Monthly Interest $ _____

**Approximate Monthly Interest**

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500 | $2.08 | $2.50 | $2.92 | $3.33 | $3.75 |
| $1,000 | $4.17 | $5.00 | $5.83 | $6.67 | $7.50 |
| $3,000 | $12.50 | $15.00 | $17.50 | $20.00 | $22.50 |
| $5,000 | $20.83 | $25.00 | $29.17 | $33.33 | $37.50 |
| $6,000 | $25.00 | $30.00 | $35.00 | $40.00 | $45.00 |
| $7,000 | $29.17 | $35.00 | $40.83 | $46.67 | $52.50 |
| $9,000 | $37.50 | $45.00 | $52.50 | $60.00 | $67.50 |
| $10,000 | $41.67 | $50.00 | $58.33 | $66.67 | $75.00 |
| $15,000 | $62.50 | $75.00 | $87.50 | $100.00 | $112.50 |

### Step 2: Estimate Your Capitalized Interest

Complete this step only if you will capitalize interest on a Federal Stafford Loan. *This is an estimate only.* Actual interest capitalized will depend on factors such as disbursement dates, number of disbursements, and the variable interest rate.

| | Monthly Interest (From Step One) | | Number of Months in deferment or forbearance | | Estimate of Capitalized Interest |
|---|---|---|---|---|---|
| Example | $ 27.50 | X | $ 22 | = | $ 605.00 |
| Your Capitalized Interest | $ _____ | X | $ _____ | = | $ _____ |

### Step 3: Estimate Your Monthly Payment

Round your loan up to the nearest $500. If your principal amount is not on the table, follow the example below to estimate your monthly payment. If you previously had interest capitalized, add it to the original loan amount to get the new principal amount.

Example:
Federal Stafford Loan of $6,105.00 (5,500 + 605.00) at 6% interest.
Round up to nearest $500 = $6,500.

$6,000 = $66.61/month
+ 500 = 5.55/month
$72.16/month

Estimated monthly payment = $72.16

*Minimum monthly payment = $50 or amount of interest accruing each month

**Estimated Monthly Payments (10 Year Term)**

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500 | $5.30 | $5.55 | $5.81 | $6.07 | $6.33 |
| $1,000 | $10.61 | $11.10 | $11.61 | $12.13 | $12.67 |
| $3,000 | $31.82 | $33.31 | $34.83 | $36.40 | $38.00 |
| $5,000 | $53.03 | $55.51 | $58.05 | $60.66 | $63.34 |
| $6,000 | $63.64 | $66.61 | $69.67 | $72.80 | $76.01 |
| $7,000 | $74.25 | $77.71 | $81.28 | $84.93 | $88.67 |
| $9,000 | $95.46 | $99.92 | $104.50 | $109.19 | $114.01 |
| $10,000 | $106.07 | $111.02 | $116.11 | $121.33 | $126.68 |
| $15,000 | $159.10 | $166.53 | $174.16 | $181.99 | $190.01 |
| $20,000 | $212.13 | $222.04 | $232.22 | $242.66 | $253.35 |
| $25,000 | $265.16 | $277.55 | $290.27 | $303.32 | $316.69 |

| | Loan Amount | | Estimate of Capitalized Interest (From Step Two) | | New Principal Balance | | Estimated Monthly Payment |
|---|---|---|---|---|---|---|---|
| Example | $ 5,500 | + | $ 605.00 | = | $ 6,105.00 | | $ 72.16 |
| Your Monthly Payment | $ _____ | + | $ _____ | = | $ _____ | | $ _____ |

■ Collection charges (including attorney fees) being assessed against me,
■ Loss of my professional license,
■ An increase in my interest rate,
■ Loss of eligibility for other student aid and assistance under most federal benefit programs,
■ Loss of eligibility for loan deferments,
■ Negative credit reports to credit bureaus, and/or
■ My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any guaranty agency reports such a default, I will be given at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements** –
■ A Federal Consolidation Loan Program is available, under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/or under different education loan programs. Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
■ Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
■ In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
■ If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive

school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.
■ If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments** – Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFELP loan. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my loan(s), I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:

■ Enrolled at least half time at an eligible school.
■ Engaged in a full-time course of study in a graduate fellowship program.
■ Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education).
■ Conscientiously seeking, but unable to find, full-time employment (for up to three years).
■ Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, or (ii) the lender's receipt of a school certification of eligibility in connection with a new loan, or (iii) the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFELP loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance** – If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:

■ Financial hardship, and/or
■ Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:

■ Serving in a medical or dental internship or residency program, if I meet certain criteria.
■ Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.
■ Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
■ Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria.
■ Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
■ Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

**Repayment Information follows**

*Important Notice: Please retain this statement because it applies to present and subsequent loans received under the Master Promissory Note.*

Addendum to the Federal Stafford Loan Master Promissory Note
Federal Family Education Loan Program

The Higher Education Reconciliation Act of 2005 (HERA) changed some of the terms of Federal Stafford Loans made under the Federal Family Education Loan Program (FFELP). As a result, certain terms of the loan(s) you receive under the accompanying Federal Stafford Loan Master Promissory Note (MPN) differ from the terms in this MPN and Borrower's Rights and Responsibilities Statement.

