UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20756-CIV-SEITZ

UNITED STATES OF AMERICA, *ex rel.*
CARLOS URQUILLA-DIAZ *et al.*,

       Plaintiffs,

  v.                                 **DISPOSITIVE MOTION**

KAPLAN UNIVERSITY *et al.*,

       Defendants.

_____/

**DEFENDANTS KAPLAN, INC., KAPLAN UNIVERSITY, AND KAPLAN HIGHER EDUCATION CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS RELATORS' SECOND AMENDED COMPLAINT**

{M2863936;1}

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

In their opposition, Relators rely upon a series of arguments and extraneous materials in the hope of distracting the Court from the three reasons why their case should be dismissed: (1) it is barred by the first-to-file provision, (2) Relators have not alleged an underlying violation of the law with particularity, and (3) Relators' general theory of liability fails as a matter of law. Nothing that Relators say in their opposition – or that the United States mentions in its limited Statement of Interest – changes the result that Relators' case should be dismissed with prejudice before Relators expose Kaplan to potentially millions of dollars of futile discovery.

II. **RELATORS' CASE SHOULD BE DISMISSED PURSUANT TO THE FIRST-TO-FILE PROVISION**

The first reason why Relators' case should be dismissed is because it is jurisdictionally barred from proceeding by the "first-to-file" provision. As Kaplan outlines in its Motion, the first-to-file provision bars a False Claims Act ("FCA") case from going forward to the extent it is a "related action based on the facts underlying [an earlier-filed] pending [*qui tam*] action." 31 U.S.C. § 3730(b)(5). *See* Mot. at 5-6. To be barred, a case need not be identical to an earlier-filed case; rather, the first-to-file "bar applies 'so long as a subsequent complaint raises the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first *qui tam* action.'" *U.S. ex rel. Bane v. Life Care Diagnostics*, 2008 WL 4853599, at *3 (M.D. Fla. Nov. 10, 2008) (citation omitted). The idea behind the first-to-file rule is that once an earlier-filed complaint has placed the government on notice, no further complaints need be filed to alert the government or otherwise protect the government's interests. *U.S. ex rel. St. John Lacorte v. Smithkline Beecham*, 149 F.3d 227, 234 (3d Cir. 1998). As held by all courts, the first-to-file provision is broad, and requires dismissal under Rules 12(b)(1) or 12(b)(6) of any complaint that it precludes. *See, e.g.*, *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004).[1]

Here, Relators' case is clearly barred by the first-to-file provision. The earlier-filed case of *U.S. ex rel. Gatsiopoulos v. ICM and Kaplan* alleges the exact same theory of "fraud" as Relators allege here; alleges, like Relators here, that this fraud occurred in connection with statements made by Kaplan in Program Participation Agreements ("PPAs") entered into with the

---

[1]  Importantly, the government has taken no position on Kaplan's first-to-file argument.

Department of Education ("DOE"); alleges, like Relators here, that these false statements related to compliance with various Higher Education Act ("HEA") and DOE requirements; and even provides some of the exact same examples of how this purported "fraud" took place, including, for instance, by allegedly paying recruiters prohibited "incentive compensation" and "inflating" students' grades. *Compare* Req. for Jud. Not. (filed Aug. 4, 2009) ("RJN") Exs. A-B, *with* Sec. Am. Compl. ("SAC"); Mot. at 6-7 (outlining overlap). Indeed, Relators themselves have acknowledged the similarities between their case and *Gatsiopoulos* in submissions to the Panel on Multi-District Litigation in which they urged that *Gatsiopoulos* be coordinated with this case. RJN Ex. E at 3 ("Among other things, the Qui Tam Actions make similar allegations concerning how Kaplan made fraudulent misrepresentations to the United States in order to obtain student loans."); *id.* ("The Florida Action details numerous instances of fraud, many of which overlap with the allegations in the . . . Pennsylvania action[]."). And it is for these reasons that the Panel transferred *Gatsiopoulos* to this Court. RJN Ex. C at 1 ("[W]e find that the[] . . . actions involve common questions of fact . . . .").[2] Therefore, this is clearly a "related action" based upon the facts underlying the earlier-filed *Gatsiopoulos* case, and Relators' arguments to the contrary – which are inconsistent with the statements they made to the MDL Panel – should be rejected.

