UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20756-CIV-SEITZ/SIMONTON

UNITED STATES OF AMERICA,
*ex rel.* CARLOS URQUILLA DIAZ, *et al.,*

       Plaintiffs,

v.

KAPLAN UNIVERSITY, *et al.*,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' Motion to Dismiss Relators' Second Amended Complaint [DE-171]. Relators Gillespie, Diaz, and Wilcox filed this qui tam action pursuant to the False Claims Act.[1] Relators' Second Amended Complaint alleges that Defendants filed false claims for payment under Title IV of the Higher Education Act (HEA) because they were not eligible to file the claims based on their failure to comply with requirements of eligibility. Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Defendants move to dismiss the claims for lack of subject matter jurisdiction and for failure to state a cause of action. For the reasons set forth below, Defendants' Motion is granted as to all claims except for Relators' False Claims Act counts based on violations of the Rehabilitation Act and for Relator Diaz's retaliation claim.

---

[1]This is one of three qui tam actions against Kaplan Higher Education Corp. that are before this Court pursuant to an order of the Judicial Panel on Multidistrict Litigation. Defendants have filed motions to dismiss in all three. Chronologically, this is the second filed of the three actions. The first filed action, *Gatsiopoulos*, alleges violations of the False Claims Act based on alleged violations of the HEA's incentive compensation ban and the HEA's 70 Percent Rules. The third filed action, *Torres*, also alleges violations of the False Claims Act based on alleged violations of the incentive compensation ban.

## I. Facts and Procedural History

Plaintiffs, three former employees of Defendants, filed their first complaint under seal on March 7, 2008. Subsequently, two amended complaints were filed. The operative complaint, the Second Amended Complaint [DE-170], was filed under seal on June 24, 2009 and unsealed, by Court order, on July 15, 2009.

Defendants Kaplan University (KU) and Kaplan Higher Education Corp. (KHEC) are accredited by the Higher Learning Commission and are recipients of federal student financial aid funds from the U.S. Department of Education, pursuant to the HEA. KU operates numerous online educational enterprises throughout the United States. KU is a wholly owned subsidiary of KHEC.[2] KHEC is a division of Defendant Kaplan, Inc. (Kaplan).[3]

Relator Jude Gillespie worked for Defendants[4] from April 2004 through April 2005 as a Course Developer, Department Chairman, and Associate Professor of Paralegal Studies. Relator Carlos Urquilla-Diaz worked for Defendants[5] from August 2004 through April 2005 as a Professor of Paralegal Studies. Relator Ben Wilcox was also an employee of Defendants. Wilcox was a Dean at KU and apparently worked out of Fort Lauderdale and Chicago. Relators initially were represented by the same counsel. However, prior to the filing of the Second

---

[2]The Second Amended Complaint, in the same paragraph, alleges that KU is a wholly owned subsidiary of The Washington Post Company and that KU is a wholly owned subsidiary of KHEC.

[3]The Second Amended Complaint does not explain what Defendant Kaplan does.

[4]The Second Amended Complaint does not specify for which of the Defendants Gillespie worked.

[5]According to the Second Amended Complaint Diaz worked for Kaplan Online, which is not a Defendant, and KHEC.

Amended Complaint, Gillespie obtained new counsel. The Plaintiffs were ordered to file a single

Second Amended Complaint. While the Second Amended Complaint is a single complaint, it is

essentially two separate complaints pasted together, with Gillespie pleading two causes of action

under the False Claims Act and Wilcox and Diaz pleading two causes of action based on the

False Claims Act and a retaliation claim by Diaz.

Gillespie's claims and Wilcox and Diaz's claims both allege violations of the Program

Participation Agreement (PPA). In order to obtain federal student financial aid through Title IV

of the HEA, an educational institution must certify to the United States government

(Government) that it will comply with statutory and regulatory prerequisites established by the

HEA and the Department of Education (DOE). Certification is done through the execution of a

PPA. All the Relators allege that Defendants have failed to comply with certain of these

statutory and regulatory prerequisites.

