UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20756-CIV-SEITZ/SIMONTON

UNITED STATES OF AMERICA,
*ex rel.* JUDE GILLESPIE,

        Plaintiff,

v.

KAPLAN UNIVERSITY, *et al.*,

        Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS

THIS MATTER is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion for Judgment on the Pleadings [DE-288]. Relator Gillespie filed this *qui tam* action pursuant to the False Claims Act (FCA). Gillespie's Second Amended Complaint alleges that Defendants filed false claims for payment under Title IV of the Higher Education Act (HEA) because they were not eligible to file the claims based on their failure to comply with requirements of eligibility. Defendants seek to dismiss because the Court lacks subject matter jurisdiction based on the government-action bar of the FCA. In the alternative, Defendants seek judgment on the pleadings because Gillespie's complaint shows on its face that the violations at the base of Gillespie's FCA claim were not material to the Government, an essential element of Gillespie's claims. Because the Court has subject matter jurisdiction and issues of fact exist as to materiality, Defendants' Motions are denied.

## I. Facts and Procedural History

Gillespie, a former employee of Defendants, along with two other former employees, filed their first complaint under seal on March 7, 2008. Subsequently, two amended complaints were filed. The operative complaint, the Second Amended Complaint [DE-170], was filed under seal on June 24, 2009 and unsealed, by Court order, on July 15, 2009. Ultimately, the Court dismissed one of Gillespie's claims, dismissed the FCA claims brought by the other employees, and severed another claim, leaving only Gillespie's FCA claims pending in this case.

Defendants Kaplan University (KU) and Kaplan Higher Education Corp. (KHEC) are accredited by the Higher Learning Commission and are recipients of federal student financial aid funds from the U.S. Department of Education, pursuant to the HEA. KU operates numerous online educational enterprises throughout the United States. KU is a wholly owned subsidiary of KHEC.[1] KHEC is a division of Defendant Kaplan, Inc. (Kaplan).[2] Relator Jude Gillespie worked for Defendants[3] from April 2004 through April 2005 as a Course Developer, Department Chairman, and Associate Professor of Paralegal Studies.

Gillespie's claims allege a violation of the Program Participation Agreement (PPA). In order to obtain federal student financial aid through Title IV of the HEA, an educational institution must certify to the United States government (Government) that it will comply with

---

[1] The Second Amended Complaint, in the same paragraph, alleges that KU is a wholly owned subsidiary of The Washington Post Company and that KU is a wholly owned subsidiary of KHEC.

[2] The Second Amended Complaint does not explain what Defendant Kaplan does.

[3] The Second Amended Complaint does not specify for which of the Defendants Gillespie worked.

statutory and regulatory prerequisites established by the HEA and the Department of Education (DOE). Certification is done through the execution of a PPA.

Gillespie's claims allege a violation of the PPA based on Defendants' alleged failure to comply with section 504 of the Rehabilitation Act.[4] The PPA references that the educational institution will comply with section 504 of the Rehabilitation Act. On April 14, 2005, Gillespie filed a complaint with the DOE's Office of Civil Rights (OCR) because Defendants failed to accommodate Gillespie's bipolar disorder. The OCR investigated the claim, which it denied, but in October 2005, the OCR found that Defendants were in violation of section 504 of the Rehabilitation Act and its implementing regulations.[5] As a result of the findings OCR and

---

[4]Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, reads in pertinent part:

(a) Promulgation of rules and regulations
No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.
* * *
(b) "Program or activity" defined
For the purposes of this section, the term "program or activity" means all of the operations of–
* * *
(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship--
(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation;

[5]The OCR set out its findings in an October 27, 2005 document which stated that Defendants were in violation of section 504 for the following reasons: (1) the university does not

Defendants entered into a Resolution Agreement, which was fully executed on October 27, 2005. Based on the OCR's findings, Gillespie alleges that Defendants falsely certified to the Government that they were in compliance with the necessary prerequisites to obtaining federal funding. Gillespie also alleges that, even after entering into the Resolution Agreement, Defendants continued to be in non-compliance with the Rehabilitation Act and with the Resolution Agreement. However, by prior order, the Court limited Gillespie's claims to the time frame covering only up until the OCR found Defendants in compliance with the Rehabilitation Act.[6] On November 27, 2007, Defendants and the Government entered into a new PPA.