This Addendum describes the changes made to the loan terms by the HERA. Your loan is subject to these changes. The changes set forth in this Addendum are incorporated into and made a part of the accompanying MPN that you sign and the Borrower's Rights and Responsibilities Statement.

- **MPN: Borrower Certifications and Authorizations.** *Effective for MPNs signed on or after July 1, 2006,* by signing your MPN, you are certifying, under penalty of perjury, that if you have been convicted of, or have pled *nolo contendere* or guilty to, a crime involving fraud in obtaining federal student assistance under Title IV of the Higher Education Act of 1965, as amended, you have completed the repayment of such funds to the U.S. Department of Education, or to the loan holder in the case of a Title IV federal student loan.

- **MPN: Borrower Certifications and Authorizations, Item 14E.** The first part of this item is revised to read as follows: "I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans, except for Federal PLUS Loans and Federal Consolidation Loans, that are in repayment status; and (ii)..."

- **Borrower's Rights and Responsibilities Statement Item 4, Maximum Program Loan Amounts.** *Effective for loans first disbursed on or after July 1, 2007,* the annual loan maximums for certain categories of students in the chart titled "Federal Stafford Loan Maximums" are revised to read as follows:

| DEPENDENT UNDERGRADUATES | Subsidized | Total (Subsidized and Unsubsidized) |
|---|---|---|
| First Year | $3,500 | $3,500 |
| Second Year | $4,500 | $4,500 |
| INDEPENDENT UNDERGRADUATES (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $3,500 | $7,500 |
| Second Year | $4,500 | $8,500 |
| GRADUATES AND PROFESSIONAL STUDENTS | $8,500 | $20,500 |

There are no changes to any of the other annual or total loan maximums shown in the Federal Stafford Loan Maximums chart.

- **Borrower's Rights and Responsibilities Statement Item 7, Loan Fees.** *Effective for loans for which the date of guarantee of principal is on or after July 1, 2006,* this item is revised to read as follows: "7. Loan Fees - I may be charged an origination fee and/or a federal default fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. If I am charged these fees, they will be deducted proportionally from each disbursement." NOTE: Any reference to a guarantee fee in the MPN is deemed to be a reference to the federal default fee.

- **Borrower's Rights and Responsibilities Statement Item 8, Disbursement of Loan Money.** *Effective July 1, 2006,* loan money for students enrolled in foreign schools generally must be sent to the school and disbursed in multiple installments.

- **Borrower's Rights and Responsibilities Statement Item 13, Interest Rates.** *Effective for loans first disbursed on or after July 1, 2006,* a Federal Stafford Loan has a fixed interest rate.

- **Borrower's Rights and Responsibilities Statement Item 14, Payment of Interest.** The first sentence in this item is revised to read as follows: "My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, postpone and align principal payments on my outstanding FFELP loans, except for Federal PLUS Loans and Federal Consolidation Loans."

- **Borrower's Rights and Responsibilities Statement Item 17, Loan Discharge.** *Effective July 1, 2006,* a loan is also eligible for discharge if it is determined that the borrower's eligibility for the loan was falsely certified as a result of a crime of identity theft.

- **Borrower's Rights and Responsibilities Statement Item 20, Special Repayment Arrangements.** *Effective for consolidation applications received on or after July 1, 2006,* a married couple may no longer borrow a Federal Consolidation Loan as joint borrowers.

- **Borrower's Rights and Responsibilities Statement Item 21, Deferments.** *Effective July 1, 2006, for loans with a first disbursement made on or after July 1, 2001,* a deferment is available for a period of up to three years during which a borrower is serving on active duty during a war or other military operation or national emergency, or performing qualifying National Guard duty during a war or other military operation or national emergency.

REVISED 02-16-2007

# EXHIBIT

## C

# SAR for 2007-2008

(Student Aid Report)
Form Approved OMB No.1845-0008
App. Exp. 12/31/06

397609032 HA 01
EFC: .9761
DRN: 9656

The guide below contains information from your student aid application (shaded items display personal information, if provided). This is your copy of your application data for your records only. Do NOT mail this document or a copy of this document to the U.S. Department of Education. We will not return this copy to you. You may make corrections from the Department of Education's web page (www.fafsa.ed.gov). You must use your PIN to access your record online.