In response, Relators now advance a series of arguments, none of which hold water. First, Relators' contention that they have asserted "additional" violations of the incentive compensation provision, violations of the Rehabilitation Act and Americans with Disabilities Act ("ADA"), and violations of accreditor requirements not found in *Gatsiopoulos* does not save their case. Opp. at 5-6, 16-17. These are just "related" frauds that are barred by the first-to-file provision. *See, e.g.*, *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 478 (D.N.J. 1999) ("[O]nce the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds," which are also barred). Further, and at any rate, these allegations are the ones most susceptible to dismissal based upon Kaplan's other arguments. *See* Sections III-IV *infra*.

---

[2] Relators misrepresent the Panel's ruling. The Panel did not "reject" the first-to-file argument, as implied by Relators (Opp. at 5); rather, it simply found that such an argument was for this Court to decide. RJN Ex. C at 2. Nor did the Panel find that there were dispositive "non common issues" among the cases precluding a first-to-file argument. Opp. at 5.

Second, Relators' argument that their case is not "related" because this matter may involve a different Kaplan entity or school than *Gatsiopoulos* also fails. Opp. at 6-7, 15-16. As a preliminary matter, Relators conveniently ignore the fact that both they and the *Gatsiopoulos* relators sue the very same Kaplan entity – Kaplan Higher Education Corporation. RJN Exs. A-B (suing KHEC); SAC (same). Likewise, Relators also conveniently ignore that at least some of the allegations in *Gatsiopoulos* purport to be "corporate-wide." *See, e.g.*, RJN Ex. B ¶ 22 (alleging purported illegal "incentive compensation" throughout KHEC, the corporate parent of both ICM and KU). Further, and as outlined in Kaplan's Motion, Relators' argument is generally without support: courts consistently hold that an earlier-filed action against one corporate affiliate is sufficient to bar a latter action against a different affiliate, provided the earlier action provided the government notice of what is alleged in the latter action. *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003); *see also, e.g.*, *Grynberg,* 390 F.3d at 1280 n. 4; *cf. U.S. ex rel. Wilson v. Emergency Med. Ass. of Ill.*, 2000 WL 34026709, at *2 (N.D. Ill. Sept. 24, 2000); *Palladino*, 68 F. Supp. 2d at 478. Here, given that Relators and the *Gatsiopoulos* relators actually sue the same entity, that the allegations in *Gatsiopulos* clearly overlap with those alleged by Relators, and that the government has substantial familiarity with these types of cases against educational institutions, Relators' action is a "related action based on the facts" underlying *Gatsiopoulos*.[3]

Third, Relators contend that *Gatsiopoulos* cannot bar their case because *Gatsiopoulos* might be jurisdictionally infirm or subject to dismissal under Rule 9(b). Opp. at 2-4, 13-14. This argument also fails. As a preliminary matter, Kaplan has never argued that *Gatsiopoulos* should be dismissed on jurisdictional grounds. *See* Docket, Case No. 1:09-cv-21720-PAS. Nor have Relators presented an actual challenge to the jurisdiction of *Gatsiopoulos* – for example, they have neither filed a motion to dismiss that action nor identified even one prior "public disclosure" of allegations relating to incentive compensation. *Id.* Relators' argument based upon the "jurisdictional" infirmities of *Gatsiopoulos* is therefore entirely speculative, based only on out-of-circuit authority, and cannot provide a basis for their claims. As for Relators' claims regarding Rule 9(b), Relators misconstrue the law. In the case upon which Relators rely,

---

[3] For these reasons as well, Relators' attempts to distinguish *Hampton* are unpersuasive. Opp. at 6, 15.

*Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005), the court simply held that a relator in a latter action would not be barred by a relator in a former action who simply alleged that defendant had committed "fraud." *Id.* at 971-72. In such circumstances, the court naturally held that the earlier-filed complaint was "fatally broad," did not satisfy Rule 9(b), and should not bar the latter relator's case, which had specifically alleged that the defendant had committed fraud on the government by falsifying certain readings in particular documents. *Id.* at 972 (court was not going to punish relator for "hav[ing] the misfortune of following behind the vague and broad-ranging allegations of fraud contained in the [earlier-filed] complaint," and such "a vague and broadly-worded complaint" should not "be given preemptive effect"). Here, the situation is entirely different. The *Gatsiopoulos* relators and Relators allege the same "fraud," and even rely upon some of the same examples of that alleged fraud. Whether or not *Gatsiopoulos* satisfies Rule 9(b), it was sufficient to place the government on notice – which is the premise and purpose behind the first-to-file provision. *St. John Lacorte*, 149 F.3d at 234. *Walburn* is therefore inapplicable.

Fourth and finally, Relators contend throughout their brief that it is simply "too early" to dismiss their case and that they first need some "discovery." *See, e.g.*, Opp. 3-7, 18. This argument is frivolous, and reveals Relators' true motives. Indeed, one of the purposes of the first-to-file provision, as well as the pleading rules in general, is to protect parties from unnecessary costs that would be imposed if cases such as Relators' were allowed to proceed to discovery. *See Grynberg*, 390 F.3d at 1279; *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359-60 (11th Cir. 2006). Consequently, courts readily dismiss cases at the pleading stage under Rules 12(b)(1) and 12(b)(6) based upon the first-to-file provision. *Grynberg*, 390 F.3d at 1278. No discovery from the defendant is needed in these circumstances, because the relevant inquiry is whether the complaint in the earlier action was sufficient to place the government on notice of what is alleged in the latter action. *St. John Lacorte*, 149 F.3d at 234. Indeed, the fact that Relators claim throughout their brief that they need "discovery" demonstrates what they are truly up to – they simply want to get to discovery so that they can engage in a fishing expedition and improperly impose as much expense on Kaplan as possible. The Eleventh Circuit has specifically cautioned courts about this sort of conduct in FCA cases. *Atkins*, 470 F.3d at 1359-60 (outlining relators' motives, which often include just trying to get to discovery to impose enormous, crippling costs on defendant to try to extort a settlement). Thus, and for all of the

reasons outlined above, Relators' case should be dismissed with prejudice because it is barred by the first-to-file provision.

## III.   RELATORS' CASE SHOULD BE DISMISSED UNDER RULE 9(B)

The second reason why Relators' case should be dismissed is because Relators have not – and cannot – allege that there was any underlying violation of the HEA or a DOE rule or regulation to support their FCA claims.  *See, e.g.*, *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 383 (5th Cir. 2003) (false certification claims dismissed due to failure to adequately allege underlying violation); *see also* Mot. at 8-13.  Nothing that Relators state in their Opposition demonstrates otherwise.

First, Relators try to respond by attempting to minimize the role of Rule 9(b) in FCA cases with out-of-circuit authority.  Opp. at 7.  This is improper.  The Eleventh Circuit has specifically advised courts that "[r]equiring relators to plead FCA claims with particularity is ***especially important***," due to "the quasi-criminal nature of FCA violations (*i.e.*, a violator is liable for treble damages)" and to ensure that "the relator's strong financial incentive to bring an FCA claim – the possibility of recovering between fifteen and thirty percent of a treble damages award – does not precipitate the filing of frivolous suits."  *Atkins*, 470 F.3d at 1360 (emphasis added).  *See also U.S. ex rel. Shurick v. Boeing*, 2009 U.S. App. LEXIS 10490, at *5-6 (11th Cir. 2009).  Nor does Kaplan argue, as Relators suggest, that Relators must "prove" their case through the Complaint.  Opp. at 7.  Rather, Kaplan simply contends that Relators must do what all relators must do – plead an actual violation of the law with particularity.  *U.S. ex rel. Bott v. Silicon Valley Colleges*, 2008 WL 59364, at *1 (9th Cir. 2008) (relator must allege underlying violation of HEA or DOE regulation with particularity).