A. *Gillespie's Claims*

Gillespie's claims are based on two different violations of the PPA: (1) failure to comply

with section 504 of the Rehabilitation Act[6] and (2) inflating student grades to falsely certify that

---

[6]Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, reads in pertinent part:

(a) Promulgation of rules and regulations
No otherwise qualified individual with a disability in the United States, as defined in
section 705(20) of this title, shall, solely by reason of her or his disability, be excluded
from the participation in, be denied the benefits of, or be subjected to discrimination
under any program or activity receiving Federal financial assistance or under any program
or activity conducted by any Executive agency or by the United States Postal Service. The
head of each such agency shall promulgate such regulations as may be necessary to carry
out the amendments to this section made by the Rehabilitation, Comprehensive Services,
and Developmental Disabilities Act of 1978.
* * *

(b) "Program or activity" defined

students are maintaining satisfactory academic progress. As to the first alleged violation, the

PPA references that the educational institution will comply with section 504 of the Rehabilitation

Act. On April 14, 2005, Gillespie filed a complaint with the DOE's Office of Civil Rights

(OCR) because Defendants failed to accommodate Gillespie's bipolar disorder. The OCR

investigated the claim, which it denied, but in October 2007, the OCR found that Defendants

were in violation of section 504 of the Rehabilitation Act and its implementing regulations.[7] As

a result of the findings OCR and Defendants entered into a Resolution Agreement. Based on the

OCR's findings, Gillespie alleges that Defendants falsely certified to the Government that they

were in compliance with the necessary prerequisites to obtaining federal funding. Gillespie also

alleges that, even after entering into the Resolution Agreement, Defendants continued to be in

---

For the purposes of this section, the term "program or activity" means all of the
operations of--
* * *
(3)(A) an entire corporation, partnership, or other private organization, or an entire sole
proprietorship--
(i) if assistance is extended to such corporation, partnership, private organization, or sole
proprietorship as a whole; or
(ii) which is principally engaged in the business of providing education, health care,
housing, social services, or parks and recreation;

[7]The OCR set out its findings in an October 27, 2005 document which stated that
Defendants were in violation of section 504 for the following reasons: (1) the university does not
have published procedures detailing how a disabled employee can request accommodations; (2)
the university needed to provide policies and procedures that address discrimination separately
from harassment; (3) the complaint procedure should be amended to provide the detailed process
by which employees could seek informal and formal resolution of their concerns; (4) the
university should designate consistently to whom informal and formal complaints may be
addressed; (5) the policies and procedures should be amended to provide a definitive manner and
time in which investigations are to be completed; (6) the complaint procedures should be
amended to require the university to notify complainants in writing of the results of
investigations; and (6) the policies should set out to where one could appeal an investigation's
findings.

non-compliance with the Rehabilitation Act and with the Resolution Agreement.

As to the second alleged violation of the PPA, in order to receive Government funding Defendants were required to certify that each student applying for Government financial aid was maintaining satisfactory academic progress toward their degree or certificate. The Second Amended Complaint alleges that Defendants maintained a policy of manipulating student academic progress in order to show that students were maintaining satisfactory academic progress. Defendants did this by making professors' jobs dependent on their student evaluations, which gave professors strong incentives to give good grades in order to receive strong student evaluations, and by having grade distributions that resulted in 50% of a class receiving "A"s and "B"s. Defendants also falsely certified that students met a minimum grade point average. As a result of Defendants' failure to comply with the Rehabilitation Act and the scheme to manipulate grades to satisfy the satisfactory academic progress requirements, Gillespie alleges two counts against Defendants for violation of the False Claims Act, one under 31 U.S.C. § 3729(a)(1)(A)[8] and one under 31 U.S.C. § 3729(a)(1)(B).[9]

### B. Diaz and Wilcox's Claims

Diaz and Wilcox allege multiple violations of the PPA based on: (1) a violation of the HEA's incentive compensation ban; (2) a violation of the 90/10 Rule; (3) falsifying documents in order to receive program accreditation; and (4) several other actions which allegedly violated the PPA. First, Diaz and Wilcox maintain that Defendants violated the PPA by paying student

---

[8] Section 3729(a)(1)(A) prohibits the knowing presentment of a false or fraudulent claim for payment to the United States.