## II. The Motion to Dismiss is Denied

Defendants move to dismiss for lack of subject matter jurisdiction based on the government-action bar in the FCA, which states:

> In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

31 U.S.C. § 3730(e)(3). Defendants argue that, on its face, the Second Amended Complaint

---

have published procedures detailing how a disabled employee can request accommodations; (2) the university needed to provide policies and procedures that address discrimination separately from harassment; (3) the complaint procedure should be amended to provide the detailed process by which employees could seek informal and formal resolution of their concerns; (4) the university should designate consistently to whom informal and formal complaints may be addressed; (5) the policies and procedures should be amended to provide a definitive manner and time in which investigations are to be completed; (6) the complaint procedures should be amended to require the university to notify complainants in writing of the results of investigations; and (7) the policies should set out to where one could appeal an investigation's findings.

[6] It is not clear from the Second Amended Complaint when the OCR found Defendants in compliance. However, it would appear from documents filed with the Court that the OCR made its finding of compliance no later than May 24, 2007.

demonstrates that the Government has already investigated and resolved through an administrative proceeding the claims that are the basis of Gillespie's FCA claims. Specifically, Defendants argue that the OCR proceedings that resulted from Gillespie's filing of his OCR complaint are "an administrative civil money penalty proceeding in which the Government is already a party."

The statute does not define "administrative civil money penalty proceeding" and the Eleventh Circuit has not addressed this issue. However, the First Circuit has stated that:

> when it is not clear whether or not a *qui tam* action should be barred by the ambiguous provision precluding the action if it is "based upon transactions or allegations which are the subject of" another suit or proceeding in which the government is a party, we think that a court should look first to whether the two cases can properly be viewed as having the qualities of a host/parasite relationship. In answering this question, we think it would be useful for the court to be guided by the definition of the word "parasite," and ask whether the *qui tam* case is receiving "support, advantage, or the like" from the "host" case (in which the government is a party) "without giving any useful or proper return" to the government (or at least having the potential to do so). *See* Random House Dictionary of the English Language 1409 (2d ed. unabridged 1987). If this question is answered in the affirmative, the court may properly conclude that there is an identity between "the basis" of the *qui tam* action and "the subject of" the other suit or proceeding; if this question is answered in the negative, the court similarly may gather that such an identity is lacking. . . . [W]e think it clear that a *qui tam* suit's potential for adding funds to the government's coffers, without more, should not be regarded as constituting useful or proper return to the government.

*U.S. ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320, 327-28 (1st Cir. 1994). The *Prawer* Court concluded that the case before it was not barred by the government-action bar because it provided a "useful or proper return" to the government because it sought to recover for an alleged fraud on the government that had not yet been the subject of a claim by the government and it had the potential to restore money to the public fisc that would not and could not have been restored in the earlier case. *Id.* at 329. In *U.S. ex rel Costner v. URS Consultants,*

*Inc.*, 153 F.3d 667, 676 (8th Cir. 1998), the Eighth Circuit, relying on *Prewar*, also held that a *qui tam* action was not barred because it was seeking to remedy a fraud that the government had not yet attempted to remedy. That is the case here. Gillespie is seeking to remedy an alleged fraud on the Government which has not been the subject of any prior proceedings. Gillespie's OCR complaint alleged discrimination by KU against him; it did not allege fraud or even allege the seven violations of the Rehabilitation Act found as the result of the OCR investigation. Thus, the OCR investigation, which was focused on Gillespie's treatment, and the fraud at the heart of the *qui tam* action are not based on the same transactions or allegations.

Defendants rely on *Foundation for Fair Contracting, Ltd. v. G&M Eastern Contracting*, 259 F. Supp 2d 329 (D.N.J. 2003) to support the conclusion that the OCR investigation constitutes "an administrative civil money penalty proceeding in which the Government is already a party." However, the investigation by the Department of Labor in *Foundation* was based on the exact same complaints that the *qui tam* action was based on – inaccurate reporting of the same employee hours, inaccurate reporting of employee numbers, and wage mis-classifications. *Id.* at 337-38. Furthermore, in *Foundation*, the Department of Labor had already recovered money for the violations  That is not the case in the instant matter.

Gillespie's complaint to OCR did not allege fraud and was based on alleged discrimination by KU against Gillespie.[7] The OCR complaint only named KU; it was not against the other Defendants to this suit.  Further, OCR did not reach the stage of proceedings where it could attempt to recover any money. Additionally, OCR's October 27, 2005 letter that sets out

---

[7]The OCR characterized Gillespie's complaint as containing allegations that Kaplan University failed to provide accommodations he requested and that Kaplan University retaliated against Gillespie. *See* DE-289-1.