| | | | | | |
|---|---|---|---|---|---|
| 1. LAST NAME | MATOS | | 60. YOUR FATHER'S/STEPFATHER'S FIRST NAME | | |
| 2. FIRST NAME | JUDITH | | 61. YOUR FATHER'S/STEPFATHER'S DATE OF BIRTH | | |
| 3. MIDDLE INITIAL | M. | | 62. YOUR MOTHER'S/STEPMOTHER'S SOC. SECURITY NUMBER | | |
| 4. PERMANENT STREET ADDRESS | 412 CARNADA DRIVE | | 63. YOUR MOTHER'S/STEPMOTHER'S LAST NAME | | |
| 5. CITY | WAUKESHA | | 64. YOUR MOTHER'S/STEPMOTHER'S FIRST NAME | | |
| 6. STATE ABBREVIATION | WI | | 65. YOUR MOTHER'S/STEPMOTHER'S DATE OF BIRTH | | |
| 7. ZIP CODE | 53186 | | 66. NUMBER OF FAMILY MEMBERS IN 2007-2008 | | |
| 8. SOCIAL SECURITY NUMBER | ███ | | 67. NUMBER IN COLLEGE IN 2007-2008 | | |
| 9. DATE OF BIRTH | ███ | | | | |
| 10. PERMANENT HOME PHONE NUMBER | ███ | | 68. PARENTS' STATE OF LEGAL RESIDENCE | | |
| 11. DRIVER'S LICENSE NUMBER | | | 69. LEGAL RESIDENT BEFORE JANUARY 1, 2002? | | |
| 12. DRIVER'S LICENSE STATE ABBREVIATION | WI | | 70. DATE PARENTS' BECAME LEGAL RESIDENT | | |
| 13. EMAIL ADDRESS | USF.ACT.PEDIED@GLOBAL.NET | | 71. PARENTS RECEIVED SSI? | | |
| 14. CITIZENSHIP STATUS | U.S. CITIZEN | | 72. PARENTS RECEIVED FOOD STAMPS? | | |
| 15. ALIEN REGISTRATION NUMBER | | | 73. PARENTS RECEIVED FREE/REDUCED PRICE LUNCH? | | |
| 16. MARITAL STATUS | MARRIED/REMARRIED | | 74. PARENTS RECEIVED TANF? | | |
| | | | 75. PARENTS RECEIVED WIC? | | |
| 17. DATE OF MARITAL STATUS | MARRIED | | 76. PARENTS PAID 2006 INCOME TAX RETURN | | |
| 18. STATE OF LEGAL RESIDENCE ABBREVIATION | WI | | 77. TYPE OF 2006 TAX FORM USED | | |
| 19. LEGAL RESIDENT BEFORE JANUARY 1, 2002? | YES | | 78. ELIGIBLE TO FILE 1040A OR 1040EZ? | | |
| 20. DATE YOU BECAME A LEGAL RESIDENT | | | 79. ADJUSTED GROSS INCOME FROM IRS FORM | | |
| 21. ARE YOU MALE? | NO | | | | |
| 22. REGISTER YOU FOR SELECTIVE SERVICE? | | | 80. U.S. INCOME TAX PAID | | |
| 23. TYPE OF DEGREE/CERTIFICATE | 1ST BA | | | | |
| 24. GRADE LEVEL IN COLLEGE IN 2007-2008 | 4TH | | 81. EXEMPTIONS CLAIMED | | |
| 25. ENROLLMENT STATUS FOR 2007-2008 | FT/TIME | | 82. FATHER'S INCOME EARNED FROM WORK | | |
| 26. INTERESTED IN WORK-STUDY OR STUDENT LOANS? | BOTH | | | | |
| 27. HIGH SCHOOL DIPLOMA OR GED? | YES | | 83. MOTHER'S INCOME EARNED FROM WORK | | |
| 28. FIRST BACHELORS DEGREE BY 7-1-2007? | YES | | | | |
| 29. FATHER'S EDUCATIONAL LEVEL | COLLEGE | | 84. AMOUNT FROM FAFSA WORKSHEET A | | |
| 30. MOTHER'S EDUCATIONAL LEVEL | HIGH SCHOOL | | 85. AMOUNT FROM FAFSA WORKSHEET B | | |
| 31. DRUG CONVICTION AFFECTING ELIGIBILITY? | ELIGIBLE FOR AID | | 86. AMOUNT FROM FAFSA WORKSHEET C | | |
| 32. FILED 2006 IRS INCOME TAX RETURN | WILL FILE | | | | |
| 33. TYPE OF 2006 TAX FORM USED | U.S. INCOME TERRITORY | | 87. CASH, SAVINGS, AND CHECKING | | |
| 34. ELIGIBLE TO FILE A 1040A OR 1040EZ? | YES | | 88. NET WORTH OF CURRENT INVESTMENTS | | |
| 35. ADJUSTED GROSS INCOME FROM IRS FORM | ███ | | 89. NET WORTH OF BUSINESS/INVESTMENT FARMS | | |
| | | | 90. NUMBER OF FAMILY MEMBERS IN 2007-2008 | | |
| 36. U.S. INCOME TAX PAID | $ 1,457 | | | | |
| | | | 91. NUMBER IN COLLEGE IN 2007-2008 | | |
| 37. EXEMPTIONS CLAIMED | 3 | | | | |
| 38. STUDENT'S INCOME EARNED FROM WORK | ███ | | 92. STUDENT RECEIVED SSI? | | |
| | | | 93. STUDENT RECEIVED FOOD STAMPS? | | |
| 39. SPOUSE'S INCOME EARNED FROM WORK | $ 0 | | 94. STUDENT REC EIVED FREE/REDUCED PRICE LUNCH? | | |
| | | | 95. STUDENT RECEIVED TANF? | | |
| 40. AMOUNT FROM FAFSA WORKSHEET A | $ 0 | | 96. STUDENT RECEIVED WIC? | | |
| 41. AMOUNT FROM FAFSA WORKSHEET B | $ 0 | | 97a. FIRST COLLEGE NAME, CITY AND STATE (CODE) | KAPLAN UNIVERSITY DAVENPORT, IA (384385) | |
| 42. AMOUNT FROM FAFSA WORKSHEET C | $ 0 | | 97b. FIRST HOUSING PLANS | OFF CAMPUS | |
| 43. CASH, SAVINGS, AND CHECKING | $ 5,000 | | 98a. SECOND COLLEGE NAME, CITY AND STATE (CODE) | | |
| 44. NET WORTH OF CURRENT INVESTMENTS | | | 98b. SECOND HOUSING PLANS | | |
| 45. NET WORTH OF BUSINESS/INVESTMENT FARMS | | | 99a. THIRD COLLEGE NAME, CITY AND STATE (CODE) | | |
| 46. HOW MANY MONTHS INCOME IN SEMESTER | 12 | | 99b. THIRD HOUSING PLANS | | |
| 47. MONTHLY V.A. EDUCATION BENEFITS AMOUNT | 1-12 | | 100a. FOURTH COLLEGE NAME, CITY AND STATE (CODE) | | |
| 48. BORN BEFORE 1-1-1984? | YES | | 100b. FOURTH HOUSING PLANS | | |
| | | | 101a. FIFTH COLLEGE NAME, CITY AND STATE (CODE) | | |
| 49. WORKING ON MASTER'S OR DOCTORATE? | NO | | 101b. FIFTH HOUSING PLANS | | |
| 50. ARE YOU MARRIED? | YES | | 102a. SIXTH COLLEGE NAME, CITY AND STATE (CODE) | | |
| | | | 102b. SIXTH HOUSING PLANS | | |
| 51. HAVE CHILDREN YOU SUPPORT? | YES | | 103a. SIXTH COLLEGE NAME, CITY AND STATE (CODE) | | |
| | | | 103b. SIXTH HOUSING PLANS | | |
| 52. DEPENDENTS OTHER THAN CHILDREN/SPOUSE? | NO | | 104. DATE COMPLETED | | COUNSELOR |
| | | | | | STUDENT |
| 53. PARENT(S) DECEASED OR WARD OF COURT? | NO | | 105. SIGNED BY | | PREPARER |
| 54. ON ACTIVE DUTY IN U.S. ARMED FORCES? | NO | | 106. PREPARER'S SOCIAL SECURITY NUMBER | | |
| | | | 107. PREPARER EIN | | |
| 55. VETERAN OF U.S. ARMED FORCES? | NO | | 108. PREPARER SIGNATURE | | |
| 56. PARENTS' MARITAL STATUS | | | | | |
| 57. DATE OF MARITAL STATUS | | | | | |
| 58. YOUR FATHER'S/STEPFATHER'S SOCIAL SECURITY NUMBER | | | | | |