Second, Relators respond in haphazard fashion that they actually have alleged an underlying violation of the law.  Opp. at 7-8, 18-20.  This is incorrect.  With respect to Relators' allegations regarding "grade inflation," for instance, Relators have yet to respond to Kaplan's argument that Relators have not identified any law or regulation making the purported conduct illegal.  Mot. at 9-10.  They have not identified, for instance, ***any*** HEA or DOE provision making it illegal to use "student surveys" to evaluate teachers or to grade students on a standard other than a "bell curve."  Although Relators fall back on their claim that this somehow violated Satisfactory Academic Progress standards (Opp. at 7-8), they do not cite anything in support of

this assertion; do not identify even one student who received financial aid and did not meet those standards; and continue to misconstrue what the standards actually are. *See* Mot. at 10 n.6.

Similarly, although Relators now claim that they have alleged violations of other laws, such as the ADA, the incentive compensation provision, and purported accreditor requirements, this is incorrect. With respect to the ADA, for instance, Relators still have not provided any details as to *how* Kaplan purportedly violated the alleged ADA Resolution Agreement. Mot. at 12. Likewise, with respect to incentive compensation, Relators' complaint alleges nothing other than conduct entirely consistent with the HEA. *Id.* at 11-12. Simply throwing in conclusory assertions that there was a "disguised plan" – along with a blatant misrepresentation that the DOE already found Kaplan's plan to be non-compliant – is not sufficient under the Federal Rules. Opp. at 18; *Bott*, 2008 WL 59364 at *1 (relator must plead HEA violations with particularity, and affirming lower court's decision that conclusory assertions that compensation was based "solely" on enrollments are insufficient).[4] And, finally, Relators' claims of violations of accreditor requirements do not provide a basis for their case because: (i) they do not assert violations of "fraud" against the government, and (ii) they are inadequately pled for the reasons articulated in Kaplan's Motion. Mot. at 12-13. Relators do not even address the remainder of their allegations, conceding that they are inadequately pled. For these reasons, Relators' case should be dismissed because they have failed to allege any underlying violation of the law.

## IV. RELATORS' THEORY OF FCA LIABILITY FAILS

Finally, Relators' Complaint should be dismissed because their theory of FCA liability fails as a matter of law. Mot. at 13-19. It is this argument – and this argument only – that the U.S. addresses in its Statement of Interest. Relators' and the U.S.'s arguments are unpersuasive.

---

[4] As indicated in the documents (inappropriately) attached to Relators' opposition, the referenced DOE program review report related to Computer Learning Center, an entirely different school. Opp. Ex. 3. Further, these documents – which should not be considered in connection with this Motion to Dismiss, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) – demonstrate, if anything, that Kaplan was in complete compliance. *Compare, e.g.*, 34 C.F.R. § 668.14(b)(22)(ii)(A) (school may pay salary provided it is not adjusted "solely" on number of students enrolled), *with* Opp. Exs. 4 & 5B (compliant plans). Relators' citation to *Irwin* is also off base, as that court found that the relator – unlike Relators here – "detail[ed] more than twenty separate instances in which [the school] violated the incentive compensation ban." *U.S. ex rel. Irwin v. Significant Educ., Inc.*, 2009 U.S. Dist. LEXIS 13832, at *2 (Feb. 10, D. Ariz. 2009).

First of all, and despite Relators' and the U.S.'s assertions to the contrary, there is a very real split of authority over the viability of Relators' theory. *See* John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.03[G][1][c] (2009), filed herewith as Ex. X (leading treatise on FCA discussing split). Three district courts in the Fifth Circuit have concluded that Relators' theory fails, and those decisions were affirmed by the Court of Appeals.[5] This authority stands in contrast with that from the Ninth Circuit, upon which Relators and the U.S. rely. With the issue properly framed, Kaplan contends the Court should follow the lead of the Fifth Circuit, including the well-reasoned decision of Judge Rosenthal in the *Graves* case.