[9] Section 3729(a)(1)(B) prohibits the knowing use of a false record or statement material to a false or fraudulent claim.

recruiters with incentive compensation, that included retention bonuses, cash bonuses, trips, and other incentive compensation, based on the number of students the recruiter enrolled. The PPA certifies that Defendants will not provide any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments. This is also a violation of the HEA and DOE regulations. Defendants further violate the HEA and DOE requirements by asserting in a yearly letter that they are in compliance with these requirements and have not paid any incentive compensation for securing enrollments.

Second, Diaz and Wilcox allege that Defendants violated the 90/10 Rule of the higher education laws, which requires that at least 10% of student tuition must come from cash, rather than student loans. Defendants violated the 90/10 Rule by enrolling its employees in courses which were paid for out of the Gift of Knowledge Fund, which awarded money to employees to pay for tuition. Third, Diaz and Wilcox allege that Defendants falsified documents in order to receive program accreditation from the Higher Learning Commission, which Defendants needed in order to be eligible to receive federal student loan funds. In addition, Relators Diaz and Wilcox assert several other bases for their action: Defendants pressured professors to inflate grades in order to certify that the students were obtaining satisfactory academic achievement as required by 34 C.F.R. § 668.24(b) and Defendants encouraged students to use some of their student loan funds to buy non-educational items, such as cars. Based on these actions, Diaz and Wilcox allege violations of 31 U.S.C. § 3729(a)(1) and § 3729(a)(2).

Diaz also alleges a claim for retaliation. Diaz asserts that he was fired in April 2005 after indicating to Defendants that he was notifying federal and state authorities of Defendants' lack of honesty with the Higher Learning Commission, of Defendants' method of recruiting students,

and of "other potential violations."

### C. The Pennsylvania Action

Approximately five months prior to the filing of Relators' Complaint, another qui tam complaint was filed against Defendant KHEC, *United States ex rel. Gatsiopoulos v. Kaplan Career Institute & Kaplan Higher Education Corp.* Two former employees of a KHEC subsidiary in the Western District of Pennsylvania filed this earlier action on November 2, 2006. This case is before this Court pursuant to an order of the Panel on Multidistrict Litigation. The *Gatsiopoulos* complaint alleges, among other things, that KHEC submitted false claims to the Government because KHEC was not in compliance with the HEA's ban on incentive payments to admission and financial aid personnel. By prior orders, the Court has held that the *Gatsiopoulos* action will continue on three claims: (1) violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), based on Defendants' alleged incentive compensation program; (2) violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), based on the 70 Percent Rules; and (3) Gatsiopoulos' retaliation claim.

## II. Motion to Dismiss

Defendants move to dismiss the Second Amended Complaint on multiple grounds. First, Defendants argue that Relators' Second Amended Complaint is barred by the first-to-file rule. Second, Defendants assert that Relators' Second Amended Complaint does not, and cannot state a cause of action under the False Claims Act because the Second Amended Complaint does not allege any violation of the HEA or its rules and regulations. Third, Defendants argue that Relators' theory of liability under the False Claims Act fails as a matter of law. The Court has previously held that Relators' theory of recovery, the False Certification theory, is a valid theory

7

of recovery and, thus, this Order will not address that argument.[10]  Furthermore, because the

Court cannot determine whether Relators' claims are barred by the first-to-file rule until after it

has determined which of Relators' claims are viable, the Court will address the first-to-file issue

last.

### A. Failure to Adequately Plead a Violation of the HEA

Defendants move to dismiss the Second Amended Complaint because Relators have

failed to adequately plead the alleged violations underlying their False Claims Act counts.

Claims made pursuant to the False Claims Act must meet the pleading requirements of Federal

Rule of Civil Procedure 9(b).[11]  Rule 9(b) requires that claims of fraud be pled with particularity.