6

its findings regarding Gillespie's complaint states that it "is not intended, nor should it be construed, to cover any other issues regarding [KU's] compliance with Section 504 that may exist and are not discussed herein." *See* DE-289-1 at 24. Thus, the basis of the OCR complaint is not the same as the basis for Gillespie's FCA claim – that Defendants falsely certified that they were in compliance with § 504 of the Rehabilitation Act in order to receive federal funds. Because Gillespie's OCR complaint did not allege fraud and the OCR did not investigate fraud, the government-action bar does not apply in this case and the Motion to Dismiss is denied.

## III. The Motion for Judgment on the Pleadings is Denied

In the alternative, Defendants move for judgment on the pleadings arguing that Gillespie cannot establish materiality, a necessary element of his claim. "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Andrx Pharmaceuticals, Inc. v. Elan Corp.*, 421 F.3d 1227, 1232 (11th Cir. 2005). Material issues of fact do exist regarding materiality; therefore, judgment on the pleadings is not appropriate at this point in the proceedings.

This Court has previously held that there are four elements to a false certification claim: (1) the submission of a false claim; (2) scienter; (3) the false statement must be material to the government's decision to pay out moneys to the claimant; and (4) an actual claim or call on the government fisc. *See* DE-19 in Case No. 09-md-02057 (citing *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1171-73 (9th Cir. 2006)). Defendants assert that because the Government became aware of Defendants' violations of the Rehabilitation Act as a result of its OCR investigation into Gillespie's complaint and continued to pay Defendants, the

Rehabilitation Act violations were not material to the Government's decision to pay. Consequently, Defendants argue they are entitled to judgment on the pleadings.

Gillespie first responds that the Motion for Judgment on the Pleadings is untimely and barred under Federal Rule of Civil Procedure 12(g)(2), which states:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

While Gillespie states that the exceptions do not apply, Rule 12(h)(2) does apply. Rule 12(h)(2) states that "[f]ailure to raise a claim upon which relief can be granted . . . may be raised . . . in a motion under Rule 12(c)." Rule 12(c) covers motions for judgment on the pleadings. Thus, Defendants' motion is not barred under Rule 12(g)(2).

Gillespie next opposes the motion based on the test for materiality. Gillespie asserts that the proper test is the "natural tendency" test which is a factual question for a jury.[8] Thus, judgment on the pleadings is not appropriate. Defendants assert that natural tendency is not the correct test. However, subsequent to the briefing of this motion the Eleventh Circuit adopted the natural tendency test, stating that "[t]o be material, a misrepresentation must have the ability to influence the government's decision-making." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1228 (11th Cir. 2012). The *Matheny* Court cited to *Neder v. United States*, 527 U.S. 1, 16 (1999), for the definition of materiality as having the "natural tendency to influence . . the decisionmaking body to which it was addressed."

---

[8] Defendants argue that materiality is a mixed question of law and fact that is for a court to determine. At this stage of the proceedings, the Court need not determine whether it is a question for the Court or for the jury because Defendants are not entitled to judgment on the pleadings at this juncture.

8

Given this definition of materiality, judgment on the pleadings is not appropriate because, taking the pleadings in the light most favorable to Gillespie, it is not clear from the pleadings that Defendants' representation that it was in compliance with the Rehabilitation Act did not influence the Government's decision to pay Defendants. Under the natural tendency test, the Government's continued payments to Defendants after learning that Defendants were not in compliance do not clearly demonstrate that the Government was not influenced by Defendants' representations regarding compliance. While the Government continued to pay Defendants after it discovered Defendants' non-compliance with the Rehabilitation Act, it did so in light of the fact that Defendants entered into the Resolution Agreement whereby Defendants agreed to correct their non-compliance. Likewise, the Government's decision to enter into a new PPA occurred only after the OCR had found that Defendants were in full compliance with the Rehabilitation Act. Thus, at this stage of the proceedings, the facts pled in the complaint do not clearly establish that Defendants' representation in the PPA that they were in compliance with the Rehabilitation Act was not material to the Government's decision to continue to pay Defendants. Thus, judgment on the pleadings is not appropriate.

Accordingly, it is

ORDERED that:

1) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion for Judgment on the Pleadings [DE-288] is DENIED.

2) Relator Jude Gillespie's Request for Oral Argument Regarding Defendants' Pending Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion for Judgment on the Pleadings [DE-296] is DENIED as moot.

DONE and ORDERED in Miami, Florida, this 21st day of May, 2012.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record