Application Receipt Date: 03/18/2007
Processed Date: 03/18/2007

Parents' E-mail Address:

PAGE 1 OF 2

397609032 HA 01

## YOUR FINANCIAL AID HISTORY INFORMATION

The information below is the total amount of student loans that you owe. These loans are administered by the U.S. Department of Education (ED). You should confirm that these loan totals are correct. You can use your Federal Student Aid PIN to view details on the individual loans that make up totals of the National Student Loan Data System (NSLDS) Web site at www.nslds.ed.gov. For more information about your PIN, go to www.pin.ed.gov. If you feel that this amounts listed on this page are incorrect, or you have other questions related to a loan, you should contact the loan servicer indicated on the NSLDS Web site. You can obtain general information about each of the types of loans that are listed below by visiting our studentaid.ed.gov Web site.

Note that the 'Subsidized' and 'Unsubsidized' amounts include the appropriate portions of any Consolidation Loans you may have. If there is an amount listed for 'FFEL Unallocated Consolidation Loans' it is because we could not determine whether these balances were subsidized or unsubsidized.

Remember you are responsible for repaying all of the amounts that you borrow, plus interest. As a general rule, with an assumed interest rate of 6%, the monthly payment amount over a ten-year repayment period would be approximately $10.61 for every $1,000 that you borrowed. Of course your actual repayment amount will depend upon how much you borrow, the interest rate when you enter repayment, and how long your repayment term is.