A.      **Relators Do Not Point To A Certification Of Compliance**

The initial reason why Relators' theory fails is that there is no certification of compliance with any of the laws or regulations that Relators claim Kaplan violated. Mot. at 14-15. Relators and the U.S. respond to this argument by contending, based upon the Ninth Circuit's decision, that there is no need for a false "certification" of compliance; rather, a false "statement" of compliance will suffice. Opp. at 11; Statement of Interest Ex. A ("SOI") at 3-5.[6] Relators' and the U.S.'s contention misses the mark. As explained in Kaplan's Motion, the PPA, when examined in detail, demonstrates that a school does not certify or state compliance with anything allegedly at issue here. Rather, a school merely states that it "will comply" in the future with various rules and regulations. *See, e.g.*, RJN Ex. L at 3 (PPA). Thus, regardless of whether a "certification" or "statement" of compliance is required, neither is present here.[7]

---

[5] *See U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487 (S.D. Tex. 2003), *aff'd*, 2004 U.S. App. LEXIS 21799 (5th Cir. 2004); *U.S. ex rel. Gay v. Lincoln Tech. Inst.,* 2003 U.S. Dist. LEXIS 25968 (N.D. Tex. Sept. 3, 2003), *aff'd*, 2004 U.S. App. LEXIS 21489 (5th Cir. 2004); *U.S. ex rel. Bowman v. Educ. America, Inc.*, No. H-00-3028 (S.D. Tex. Jan. 8, 2004), *aff'd*, 2004 U.S. App. LEXIS 24673 (5th Cir. 2004).

[6] Relators also contend that an "implied certification" of compliance is sufficient. Opp. at 9-10. Not even the Ninth Circuit agreed with this argument, however. *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1172 n.1 (9th Cir. 2006).

[7] Although one might argue that a false statement of intent to comply in the future should be actionable under the FCA, any such FCA action – even if viable – would be based on the "promissory fraud" theory discussed in *U.S. ex rel. Main v. Oakland City Univ*., 426 F.3d 914 (7th Cir. 2005). *Id.* at 917 (promissory fraud is one making a "promise that one intends not to keep"). Relators have not alleged such a theory here. Indeed, they have not provided **any** factual

[Footnote continued on next page]

### B. There Is No Certification That Is A Condition Of Payment

The other reason why Relators' theory fails is that there is no certification of compliance that is a condition of payment. Mot. at 15-17. Rather, any such certification is at most a condition on participation in Title IV programs. *Id.* That something must be a "condition of payment" has been recognized by courts in this Circuit. *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1258-59 (11th Cir. 2005); *Shurick*, 2008 U.S. Dist. LEXIS 94927, at *10-11.

Relators and the U.S. respond to this argument by relying on the Ninth Circuit's decision, and its holding that there is no functional difference between conditions on participation and conditions on government payment. Opp. at 8; SOI at 6-11. The arguments that Relators and the U.S. advance in support of the Ninth Circuit's position, however, are unpersuasive.

As an initial argument, Relators and the U.S. quote the Ninth Circuit's rationale that "'if we held that conditions of participation were not conditions of payment, there would be no conditions of payment at all – and thus, an educational institution could flout the law at will.'" SOI at 6 (quoting *Hendow*, 461 F.3d at 1176); Opp. at 12 (same). The Ninth Circuit's statement, however, is inaccurate. In this case, for instance, Relators attempt to sue Kaplan under the FCA for all sorts of things, including alleged violations of the ADA and DOE regulations. All of these requirements, however, have their ***own administrate and civil enforcement mechanisms***, and there is simply no need to permit a relator to also sue for their alleged violation under the

---

[Footnote continued from previous page]
allegations – let alone with particularity – to support the claim that Kaplan entered into a PPA without any intention on performing its promises. Further, they do not even allege who signed the PPA, when it was executed, which provisions of it the school was not intending to comply with on which signing date, etc. *See Willard*, 336 F.3d at 385 (rejecting similar "fraud in the inducement" allegations); *see also U.S. ex rel. Bettis v. Odebrecht Contr.*, 393 F.3d 1321, 1329-30 (D.C. Cir. 2005) ("the mere fact that a promise made is subsequently not performed" does not show fraudulent inducement) (citation omitted); *Graves*, 284 F. Supp. 2d at 503-504 (same). For this reason, Relators' and the U.S.'s arguments based upon *Main* are inapplicable. *See, e.g.*, Opp. at 9, 18-19; SOI at 4-6. Nor are the arguments presented by the U.S. and Relators regarding there being an actual "certification" in student financial aid requests regarding student "eligibility" persuasive. Opp. at 11; SOI at 5-6. A certification that a student is "eligible" is not a certification that the school is in compliance with all HEA or DOE requirements. 34 C.F.R. § 682.603(a) (school shall certify information "about the borrower"). Moreover, there is no dispute that Kaplan at all times has been operating under a valid PPA, making it an "eligible institution" that "eligible" students may attend.