---

[10]*See* DE-19 in Case No. 09-md-02057.  In that Order, the Court held that the False
Certification theory was a valid theory of recovery under the False Claims Act.  The Court stated
that there is a cause of action under the False Claims Act when an institution executes a PPA,
whereby, in order to be eligible for Title IV funds, it agrees to comply with certain statutory and
regulatory requirements and submits or causes to be submitted requests for funds when the
institution knows it is not in compliance with the statutory and regulatory requirements.  *See
United States ex rel. McNutt v. Haleyville Medical Supplies*, 423 F.3d 1256, 1259 (11th Cir.
2005) (stating that "[w]hen a violator of government regulations is ineligible to participate in a
government program and that violator persists in presenting claims for payment that the violator
knows the government does not owe [because compliance with the regulation is required for
payment], that violator is liable, under the Act, for its submission of those false claims"); *United
States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006) (finding a
cause of action under the False Claims Act based on the promises and representations made in
the PPA and holding that executing the PPA and agreeing to comply with the statutes and
regulations were "'prerequisites,' and 'the sine qua non' of federal funding, for one basic reason:
if the University had not agreed to comply with them, it would not have gotten paid."); *United
States ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) (finding a
cause of action under the False Claims Act if the institution knew of the incentive pay ban, told
the Department of Education it would comply with the ban, but planned to do otherwise).

[11]The Eleventh Circuit has recognized the importance of compliance with Rule 9(b) in
actions under the False Claims Act (FCA):

Requiring relators to plead FCA claims with particularity is especially important in light
of the quasi-criminal nature of FCA violations (i.e., a violator is liable for treble

The Eleventh Circuit has stated:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted). Thus, under Rule 9(b) a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.* Defendants move to dismiss portions of Relators' claims because they have not met this standard.

### i. *Claims of Grade Inflation and False Certification of Satisfactory Academic Progress*

First, Defendants argue that Relators have not established that the alleged grade inflation and accompanying pressure on professors to inflate grades violates any law or regulation and, thus, such claims cannot be the basis of an action under the False Claims Act. Relators have not directly responded to this argument. While the Second Amended Complaint alleges that grades were inflated in order to maintain eligibility to receive Title IV funding, which requires satisfactory academic progress, Relators have not set out how the alleged grade inflation violates

---

damages). Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim-the possibility of recovering between fifteen and thirty percent of a treble damages award-does not precipitate the filing of frivolous suits.

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006).

any rules or regulations. While Relators have cited to 34 C.F.R. § 668.34(b),[12] they have not pled how grade inflation violates this regulation. Furthermore, the regulation applies to a student's eligibility to receive HEA funds, not an institution's eligibility. *See* 34 C.F.R. § 668.34(a).[13] Because Relators have not alleged any violation of a statute or regulation, they have not alleged any fraud.

Relator Gillespie also alleges that Defendants falsely certified that students were maintaining satisfactory academic progress. However, the Second Amended Complaint does not allege the who, what, when, where, and how of this false certification, other than to explain the alleged grade inflation scheme. There are no facts alleged as to any specific student or students who were not attending class, not doing their work, or otherwise not adequately performing but whom Defendants certified were performing in order to receive student loans. Without more factual details about the actual alleged false certification, this claim does not meet the pleading requirements of Rule 9(b). Thus, the claims based on grade inflation and false certification of satisfactory student academic progress must be dismissed.

---

[12]This regulation was significantly amended effective July 1, 2011. The regulation in effect at the time of the actions alleged in the Second Amended Complaint reads: "A student is making satisfactory progress if, at the end of the second year, the student has a grade point average of at least a 'C' or its equivalent, or has academic standing consistent with the institution's requirements for graduation."

[13]This section of the regulation was also amended effective July 1, 2011. The regulation in effect at the relevant time states: "If a student is enrolled in an program of study of more than two academic years, to be eligible to receive title IV, HEA program assistance after the second year, in addition to satisfying the requirements contained in § 668.32(f), the student must be making satisfactory progress under the provisions of paragraphs (b), (c) and (d) of this section."