Total Amount of Loans Outstanding -

| | Total Principal Balance | Remaining Amount To Be Disbursed To You, If Any | Total |
|---|---|---|---|
| FFEL (Bank Loans) and/or Direct Loans: | $ 010,375 | $ 001,833 | $ 012,208 |
| Subsidized Loans: | | | |
| Unsubsidized Loans: | $ 008,934 | $ 001,257 | $ 010,191 |
| Combined Loans: | $ 019,909 | $ 002,693 | $ 022,509 |
| Total Amount of Loans Outstanding: | N/A | | N/A |
| Federal Perkins Loan Amount: | | | |
| Total Outstanding Principal Balance: | N/A | | |
| 2007-2008 Award Year Loan Amount: | N/A | | |

PAGE 2 OF 4

397609032 HA 01

## COMMENTS ABOUT YOUR INFORMATION

Based on the information we have on record for you, your EFC is 5761. You are not eligible for a Federal Pell Grant but you may be eligible for other aid. Your school will use your EFC to determine your financial aid eligibility for other federal grants, loans, and work study, and possible funding from your state and school.

If you have now completed your 2006 tax return, correct this SAR to reflect the income and tax information reported on your tax return. Select the 'Make Corrections' button at the bottom of the page to make the correction. If you have not yet completed your tax return, you must correct this SAR to reflect the income and tax information reported on your tax return once it is filed.

You reported that you will either have a bachelor's degree by July 1, 2007 (item 25) or will be working on a degree beyond a bachelor's degree (item 49). Graduate students are eligible for most types of federal aid, but generally not the Federal Pell Grant.

If you need to make corrections to your information, select the 'Make Corrections' button at the bottom of the page. You must use your Federal Student Aid PIN to access your record online. If you need additional help with your SAR, contact your school Financial Aid Administrator or the Federal Student Aid Information Center at 1-800-4-FED-AID (1-800-433-3243). If your mailing address or e-mail address changes, you can make the correction online, send in the correction on your SAR, or call 1-800-4-FED-AID and ask a customer service representative to make the change for you.

At this point, the school(s) listed on your application have access to your information. The school(s) may put together or change an aid package based on your Expected Family Contribution and notify you.

The amount of aid you receive from a school will depend on the cost of attendance at that school, your enrollment status (full-time, three-quarter-time, half-time, or less then half-time), Congressional appropriations, and other factors. Review your financial aid notification from the school(s) or contact the Financial Aid Administrator at the school(s).

Note: Your school has the authority to request copies of certain financial documents to verify information you reported on your application.

## The Office of Management and Budget Wants You To Know:

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0008. The time required to complete this information collection is estimated to be an average of 15 to 30 minutes, including the time to review instructions, search existing data sources, gather the data needed, and complete and review the information collected. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: U.S. Department of Education, Washington, D.C. 20202-4651. If you have any comments or concerns regarding the status of your individual submission of this form, write directly to: Federal Student Aid Information Center, P.O. Box 84, Washington, D.C. 20004.

By answering questions 88 through 97, and signing the Free Application for Federal Student Aid, you give permission to the U.S. Department of Education to provide information from your application to the college(s) listed in Step Six. You also agree that such information is deemed to incorporate by reference the certification statement in Step Seven of the financial aid application. The certification statement can be viewed at www.fafsa.ed.gov/help/ffdef39.htm.

To protect the confidentiality of your application data, you should never give, share or disclose your PIN with anyone, including commercial service providers that provide assistance with the financial aid process. You should keep your PIN in a safe location. If you think your PIN has been compromised, please go to the Federal Student Aid PIN Web site at www.pin.ed.gov and change your PIN.

WARNING: If you are convicted of drug distribution or possession, your eligibility for Title IV student financial aid is subject to suspension or termination. If your drug conviction status changes at any time during the 2007-2008 award year, you must update your answer to question 31.

397809032 HA 01

# Federal Family Education Loan Program (FFELP)

## Federal Stafford Loan
## Master Promissory Note

Guarantor, Program, or Lender Identification

**EDFUND-CA STUDENT AID COMM.**

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

Non-Authoritative Copy

**Borrower Information** — Please print neatly or type. Read the instructions carefully.

| 1. Last Name | First Name | M.I. | 2. Social Security Number |
|---|---|---|---|
| Hatch | Judith | M | |

| 3. Permanent Street Address (if P.O. box, see instructions) | 4. Home Area Code/Telephone Number | 5. Date of Birth (Month/Day/Year) |
|---|---|---|
| 412 Carriage Drive | | |

| City | State | Zip Code | 6. Driver's License Number and State | 7. E-mail Address |
|---|---|---|---|---|
| Waukesha | WI | 53186 | State WI | |

| 8. Lender Name | City | State | Zip Code | 9. Lender Code, if known |
|---|---|---|---|---|
| CITIBANK | SIOUX FALLS | SD | 57117-5040 | 808278 |

**References**

| | | Private | Heiser | | | Dora | Petersons |
|---|---|---|---|---|---|---|---|
| Permanent Address | | 817 Milwaukee Ave | | | | 446 East Howard | |
| City, State, Zip Code | | Waukesha WI 53186 | | | | Milwaukee WI 53207 | |
| E-mail Address | | | | | | | |
| Area Code/Telephone Number | | | | | | | |
| Relationship to Borrower | | Relative | | | | Relative | |

11. **Requested Loan Amount:** I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximum under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

12. **Interest Payments (Optional):**
☐ I want to pay unsubsidized interest while I am in school.