{M2863936;1}   8

FCA.  *See U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001) ("[FCA] was not designed for use as a blunt instrument to enforce compliance with all . . . regulations").[8]

Moreover, the fact that Relators have brought this case – based upon purported violations of the ADA and other (unidentified) laws – demonstrates the very real "parade of horribles" that Relators and the U.S. criticize Kaplan for raising.  SOI 9-11; Opp. at 13.  These are arguably conditions on participation, just as are **all** Title IV statutes and regulations and **all** requirements established by state licensing bodies.  *See* RJN Ex. L at 2-3, 5-6 (PPA).  If all conditions on participation are actionable, relators will continue to bring cases like this, turning the FCA into something that it is not – a means for relators to turn allegations of routine regulatory compliance into federal cases of fraud.

The U.S. attempts to minimize this concern by assuring the Court that only "material" violations may provide the basis for an FCA case.  SOI 9-11.  But this too misses the point.  What makes something "material," as recognized by the Supreme Court, is whether it was "material to the Government's decision to pay" – *i.e.*, a condition on payment.  *Allison Engine Co. v. U.S. ex rel. Sanders*, 128 S. Ct. 2123, 2126 (2008).  That something is a mere condition on participation does not mean it was "material" to the government's actual payment decision.  To demonstrate that this is true, the Court need only look at the fact that the U.S. does not – and cannot – offer any criteria for determining how any one of the thousands of "conditions on participation" is more or less "material" than another.[9]  What makes a condition on participation "material" is if it is a "condition of payment."

---

[8]  The HEA, for instance, provides DOE with ample authority to enforce compliance.  *See*, *e.g.*, 34 C.F.R. § 668.84(a)(1) (authorizing DOE to impose fines); *id.* § 668.86(a)(i) (authorizing DOE to bring terminating actions); *id.* §§ 600.41, 668.83, 668.85, 668.86 (authorizing DOE to initiate emergency actions); *id.* §§ 668.95, 668.123, 682.609 (authorizing DOE to seek repayment); 34 C.F.R. §§ 668.23(b), 668.112 (setting forth compliance audit and program review process).

[9]  For instance, the U.S. asserts that the incentive compensation provision is particularly close to the government's payment decision.  SOI at 7 n.2, 10-11.  But it does not cite any authority in support of its assertion.  Indeed, DOE policy memoranda suggest the opposite.  *See* RJN Ex. P.  It is important to note, however, that both *Hendow* and *Main* did limit their discussion to violations of the incentive compensation provision.  Thus, Relators misrepresent the law in claiming that these cases necessarily allow them to proceed, for example, on claims regarding purported ADA violations or "grade inflation."  *See* Opp. at 13.

The U.S. also attempts to assure the Court that only "knowing" violations are actionable under the FCA. SOI 9-11. But this should provide no comfort for defendants or the courts, as "knowledge" need not be plead with particularity. Fed. R. Civ. P. 9(b). Thus, the U.S.'s theory – if accepted – would allow every relator alleging a routine regulatory compliance matter to proceed to discovery, causing great and unnecessary cost and burden to both defendants and the courts. This should not be permitted. *Cf. Atkins*, 470 F.3d at 1359-60 (noting costs imposed on defendants when relators are allowed to proceed to discovery).

And finally, Relators and the U.S. appear to assert that perhaps the distinction between conditions on participation and payment – discussed in the *Mikes* case – should be limited to the Medicare context. Opp. at 8; SOI at 8. *Mikes*, however, did not state that this distinction of general applicability should be limited to Medicare. Moreover, and despite Relators' assertions to the contrary, courts have made this important distinction outside the Medicare context, including in the exact educational context posed here. *See Graves*, 284 F. Supp. 2d at 501-502; *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786 n.8, 793 (4th Cir. 1999); *Willard*, 336 F.3d at 382.[10]

For these reasons, Kaplan respectfully requests that the Court follow the lead of the Fifth Circuit, and reject the Ninth Circuit authority upon which the U.S. and Relators rely.