### ii. Claims of Incentive Compensation

Second, Defendants argue that Relators have not adequately pled a violation of the incentive compensation ban in the HEA. In their response to the Motion to Dismiss, Relators also do not respond directly to this argument. The incentive compensation ban prohibits any institution from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." 20 U.S.C. § 1094(a)(20). The Second Amended Complaint alleges that Defendants paid their recruiters "based primarily on the number of students recruited" and that the recruiters were paid retention bonuses, cash bonuses, trips and other incentive compensation. *See* DE-170, ¶84. The Second Amended Complaint further alleges that, while other factors were formally involved in compensation, they were not actually included and thus there was a "disguised plan." *See id.*, ¶91.

Relators' allegations are not sufficient to state a violation of the incentive compensation ban. The Second Amended Complaint states that other factors were part of the plan (but does not identify the other factors) and Relators have not pled any allegations, other than bare conclusions, to show that the other factors that were part of the compensation plan were not actually considered in practice. *See id.* The Second Amended Complaint does not plead with the particularity required by Rule 9(b) how Defendants did or did not consider the other factors set out in their compensation plan. Thus, as set out in the Second Amended Complaint, Defendants' compensation plan does not violate the incentive compensation ban set out in the HEA. Consequently, these claims are dismissed.

11

### iii. Claims Involving the 90/10 Rule

Third, Defendants argue that Relators misconstrue the 90/10 Rule and thus do not actually plead a violation of the rule. The 90/10 Rule prohibits an eligible institution from deriving more than 90% of its revenue from HEA funds used to satisfy student tuition, fees, and other institutional charges. 34 C.F.R. § 600.5(a)(8), (d)(1) (2010).[14] The Second Amended Complaint alleges that nearly 100% of Defendants' revenues come from Title IV funds, which is a violation of the regulation. According to the Second Amended Complaint, Defendants established the Gift of Knowledge Scholarship in order to have 10% of their student body paying their tuition in cash and, thus, Defendants would appear to be in compliance with the 90/10 Rule. The Gift of Knowledge Scholarship was awarded to Defendants' employees. Relators assert that Defendants simply diverted student loan monies into the Gift of Knowledge account and would then give the money to employees who would then pay it to Defendants as tuition. In turn, the employees would receive a tuition tax credit form from the IRS.

Defendants maintain that even if these allegations are true, Relators have not pled that counting the revenue from the Gift of Knowledge Scholarship would create a violation of the 90/10 Rule. Defendants are correct that the Second Amended Complaint does not allege how Defendants' accounting practices regarding the revenue from the Gift of Knowledge Scholarship violate the 90/10 Rule. Consequently, Relators have not adequately pled a violation of the 90/10 Rule and, thus, these allegations cannot be the basis of a claim under the False Claims Act. Accordingly, the claims based on a violation of the 90/10 Rule are dismissed.

---

[14]The current version of this regulation omits the 90/10 Rule.

12

#### *iv. Claims Involving the Rehabilitation Act*

Fourth, Defendants argue that they have not violated the Rehabilitation Act and, thus, such non-existent violations cannot be the basis for a fraud claim.  Defendants also assert that the Second Amended Complaint makes the unsupported conclusory allegation that Defendants are not yet compliant with the Rehabilitation Act.[15]  The Second Amended Complaint alleges that the DOE's Office of Civil Rights (OCR) concluded that Defendants were in violation of the Rehabilitation Act and lists seven specific violations found by the OCR.[16]  All of the violations listed by OCR were system-wide violations, not violations arising from the treatment of a specific individual.  Thus, based on these allegations, which the Court must take as true, Relators have adequately pled that Defendants were not in compliance with section 504 of the Rehabilitation Act.

Defendants also argue that Relators have not alleged with any specificity how Defendants continue to be non-compliant with the Rehabilitation Act.  Relators have not responded to this specific argument.  Nothing in the Second Amended Complaint sets out with particularity how

___

[15]Additionally, in their Response to the Supplemental Submission of Relators in Opposition to Defendants' Motions to Dismiss [DE-37 in Case No. 09-md-02057], Defendants argue that a violation of the Rehabilitation Act should not be the basis of a fraud claim under the False Claims Act and that Relators have failed to allege with particularity that Defendants' violations of the Rehabilitation Act were done in order to defraud the Government.  First, the Court notes that the violations at issue were system-wide violations regarding a failure to implement required procedures.  Such violations are an appropriate basis for a False Claims action.  More importantly, these arguments could have been, but were not, raised in Defendants' Motion to Dismiss.  Furthermore, the purpose of the Response was to respond to Relators' supplemental briefing in which Relator Gillespie raised the issue of scienter, but only in relation to violation of the Rehabilitation Act.  Additionally, Relators have not had an opportunity to respond to these newly raised arguments.  Thus, the Court will not consider them here.