## Borrower Certifications and Authorizations — Read carefully before signing below.

13. Under penalty of perjury, I certify that:

A. The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. If I do now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (II) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFEL") as defined in the Borrower's Rights and Responsibilities Statement) or (III) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

14. For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

A. I authorize my school to certify my eligibility for loans under this Master Promissory Note.

B. I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

C. I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

D. I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

E. I request and authorize my lender to (i) during this in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all my FFELP loans to the principal balance of all loans ("Capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for subsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

F. I authorize the release of information pertinent to my loan: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loan and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my school's, lenders, guarantors, the Department of Education, and their agents.

G. So that the loan requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and a state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay — In this Master Promissory Note (MPN), "Note" refers to, and the MPN benefit, the subject lender and the borrower's name, including the borrower's name and any, includes me, the borrower under this MPN.

15. I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loan. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by canceling all or a portion of any disbursement. I understand, unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.

| 16. Borrower's Signature | | 17. Today's Date (Month/Day/Year) |
|---|---|---|
| Electronically Signed | | 8/30/2005 |

*Additional MPN provisions follow*

# Master Promissory Note (continued)

### Disclosure of Loan Terms

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the interest section below. I agree that the lender may sell or assign this MPN and/or my loans and subsequent or that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each such loan is separately enforceable based on a true-and-exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled or at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs up to the annual and aggregate loan limits. If my school determines that I am eligible for any additional or reduced loan amount, my school may certify that amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

### Loan Cancellation

I may pay back all or a part of a disbursement within time frames set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive or at before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

### Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans except interest payable by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is a federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

### Origination Fee and Guarantee Fee

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guaranty agency (the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand that the origination and guarantee fees may be refundable only to the extent permitted by the Act.

### Late Charges and Collection Costs

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the loans made under this MPN, and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments scheduled by me are not my behalf (periods of refund) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be made as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may also grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

### Acceleration and Default

At the option of my lender, the entire unpaid balance of my loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), upon the occurrence of any one of the following events: (i) I fail to enroll as at least a half-time student at the school that certified my loan eligibility, (ii) I fail to use the proceeds of the loan solely for educational expenses, (iii) I make false representation(s) that results in my receiving a loan for which I am not eligible, or (iv) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance of the applicable loans after this loan has accelerated; (ii) I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or (iii) I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize any then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loan may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

### Governing Law and Notices

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount(s) I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce this application/loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to any electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or require compliance with any term under this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.



Federal Family Education Loan Program (FFELP)

# Federal Stafford Loan
# Master Promissory Note
# Instructions and Notices

Guarantor, Program, or Lender Identification

## Instructions for Completing Promissory Note

This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.

Use a dark blue or black ballpoint pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for accuracy—numbers mistakes. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth. (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state

that issued your driver's license is issued by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the lender code, enter it here. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or next of kin. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address, write N/A. If you provide no e-mail address for a reference, the lender or holder of your loan(s) may don't

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 13, 14, and 15:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing the MPN.

## Important Notices

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you.

The authority for collecting the requested information from and about you at §§428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1070(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include its disclosure to federal, state, or local agencies, to other organizations recognized under computer matching programs, to agencies that we authorize to assist us in administering our loan

programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4651.

If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

- Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan (GSL)),
- Unsubsidized Federal Stafford Loan,
- Federal Insured Student Loan (FISL),
- Federal Supplemental Loans for Students (SLS), also known as ALAS,
- Federal PLUS (parent) Loan,
- Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** – Loans disbursed under this Master Promissory Note (MPN) are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). NOTE: Any change to the Act applies to the terms of any loans made as of or after the effective date of the change.

**2. Use of this MPN** – I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if the guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans** – There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. The subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ("lender" refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loan.

**4. Maximum Program Loan Amounts** – Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums | | |
|---|---|---|
| **DEPENDENT UNDERGRADUATES** | **Subsidized** | **Total** (Subsidized & Unsubsidized)[2] |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATE** (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| **AGGREGATE LIMITS[3]** | | |
| **DEPENDENT UNDERGRADUATES** | $23,000 | $23,000 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

[1] Outside lender permitted and schools may qualify for higher limits.
[2] All undergraduate annual loan limits are subject to proration.
[3] If the borrower does not have financial need for a subsidized Federal Stafford Loan underpaid or twenty combination (FFEL), or has reached the aggregate limit on subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

- My academic level (freshman, sophomore, etc.),
- My status as a dependent student or independent student,
- The length of the academic program in which I am enrolled,
- The length of the remainder of my undergraduate program of study if it is less than an academic year, and
- As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits** – For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of any other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money** – I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility

for the time period shown on my disclosure statement. Authorized expenses include the following:

- Tuition,
- Room,
- Board,
- Institutional fees,
- Books,
- Supplies,
- Equipment,
- Dependent child care,
- Transportation,
- Commuting expenses,
- Rental or purchase of a personal computer,
- Origination fee and guarantee fee, and/or
- Other documented, authorized costs.