## V.    DIAZ'S RETALIATION CLAIM FAILS AS A MATTER OF LAW

Finally, Diaz's retaliation claim also should be dismissed. For one, Relators do not respond to Kaplan's argument that Diaz's claim is barred by *res judicata*. *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (when party fails to respond to argument in motion to dismiss, court deems claim abandoned). Further, Relators do not actually respond to the substance of Kaplan's other arguments, and simply ask for leave to amend without identifying how the amendment would cure the deficiencies with their claims. This too is insufficient. *Atkins*, 470 F.3d at 1361-62 (plaintiff not allowed to amend complaint without showing how complaint will save meritless claim).

---

[10]  The language quoted by the U.S. from *McNutt* demonstrates, if anything, that the Eleventh Circuit recognizes that something must be a condition on payment to be actionable. *McNutt,* 423 F.3d at 1259 ("When a violator . . . is ineligible . . . and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable.").

DATED:  October 16, 2009.                           Respectfully submitted,

                                                    By: /s/  Susan N. Eisenberg

| | |
|---|---|
| Timothy J. Hatch | Susan N. Eisenberg |
| CA Bar No. 165369; *Pro Hac Vice* S.D. Fla. | FL Bar No. 600393 |
| THatch@gibsondunn.com | Susan.eisenberg@akerman.com |
| Nicola Hanna | Samuel S. Heywood |
| CA Bar No. 130694; *Pro Hac Vice* S.D. Fla. | FL Bar No. 0016604 |
| NHanna@gibsondunn.com | Samuel.heywood@akerman.com |
| James L. Zelenay, Jr. | |
| CA Bar No. 237339; *Pro Hac Vice* S.D. Fla. | |
| jzelenay@gibsondunn.com | |
| | |
| **GIBSON, DUNN & CRUTCHER LLP** | **AKERMAN SENTERFITT** |
| 333 South Grand Avenue | One S.E. 3rd Avenue, 28th Floor |
| Los Angeles, California 90071 | Miami, FL  33131-1714 |
| Phone:  (213) 229-7000 | Phone:  (305) 374-5600 |
| Fax:  (213) 229-7520 | Fax:  (305) 374-5095 |
| | |
| *Co-Counsel for Defendants* | *Co-Counsel for Defendants* |

### CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                    /s/ Susan N. Eisenberg
                                                    Susan N. Eisenberg

# SERVICE LIST
### United States *ex rel*. Carlos Urquilla Diaz v. Kaplan University, *et al*.
### Case No. 1:09-20756-CIV-SEITZ/O'SULLIVAN
### United States District Court, Southern District of Florida

| | |
|---|---|
| J. Troy Andrews, Esq.<br>hangfire@ix.netcom.com<br>John W. Andrews, Esq.<br>jwa@ix.netcom.com<br>**ANDREWS LAW GROUP**<br>3220 Henderson Blvd.<br>Tampa, Florida  33609<br>Phone: (813) 877-1867<br>Fax:     (813) 872-9298<br><br>*Attorneys for Relators Urquilla-Diaz and Wilcox*<br>_____<br><br>Jeremy W. Alters<br>jeremy@abbrclaw.com<br>Kimberly L. Boldt<br>kimberly@abbrclaw.com<br>**ALTERS, BOLDT, BROWN, RASH, CULMO, P.A.**<br>4141 NE 2nd Ave., Suite 201<br>Miami, Florida  33137<br>Phone: (305) 571-8550<br>Fax:     (305) 571-8558<br><br>*Attorneys for Relator Gillespie* | Carlos Raurell, Esq.<br>Assistant United States Attorney<br>carlos.raurell@usdoj.gov<br>United States Attorney's Office<br>99 N.E. 4th St., Suite 335<br>Miami, Florida 33132<br>Phone: (305) 961-9243<br>Fax:     (305) 536-3061<br><br>*U.S. Attorneys' Office* |