[16]The specific violations are set out in footnote 7, *supra*.

13

Defendants continue to be non-complaint with section 504. Furthermore, the very same

documentation submitted by Gillespie to substantiate Defendants' non-compliance indicates that,

after Defendants and OCR entered into a Resolution Agreement, OCR found that Defendants had

complied with the terms of the Resolution Agreement. Thus, Relators have failed to adequately

plead that Defendants continue to be non-compliant with the Rehabilitation Act. Therefore, any

claims based on continued non-compliance with the Rehabilitation Act are dismissed.

Accordingly, Relators' claims based on non-compliance with the Rehabilitation Act may proceed

but are limited in their time frame to cover only up until the OCR found Defendants in

compliance with the Rehabilitation Act.[17]

### v. *Claims Involving False Accreditation Documents*

Fifth, Defendants argue that Relators' claims based on alleged false accreditation

documents fail because Relators do not allege a false claim made to the Government, which is a

requirement of the False Claims Act, 31 U.S.C. § 3729. In response, Relators adopt the

arguments set out in a brief filed by the United States in an unrelated case and attached to the

response to the motion as Exhibit 12 [DE-181-10]. In the brief, the United States argues that a

claim under the False Claims Act exists if a party makes false statements to an accrediting

agency in order to obtain accreditation necessary to receive federal funds. This is exactly what

the Second Amended Complaint alleges – that the false documents given to the accrediting

agency led to accreditation that was necessary for Defendants to receive federal funds.

---

[17]It is not clear from the Second Amended Complaint or any of the numerous
supplemental filings when the OCR found Defendants in compliance. However, whenever OCR
determined that Defendants were in compliance with the Rehabilitation Act and the Resolution
Agreement would be the end of the time period on which Relators can base their claim.

In *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008), the
Supreme Court stated that a violation of 31 U.S.C. § 3729(a)(2) occurs when the "defendant
made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or
approved by the Government.'" Section 3729(a)(2) does not requires "proof that the defendant
caused a false record or statement to be presented or submitted to the Government." *Id.* Thus,
under *Allison Engine,* if Defendants made false statements to the accreditation body in order to
be able to obtain Government funds, Defendants have violated the False Claims Act.  This is
what the Second Amended Complaint alleges.  Consequently, such false statements can be the
basis of a False Claims action.  However, the allegations that form the basis of this claim do not
meet the pleading requirements of Rule 9(b) because nothing in the Second Amended Complaint
sets out what false statements were made to the accrediting bodies, when they were made, or who
made them. *See* DE-170, ¶¶183-192.  Therefore, Defendants' Motion is granted to the extent
Relators' claims are based on the unspecified allegedly false statements made to accrediting
bodies.

### vi. Other Allegations of False Claims

Sixth, Defendants argue that Relators' Second Amended Complaint alleges a host of
other activities which led to Defendants' violation of the False Claims Act, including allegations
of enrolling unqualified students, the extreme pressure of admissions representatives to perform,
the misuse of accreditation claims, and misadvising students.  Specifically, Defendants argue that
the allegations in paragraphs 87-91, 96-101, 103-105, 120, 124-125, 144-149, 150-153, 159-162,
188, 237-238, 240, and 242 of the Second Amended Complaint should dismissed for failure state
an actual violation of any statute or regulation and because they do not meet the pleading

requirements of Rule 9(b). Again, Relators do not address this argument in their response. While many of these allegations are quite detailed, there are no allegations in the Second Amended Complaint that demonstrate that these allegations, if true, would constitute a violation of any statute or regulation. Therefore, Defendants have not pled a cause of action based on the allegations in paragraphs 87-91, 96-101,103-105, 120, 124-125, 144-149, 150-153, 159-162, 188, 237-238, 240, and 242. Accordingly, any cause of action based solely on these allegations is dismissed.