**7. Loan Fees** – I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionately from each disbursement.

**8. Disbursement of Loan Money** – Generally, my loan money will be disbursed in my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

■ The loan money may be sent in one installment directly to me, or

■ I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance ...

... be made.

9. Change of Status — I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

■ I reduce my enrollment status to less than half time,
■ I withdraw from school,
■ I stop attending classes,
■ I fail to re-enroll for any term,
■ I have a change in my expected graduation date, and/or
■ I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

■ Permanent address,
■ E-mail address,
■ Telephone number,
■ Future employer, and
■ References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan:

■ At least half time for the loan period certified, or
■ At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

■ I change my address, telephone number, or e-mail address
■ I change my name (for example, maiden name to married name),
■ I withdraw from school or begin attending less than half time,
■ I transfer from one school to another school,
■ I change my employer or my employer's address or telephone number changes, and/or
■ I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

10. Effect of Loans on Other Student Aid — Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

11. Grace Period — I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for ...

... necessary for me to resume enrollment at the next available regular enrollment period.

12. Repayment — All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

■ Standard Repayment Plan — Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.

■ Graduated Repayment Plan — Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.

■ Extended Repayment Plan — Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if (i) at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and (ii) I accumulate outstanding FFELP Program loans exceeding $30,000.

■ Income-Sensitive Repayment Plan — If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail ...

... plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and prepayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

13. Interest Rate — The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce my loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

14. Payment of Interest — My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on any outstanding FFELP loans. Interest that accrues on all my subsidized FFELP loans during authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) — unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment). If in my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I take on my loan that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized Federal Stafford Loans during in-school, grace or deferment periods may only be capitalized at the end of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The chart entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.ustreas.gov.

15. Loan Cancellation — I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

■ If my school credits my loan to my student account, I may cancel all or a part of my loan by instructing my school within 14 days after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me this first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

■ At any time within 120 days of disbursement, I may pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

16. Sale or Transfer of Loans — The lender may sell or otherwise transfer all or any of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans; if the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

17. Loan Discharge — My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

18. Consequences of Default — Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:

■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ Legal action against me,

## Capitalization of Federal Stafford Loan Interest

**What is Capitalization?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in Item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount will be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $198 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before repayment.

Result: During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

Contact your lender if you have questions or need more information.

■ Collection charges (including attorney fees) being assessed against me,
■ Loss of my professional license,
■ An increase in my interest rate,
■ Loss of eligibility for other student aid and assistance under most federal benefit programs,
■ Loss of eligibility for loan deferments,
■ Negative credit reports to credit bureaus, and/or
■ My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification** — Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any ... of delinquent debt (including default) will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements** —
■ A Federal Consolidation Loan Program is available under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/or under different education loan programs.
■ Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
■ Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
■ In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
■ If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive

school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.
■ If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments** — Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFEL (Federal Family Education Loan Program) loan and ... repayment on certain loans if, during the deferment ... for which I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:
■ Enrolled at least half time at an eligible school,
■ Engaged in a full-time course of study in a graduate fellowship program,
■ Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education),
■ Conscientiously seeking, but unable to find, full-time employment (for up to three years),
■ Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, or (ii) the lender's receipt of a school certification of eligibility in connection with a new loan, or (iii) the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFEL loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance** — If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:
■ Financial hardship, and/or
■ Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:
■ Serving in a medical or dental internship or residency program, if I meet certain criteria.
■ Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993 ... mandatory in an amount equal to monthly payments by the Corporation for National and Community Service.
■ Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
■ Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria (for up to five years).
■ Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
■ Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

*Repayment Information follows*

## Repaying My Loans

Follow these steps to estimate your loan payment.

### Step 1: Calculate Your Monthly Interest Charges

Round your balance up to the nearest $500. If your loan amount is not on the table, follow the example below to estimate your monthly accrued interest.

Example:
Federal Stafford Loan of $5,475 at 6% interest.
Round up to nearest $500 = $5,500.

$5,000 = $25.00/month
÷ 500 = 2.50/month
$27.50/month

Your Monthly Interest  $_____

#### Approximate Monthly Interest

| Loan Amount | 6.0% | | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| | $2.08 | | $2.92 | $3.33 | $3.75 |
| $1,000 | $4.17 | $5.00 | $5.83 | $6.67 | $7.50 |
| $3,000 | $12.50 | $15.00 | $17.50 | $20.00 | $22.50 |
| | $20.83 | | $29.17 | $33.33 | $37.50 |
| $6,000 | $25.00 | $30.00 | $35.00 | $40.00 | $45.00 |
| $7,000 | $29.17 | $35.00 | $40.83 | $46.67 | $52.50 |
| $9,000 | $37.50 | $45.00 | $52.50 | $60.00 | $67.50 |
| $10,000 | $41.67 | $50.00 | $58.33 | $66.67 | $75.00 |
| $15,000 | $62.50 | $75.00 | $87.50 | $100.00 | $112.50 |
| $20,000 | $83.33 | $100.00 | $116.67 | $133.33 | $150.00 |
| $25,000 | $104.17 | $125.00 | $145.83 | $166.67 | $187.50 |