### vii. Diaz's Retaliation Claim

Finally, Defendants maintain that Diaz's retaliation claim must be dismissed based on res judicata and because Diaz has not adequately pled that he engaged in protected conduct under § 3730(h). Diaz has not responded to the res judicata argument. In an earlier filed action,[18] based primarily on claims of job discrimination, Diaz, in his amended complaint, alleged retaliation claims based on Florida's Whistleblower Act, retaliation based on Florida Statute § 760, and retaliation for complaints about pressure to inflate student grades. None of these retaliation claims are based on conduct protected under 31 U.S.C. § 3730(h). Thus, the issues in the two different suits are not the same and res judicata does not apply. Furthermore, in his second amended complaint in that action, Diaz dropped these retaliation claims in favor of a retaliation claim under 42 U.S.C. § 1981 and Title VII. Therefore, no final judgment was entered on Diaz's retaliation claims under Florida's Whistleblower Statute and Florida Statute § 760, or on Diaz's retaliation claim based on his complaints about grade inflation. Entry of a final judgment on the

---

[18]The earlier filed action is Case No. 08-cv-60368, which was filed in this district. In Case No. 08-cv-60368, summary judgment was entered in favor of Defendants KU, KHEC and Andy Rosen.

merits is a necessary element of res judicata.[19]  Consequently, Diaz's retaliation claim is not

barred by res judicata.

Diaz does respond that he has adequately pled a retaliation claim under Rule 8.  This

Court has previously stated:

> [A]n employee has a retaliation claim against her employer if she suffers adverse job
> consequences as a result of her "efforts to stop 1 or more violations" of the False Claims
> Act. 31 U.S.C. § 3730(h). Protected conduct is conduct that "furthered an action filed or
> to be filed" under the False Claims Act. *Hutchins v. Wilentz, Goldman & Spitzer*, 253
> F.3d 176, 187 (3d Cir. 2001) (internal quotations omitted). Thus, "[i]f an employee's
> actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that
> the employer could have feared being reported to the government for fraud or sued in a
> qui tam action by the employee, then the complaint states a claim for retaliatory discharge
> under § 3730(h)." *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304
> (11th Cir. 2010).

*U.S. ex rel. Gatsiopoulos v. Kaplan Career Institute*, 2010 WL 5392668, *6 (S.D. Fla. Dec. 22,

2010).  The Second Amended Complaint alleges that Diaz notified Defendants that they were not

being truthful with the Higher Learning Commission, notified Defendants of his concerns

regarding the way Defendants recruited students, and notified Defendants of other potential

violations.  The Second Amended Complaint further alleges that Diaz indicated to Defendants

that he was notifying the proper Federal and State authorities of Defendants' wrongful activities.

As a result, Diaz was fired.  Defendants argue that these allegations do not state a cause of action

for retaliation because they do not plead any protected activity under § 3730(h).  While the

allegations in the Second Amended Complaint lack factual details, the Second Amended

---

[19]In the Eleventh Circuit, a claim is barred under the doctrine of res judicata if: (1) there is
a final judgment on the merits; (2) the decision was rendered by a court of competent
jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the
same cause of action is involved in both cases. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235,
1238 (11th Cir. 1999).

Complaint does plead that Diaz told Defendants that he was notifying the proper Federal and State authorities of their wrongful deeds. Based on this, Defendants reasonably could have feared being reported for fraud or being sued in a qui tam action. *See U.S. ex rel. Sanchez v. Lymphatx*, 596 F3d 1300, 1304 (11th Cir. 2010) (holding that plaintiff had pled a valid retaliation claim where she alleged that she had complained about the defendant's unlawful actions and warned them that they were incurring significant criminal and civil liability).

Defendants also maintain that Diaz's retaliation claim should be dismissed because there was no possibility that Diaz could have filed a viable False Claims action based on the information he reported. In order to be protected under § 3730(h), an employee need not have a winning False Claims Act claim; he need only have a "distinct possibility that a viable [False Claims] action could be filed." *Dookeran v. Mercy Hospital of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2001). As set out above, because Relators have set out some viable False Claims Act claims and because there was a distinct possibility that Diaz could have filed other viable False Claims actions, Diaz has sufficiently set out a retaliation claim for purposes of a motion to dismiss. Consequently, as set out above, the Relators' only remaining claims are Gillespie's False Claims action based on Defendants' failure to comply with section 504 of the Rehabilitation Act and Diaz's retaliation claim.

## B. First-To-File Rule

Finally, because this is the second of three qui tam actions filed against Defendants and pending before this Court, the Court must determine whether it is barred by the first-to-file rule. The first-to-file rule is the name often given to 31 U.S.C. § 3730(b)(5) which states: "When a person brings [a qui tam action], no person other than the Government may intervene or bring a

18

related action based on the facts underlying the pending action." This provision creates a

jurisdictional limit on a court's authority to hear duplicative qui tam suits. *United States ex rel.*

*Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004). A later filed

case need not be based on the exact same facts as the earlier one in order to be barred by the first-

to-file rule. *Id.* at 1279. The question is whether the actions are "related."

> [S]o long as a subsequent complaint raises the same or a related claim based in significant
> measure on the core fact or general conduct relied upon in the first qui tam action, the §
> 3730(b)(5)'s first-to-file bar applies. Once an initial qui tam complaint puts the
> government and the defendants on notice of its essential claim, all interested parties can
> expect to resolve that claim in a single lawsuit. The pendency of the initial qui tam action
> consequently blocks other private relators from filing copycat suits that do no more than
> assert the same material elements of fraud, regardless of whether those later complaints
> are able to marshal additional factual support for the claim.

*Id. Accord United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149

F.3d 227, 232-33 (3d Cir. 1998).

Defendants assert that Relators' Second Amended Complaint is barred by the first-to-file

rule by the complaint in *Gatsiopoulos*. However, the False Claims Act counts in that case are

based on Defendants' alleged incentive compensation program and alleged violations of the

HEA's 70 Percent Rules. In the instant action, the only remaining basis for Relators' False

Claims Act counts are the alleged violations of the Rehabilitation Act. While these two cases

have the same theory of liability, the False Certification theory, their claims under the False

Claims Act do not rely on the same core facts or general conduct. The claims in *Gatsiopoulos*

would not put the Government on notice of violations based on non-compliance with the

Rehabilitation Act. Thus, to bar Relators' remaining claim under the False Claims Act would not

serve the purpose of the first-to-file rule, which is to prevent duplicative suits based on the same

19

core facts. Consequently, Relators' remaining claims under the False Claims Act are not barred by the first-to-file rule.

## III. Conclusion

Having had three opportunities to plead their claims, it is apparent that Relators have no facts that will cure the specific defects in the Second Amended Complaint, which are outlined above. Thus, any further leave to replead would be futile.[20] Therefore, based on this Order, Relator's Second Amended Complaint shall proceed on the following three claims: (1) violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) based on non-compliance with the Rehabilitation Act, until the point in time when the OCR determined that Defendants were in complaince; (2) violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) based on non-compliance with the Rehabilitation Act, until the point in time when the OCR determined that Defendants were in compliance; and (3) Diaz's retaliation claim.

Accordingly, it is

ORDERED that Defendants' Motion to Dismiss Relators' Second Amended Complaint [DE-171] is GRANTED in part and DENIED in part:

a) Relators' claims under the False Claims Act are dismissed with prejudice except for Relators' claims based on Defendants' violations of the Rehabilitation Act.

b) Defendants' Motion is DENIED as to Diaz's retaliation claim.

---

[20]Relators request leave to amend if their allegations do not meet the pleading requirements of Rule 9(b). However, they have not provided any information that would indicate that they can rectify the pleading shortfalls in their claims. Thus, without more, amendment would be futile.

20

c) Defendants shall file their answer to the viable portions of the Second Amended

Complaint no later than **August 31, 2011.**

DONE and ORDERED in Miami, Florida, this __17__ day of August, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record

21