### Step 2: Estimate Your Capitalized Interest

Complete this step only if you will capitalize interest on a Federal Stafford Loan. This is an estimate only. Actual interest capitalized will depend on factors such as disbursement dates, number of disbursements, and the variable interest rate.

| | Monthly Interest (From Step One) | | Number of Months in deferment or forbearance | | Estimate of Capitalized Interest |
|---|---|---|---|---|---|
| Example | $ 27.50 | X | $ 22 | = | $ 605.00 |
| Your Capitalized Interest | $_____ | X | $_____ | = | $_____ |

### Step 3: Estimate Your Monthly Payment

Round your loan up to the nearest $500. If your principal amount is not on the table, follow the example below to estimate your monthly payment. If you previously had interest capitalized, add it to the original loan amount to get the new principal amount.

Example:
Federal Stafford Loan of $8,105.00 (5,500 + 605.00) at 6% interest.
Round up to nearest $500 = $8,500.

$8,000 = $66.61/month
÷ 500 = 5.55/month
$72.16/month

Estimated monthly payment = $72.16

*Minimum monthly payment = $50 or amount of interest accruing each month

#### Estimated Monthly Payments (15 Year Term)

| Loan Amount | 6.0% | | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| | $5.30 | | $5.61 | $6.07 | $6.33 |
| $1,000* | $10.61 | $11.10 | $11.61 | $12.13 | $12.67 |
| $3,000* | $31.82 | $33.31 | $34.83 | $36.40 | $38.00 |
| $5,000 | $53.03 | $55.51 | $58.05 | $60.66 | $63.34 |
| | $63.64 | | $69.67 | $72.80 | $76.01 |
| $7,000 | $74.25 | $77.71 | $81.28 | $84.93 | $88.67 |
| $9,000 | $95.46 | $99.92 | $104.50 | $109.19 | $114.01 |
| $10,000 | $106.07 | $111.02 | $116.11 | $121.33 | $126.68 |
| $15,000 | $159.10 | $166.53 | $174.15 | $181.99 | $190.01 |
| $20,000 | $212.13 | $222.04 | $232.22 | $242.66 | $253.35 |
| $25,000 | $265.16 | $277.55 | $290.27 | $303.32 | $316.69 |

# Tuition Voucher

**Must be validated by** _____



**Instructions, Rules and Limitations**

1. The bearer of this voucher is entitled to a tuition discount of up to $1,400 toward the tuition of the final term of any Kaplan University degree program. Certificate programs are not eligible. Cannot be used in conjunction with other Kaplan University scholarships or discounts.

2. To validate the voucher, the student must submit it with their Enrollment Packet and have paid their deposit by the date above.

3. To redeem the voucher, a second copy of it must be submitted to Student Accounts at the time of registration for the student's final term. The credit will be applied to that term's tuition invoice.

4. The student should fill in their address, email address, phone number, program selection, sign and date the voucher before redemption.

5. Student should fax or mail this entire form with their Enrollment Packet.

I have read the rules and limitations as they pertain to the Kaplan University Tuition Voucher.

I understand that the voucher can only be applied as a discount of up to $1,400.00 for credits in the final term of my selected degree program. I must be continuously enrolled at Kaplan University and must submit the voucher at the time of registration for my final term in order to redeem it.

_Judith M. Patch_            8-15-05

Signature of Applicant                    Date

(Rev. 06/2005)Sealed Document Tracking Form

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number:  09-20756-CIV-SEITZ/O'SULLIVAN

UNITED STATES OF
AMERICA,
ex rel. JUDE GILLESPIE, et al.    Plaintiff                    *Sealed*

    v.

KAPLAN, INC., KAPLAN
UNIVERSITY a/k/a
KAPLAN COLLEGE, etc, et al.    Defendant

## SEALED DOCUMENT TRACKING FORM

*Party Filing Matter Under Seal*    Name:  BETH TYLER VOGELSANG

                    Address:  4141 NE 2nd Avenue, Suite 201, Miami, FL 33137

           Telephone:  (305) 571-8550

On behalf of (select one):    ☒ Plaintiff            ☐ Defendant

Date sealed document filed:  6/24/2009

If sealed pursuant to statute, cite statute:  31 USC 3730

If sealed pursuant to previously entered protective order, date of order and docket entry number: _____

The matter should remain sealed until:

☐ Conclusion of Trial            ☐ Arrest of First Defendant
☐ Case Closing                   ☐ Conclusion of Direct Appeal
☒ Other: _60 days_
☐ Permanently. Specify the authorizing law, rule, court order: _____

The moving party requests that when the sealing period expires, the filed matter should be (select one):

☒ Unsealed and placed in the public portion of the court file            ☐ Destroyed
☐ Returned to the party or counsel for the party, as identified above

_____
Attorney for: